1  HANSON BRIDGETT LLP
   SANDRA L. RAPPAPORT, SBN 172990
2  srappaport@hansonbridgett.com
   LISA M. POOLEY, SBN 168737
3  lpooley@hansonbridgett.com
   RACHEL J. VINSON, SBN 331434
4  rvinson@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone:    (415) 777-3200
6  Facsimile:    (415) 541-9366

7  Attorneys for Defendant
   LEPRINO FOODS COMPANY
8

9              UNITED STATES DISTRICT COURT

10      EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

11

12  CHRISTOPHER DOMINGUEZ, as an          Case No.
    individual and on behalf of all others similarly
13  situated,                             **DEFENDANT'S NOTICE OF REMOVAL
                                          (28 U.S.C. § 1441 (a) Federal Question
14              Plaintiff,                Jurisdiction)**

15       v.

16  LEPRINO FOODS COMPANY, a Colorado
    corporation; and DOES 1 through 50,
17  inclusive,

18              Defendants.

19

20

21

22  TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF

23  CALIFORNIA AND TO PLAINTIFF CHRISTOPHER DOMINGUEZ AND HIS COUNSEL OF

24  RECORD:

25       PLEASE TAKE NOTICE that Leprino Foods Company ("Defendant") hereby removes to

26  this Court the state court action described below.  This removal is based on federal question

27  jurisdiction. 28 U.S.C. §§ 1331, 1441, and 1446.

28

18987173.1

# PROCEDURAL BACKGROUND

1. <u>State Court Action</u>:  On August 25, 2022, Plaintiff Christopher Dominguez ("Plaintiff") filed an unverified Complaint (the "Complaint") in the Superior Court of California, County of Kings, entitled:  CHRISTOPHER DOMINGUEZ, as an individual and on behalf of all others similarly situated v. LEPRINO FOODS COMPANY, a Colorado corporation; and DOES 1 through 50, inclusive, Case No. 22C-0317.  True and correct copies of Plaintiff's Complaint and Amended Complaint are attached hereto as **Exhibit 1** ("Complaint") and **Exhibit 5** ("Amended Complaint"), respectively.  His Amended Complaint asserts one cause of action for Violation of Labor Code §§2698, *et seq.*

2. <u>State Court Documents</u>:  Pursuant to the provisions of 28 U.S.C. section 1446(a), Defendant has included with this Notice of Removal "a copy of all process, pleadings, and orders served upon such defendant . . . in such action."  A true and correct copy of the following documents are attached and incorporated by reference:

    a.    Complaint, filed August 25, 2022 (**Exhibit 1**);

    b.    Summons, filed on August 25, 2022 (**Exhibit 2**);

    c.    Civil Case Cover Sheet, filed August 25, 2022 (**Exhibit 3**);

    d.    Notice of Judicial Assignment and Case Management Conference, filed on August 25, 2022 (**Exhibit 4**).

    e.    Amended Complaint, filed October 27, 2022 (**Exhibit 5**)

3. <u>Service</u>:  Defendant Leprino Foods Company's ("Defendant") registered agent was served with a copy of the Summons and Complaint on October 5, 2022.  A true and correct copy of the Summons and the Service of Process Transmittal sent to Defendant by "CSC Global" indicating personal service on Defendant on October 5, 2022, is attached hereto as **Exhibit 6**.

4. <u>Answer to Complaint</u>:  On November 2, 2022, Defendant filed an Answer to Plaintiff's unverified Complaint in the Superior Court of California, County of Kings.  A true and correct copy of Defendant's Answer to Plaintiff's initial Complaint is attached hereto as **Exhibit 7**.  On November 3, 3022, Defendant filed an Answer to Plaintiff's unverified Amended Complaint in the Superior Court of California, County of Kings.  A true and correct copy of Defendant's

1    Answer to Plaintiff's Amended Complaint is attached hereto as **Exhibit 8**.

2                              **TIMELINESS OF REMOVAL**

3            5.        This removal petition is filed timely, as 28 U.S.C. § 1446(b) provides a defendant

4    with thirty (30) days to remove the case after receipt by a defendant, through service or otherwise,

5    of a copy of the initial pleading setting forth the claim for relief upon which such action or

6    proceeding is based.  Defendant Leprino Foods Company was served with a copy of Plaintiff's

7    Complaint on October 5, 2022.  *See* **Exhibit 6**.

8                              **VENUE AND ASSIGNMENT**

9            6.        Venue lies in the Eastern District of California under 28 U.S.C. §§ 1441(a),

10   1446(a), and 84(a).  Plaintiff alleges that he was employed by Defendant in the County of Kings,

11   California, and that the acts and events set forth in the Complaint occurred in whole or in part in

12   the County of Kings, California.  (Amend. Comp. ¶¶ 6, 9.)

13           7.        Intra-District Assignment:  Assignment to the Fresno Division of the United States

14   District Court for the Eastern District of California is proper under 28 U.S.C. § 1441(a) because

15   the state court action was filed and is pending in the County of Kings.

16                        **FEDERAL QUESTION JURISDICTION**

17           8.        This action is a civil action of which this Court has original jurisdiction pursuant to

18   28 U.S.C. § 1331, and is one that may be removed to this Court by Defendant pursuant to the

19   provisions of 28 U.S.C. § 1441(a) in that it arises under Section 301 of the Labor Management

20   Relations Act ("LMRA").

21           9.        The Amended Complaint alleges one cause of action for statutory penalties

22   pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Lab. § 2698, *et seq*.,

23   based on Defendant's alleged violations of California Labor Code sections 201-204 and 246

24   (failure to incorporate all non-discretionary incentive wages in the regular rate of pay used to

25   calculate and pay sick pay wages) and 226 (failure to provide accurate itemized wage statements).

26           10.       Federal district courts have original jurisdiction over cases founded on a claim or

27   right arising under federal law, regardless of citizenship or diversity.  28 U.S.C. § 1441(c).  When

28   federal question cases are brought in state court, defendants may remove them to the federal

1    district court embracing the place where the state court action is pending.  28 U.S.C. § 1441(a).

2        11.    Section 301 of the Labor Management Relations Act ("LMRA") grants federal

3    district courts original jurisdiction over claims for violation of contracts between an employer and

4    a union, regardless of the citizenship of the parties.  29 U.S.C. § 185(a); 28 U.S.C. § 1331.

5        12.    State law causes of action based on a collective bargaining agreement or whose

6    outcome depends on analysis of the terms of a collective bargaining agreement are preempted by

7    LMRA § 301.  *Associated Builders & Contrs. v. Local 302 IBEW*, 109 F.3d 1353, 1356 (9th Cir.

8    1997); *Young v. Anthony's Fish Grottos, Inc*., 830 F.2d 993, 997, 999 (9th Cir. 1987).  Although

9    normally federal preemption is a defense that does not authorize removal to federal court, § 301

10   has such "extraordinary preemptive power" that it "converts an ordinary state common law

11   complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."

12   *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987).  In other words, a civil complaint alleging

13   claims preempted by § 301 raises a federal question that can be removed to a federal court.  *See*

14   *id*.; *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-562 (1968) (LMRA § 301 is federal

15   statute with complete preemptive force).  These claims must be re-characterized as § 301 claims

16   and, as such, are removable to federal court.  *Associated Builders & Contrs.*, 109 F.3d at 1356;

17   *Young*, 830 F.3d at 1002.

18       13.    At all times relevant to this action, Defendant was and is an employer employing

19   employees in an industry affecting commerce as defined by the LMRA, 19 U.S.C. § 141, *et seq.*

20   At all times relevant to this action during which Plaintiff and the allegedly aggrieved employees

21   were employed by Defendant, many of the allegedly aggrieved employees were represented by

22   labor organizations, Teamsters Local Union No. 517 and Teamsters Local Union No.439 ("the

23   Unions") and employed pursuant to collective bargaining agreements ("CBAs") between

24   Defendant and the Unions.  The CBAs address employees' wages, hours and working conditions,

25   and set the regular hours of pay of not less than 30 percent more than the state minimum wage.

26   The CBAs also contain provisions specifically addressing paid sick days and premium overtime

27   pay.  The CBAs further provide for a grievance procedure for disputes and controversies arising

28   out of the CBAs, including the application of their sick days' provisions, which culminates in final

1  and binding arbitration.  True and correct copies of the CBAs are attached as Exhibits A - C to the

2  Declaration of Barbara Gregorich, attached as **Exhibit 9** to this Notice of Removal.  Thus,

3  Plaintiff's claim related to the calculation of sick pay amounts to a claim for violation of the

4  CBAs.

5        14.    In addition, there is no independent state law right to paid sick days in this instance.

6  While the California Labor Code generally requires some number of sick days be paid to most

7  employees, the statute does not apply to employees "covered by a valid collective bargaining

8  agreement if the agreement expressly provides for the wages, hours of work, and working

9  conditions of the employees, and expressly provides for paid sick days or a paid leave or paid time

10  off policy that permits the use of sick days for those employees, final and binding arbitration of

11  disputes concerning the application of its paid sick days provisions, premium wages for all

12  overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the

13  state minimum wage rate."  Cal. Lab. Code § 254.5.  Thus, by their terms, the requirement of paid

14  sick days in the Labor Code does not apply to an employee who is subject to a qualifying

15  collective bargaining agreement.

16        15.    Although normally a district court deciding whether to exercise removal

17  jurisdiction must consider only the allegations in the complaint, that general rule "is overridden by

18  the artful pleading doctrine in complete preemption cases.  Because complete preemption often

19  applies to complaints drawn to evade federal jurisdiction, a federal court may look beyond the face

20  of the complaint to determine whether the claims alleged as state law causes of action in fact are

21  necessarily federal claims." *Parrino v. FHP, Inc.,* 146 F.3d 699, 704 (9th Cir. 1998) superseded

22  by statute on other grounds as recognized in *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681

23  (9th Cir. 2006); *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1349-50 (9th Cir. 1985) (court

24  may look to facts outside complaint to determine whether an "artfully pleaded" state claim is in

25  reality a section 301 claim for breach of the collective bargaining agreement).

26        16.    The CBAs expressly provide for the wages, hours of work, and working conditions

27  of the employees, expressly provide for paid sick days and premium wage rates for all overtime

28  hours worked, and a regular hourly rate of pay for those employees of not less than 30 percent

1  more than the state minimum wage rate.  (Ex. 9 [Gregorich Dec., Exs. A, B].)  Thus, the CBAs

2  meet the requirements of Labor Code section 245.5 and the right to paid sick days for the

3  employees covered by the CBAs exists solely as a result of the CBAs.  It is therefore preempted

4  under § 301 and removable.

5        17.     Claims under PAGA are removable on the basis of § 301 preemption if the

6  underlying Labor Code claims are removable.  *See Hall*, *supra*, 146 F.Supp.3d at 1204 ("Finally,

7  the fifth cause of action, which seeks civil penalties under Labor Code § 2699.3(a), pleads that

8  plaintiffs are entitled to recover civil penalties due to the statutory violations alleged in the first

9  three causes of action. Consequently, this claim is derivative of those claims, and is preempted for

10  the same reasons they are preempted."); *see also Raphael v. Tesoro Refining and Marketing Co.,*

11  *LLC*, 2015 WL 3970293 (C.D. Cal. 2015) (denying motion to remand on a <u>PAGA-only</u> complaint

12  because underlying Labor Code claims are preempted by Section 301); *Vasserman v. Henry Mayo*

13  *Newhall Memorial Hosp.*, 65 F.Supp.3d 932, 963–64 (C.D. Cal. 2014) (holding that PAGA

14  penalties claim is subject to the same Section 301 preemption analysis as the underlying Labor

15  Code claims).  Here, as set forth above, Plaintiff's claim relating to Defendant's alleged violation

16  of the California Labor Code's paid sick days requirement set forth in section 246 is preempted

17  under Section 301 of the LMRA.  Accordingly, Plaintiff's claim for PAGA penalties is preempted

18  for the same reasons.

19        18.     To the extent that Plaintiff asserts other PAGA penalty claims that are separate

20  from and independent of those arising under Section 301 of the LMRA, they are removable under

21  28 U.S.C. § 1441(c) and pursuant to this Court's supplemental jurisdiction under 28 U.S.C.

22  § 1367.

23                          **SUPPORTING DECLARATION**

24        35.     Declaration of Barbara Gregorich in Support of Defendant's Notice of Removal,

25  attached hereto as **Exhibit 9**.

26                     **SERVICE OF NOTICE OF REMOVAL**

27        36.     Defendant will simultaneously serve this Notice of Removal on Plaintiff, and will

28  promptly file it with the clerk of the Superior Court of the State of California in and for the County

-6-

18987173.1

1 | of Fresno.

2 |      WHEREFORE, Defendant now respectfully requests that this action proceed against it in

3 | this Court as an action properly removed.

4 | DATED:  November 4, 2022            HANSON BRIDGETT LLP

5 |

6 |

         By:       */s/ Rachel J. Vinson*

7 |              SANDRA L. RAPPAPORT

             LISA M. POOLEY

8 |              RACHEL J. VINSON

             Attorneys for Defendant LEPRINO FOODS

9 |              COMPANY

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

18987173.1

DEFENDANT'S NOTICE OF REMOVAL (28 U.S.C. § 1441 (a) Federal Question Jurisdiction)

Exhibit 1

FILED
8/25/2022 1:33 PM
Nocona Soboleski, Clerk of Court
Superior Court of the State of California
County of Kings

_Sandra Tafolla_ Deputy

Sandra Tafolla

Larry W. Lee (State Bar No. 228175)
Kristen M. Agnew (State Bar No. 247656)
Nicholas Rosenthal (State Bar No. 268297)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile
lwlee@diversitylaw.com
kagnew@diversitylaw.com
nrosenthal@diversitylaw.com

William L. Marder (State Bar No. 170131)
bill@polarislawgroup.com
**Polaris Law Group**
501 San Benito Street, Suite 200
Hollister, CA 95023
(831) 531-4214
(831) 634-0333 facsimile

Attorneys for Plaintiff and the Aggrieved Employees

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF KINGS

22C-0317

| | |
|---|---|
| CHRISTOPHER DOMINGUEZ, as an individual and on behalf of all others similarly situated, | **REPRESENTATIVE ACTION COMPLAINT FOR VIOLATION OF LABOR CODE § 2698, _ET SEQ._** |
| Plaintiff, | **DEMAND OVER $25,000.00** |
| vs. | |
| LEPRINO FOODS COMPANY, a Colorado corporation; and DOES 1 through 50, inclusive, | |
| Defendants. | |

REPRESENTATIVE ACTION COMPLAINT

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

1    Plaintiff Christopher Dominguez ("Plaintiff") hereby submits this representative action
2    complaint ("Complaint") against Defendant Leprino Foods Company ("Defendant"), and Does 1
3    through 50 (collectively, "Defendants"), on behalf of himself and aggrieved employees of
4    Defendants for penalties for violations of the California Labor Code as follows:

5                                    **INTRODUCTION**

6        1.      This representative action is within the Court's jurisdiction under California
7    Labor Code sections 201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, 1197.1 and 2698 *et*
8    *seq.*, and the applicable Wage Orders of the California Industrial Welfare Commission ("IWC").

9        2.      This Complaint challenges systemic illegal employment practices resulting in
10   violations of the California Labor Code against individuals who worked for Defendant.

11       3.      Plaintiff is informed and believes, and based thereon alleges, that Defendants,
12   jointly and severally, have acted intentionally and with deliberate indifference and conscious
13   disregard to the rights of all employees by: (a) failing to incorporate all non-discretionary
14   incentive wages in the regular rate of pay used to calculate and pay overtime wages, in violation
15   of Labor Code sections 201-204, 510, 558 and 1194; (b) failing to incorporate all non-
16   discretionary incentive wages in the regular rate of pay used to calculate and pay meal/rest
17   period premiums, in violation of Labor Code sections 201-204, 226.7 and 512; (c) failing to
18   incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and
19   pay sick pay wages, in violation of Labor Code sections 201-204 and 246; and (d) failing to
20   provide accurate itemized wage statements, in violation of Labor Code section 226.

21       4.      Plaintiff is informed and believes, and based thereon alleges, that Defendants
22   have engaged in, among other things a system of willful violations of the California Labor Code
23   and the applicable IWC Wage Orders by creating and maintaining policies, practices, and
24   customs that knowingly deny employees the above stated rights and benefits.

25                                **JURISDICTION AND VENUE**

26       5.      The Court has jurisdiction over the violations of the California Labor Code
27   sections 201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, 1197.1 and 2698 *et seq.*, and the
28   applicable Wage Orders.

REPRESENTATIVE ACTION COMPLAINT

Electronically filed by Superior Court of California, County of Kings, 8/25/2022 4:30 PM, Sandra Tafolla

1     6.     Venue is proper in Kings County because Plaintiff worked for Defendants in

2  Lemoore, California.

3                        **PARTIES**

4     7.     Plaintiff was employed by Defendant as an HVAC Foreman from about October

5  2015, until about June 1, 2022. During his employment with Defendant, Plaintiff worked as an

6  hourly, non-exempt employee.

7     8.     Plaintiff was and is the victim of the policies, practices, and customs of

8  Defendants complained of in this action in ways that have deprived him of the rights guaranteed

9  by California Labor Code sections 2201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, 1197.1

10  and 2698 *et seq.*, and the applicable Wage Orders.

11     9.     Plaintiff is informed and believes, and based thereon alleges, that Defendant

12  Leprino Foods Company was and is a Colorado corporation that maintains operations in the State

13  of California, including in Kings County, California. Plaintiff is informed and believes, and

14  based thereon alleges, that Defendant produces cheese and other dairy products to companies

15  across the United States and in the State of California.

16     10.     Plaintiff is informed and believes, and based thereon alleges, that at all times

17  herein mentioned Does 1 through 50, are and were corporations, business entities, individuals,

18  and partnerships, licensed to do business and actually doing business in the State of California.

19  As such, and based upon all the facts and circumstances incident to Defendants' business,

20  Defendants are subject to the California Labor Code.

21     11.     Plaintiff does not know the true names or capacities, whether individual, partner,

22  or corporate, of the defendants sued herein as Does 1 through 50, inclusive, and for that reason,

23  said defendants are sued under such fictitious names, and Plaintiff prays for leave to amend this

24  Complaint when the true names and capacities are known. Plaintiff is informed and believes and

25  based thereon alleges that each of said fictitious defendants was responsible in some way for the

26  matters alleged herein and proximately caused Plaintiff and aggrieved employees to be subject to

27  the illegal employment practices, wrongs and injuries complained of herein.

28     12.     At all times herein mentioned, each defendant participated in the doing of the acts

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

3

1 hereinafter alleged to have been done by the named Defendant; and furthermore, Defendants,

2 and each of them, were the agents, servants, and employees of each of the other defendants, as

3 well as the agents of all Defendants, and at all times herein mentioned, were acting within the

4 course and scope of said agency and employment.

5 13. Plaintiff is informed and believes, and based thereon alleges, that at all times

6 material hereto, each of the Defendants named herein was the agent, employee, alter ego and/or

7 joint venturer of, or working in concert with each of the other co-Defendants and was acting

8 within the course and scope of such agency, employment, joint venture, or concerted activity. To

9 the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the

10 remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting

11 Defendants.

12 14. At all times herein mentioned, Defendants, and each of them, were members of,

13 and engaged in, a joint venture, partnership, and common enterprise, and acting within the course

14 and scope of, and in pursuance of, said joint venture, partnership, and common enterprise.

15 15. At all times herein mentioned, the acts and omissions of various Defendants, and

16 each of them, concurred and contributed to the various acts and omissions of each and all of the

17 other Defendants in proximately causing the injuries and damages as herein alleged. At all times

18 herein mentioned, Defendants, and each of them, ratified each and every act or omission

19 complained of herein. At all times herein mentioned, Defendants, and each of them, aided and

20 abetted the acts and omissions of each and all of the other Defendants in proximately causing the

21 damages as herein alleged.

22 **FIRST CAUSE OF ACTION**

23 **VIOLATION OF LABOR CODE § 2698, *ET SEQ.***

24 **(BY PLAINTIFF AND AGGRIEVED EMPLOYEES AGAINST ALL DEFENDANTS)**

25 16. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as

26 though fully set forth herein.

27 17. Plaintiff brings this cause of action as a proxy for the State of California, and in

28 this capacity, seeks penalties on behalf of all Aggrieved Employees from June 21, 2021, through

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

4

the present, for Defendant's policy and practice of: (a) failing to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay overtime wages, in violation of Labor Code sections 201-204, 510, 558 and 1194; (b) failing to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay meal/rest period premiums, in violation of Labor Code sections 201-204, 226.7 and 512; (c) failing to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay sick pay wages, in violation of Labor Code sections 201-204 and 246; and (d) failing to provide accurate itemized wage statements, in violation of Labor Code section 226.

18.     As a pattern and practice, Defendant paid Plaintiff and Aggrieved Employees overtime wages based on the incorrect regular rate of pay. During workweeks when employees worked overtime and earned non-discretionary incentive pay, Defendant failed to properly calculate the regular rate of pay for purposes of paying overtime. Specifically, Defendant failed to incorporate the non-discretionary pay, including without limitation, shift differentials, into the calculation of the regular rate of pay. As a result of such policy and practice, Defendant underpaid overtime wages to Plaintiff and Aggrieved Employees and thus owe additional overtime wages.

19.     Defendant failed in its affirmative obligation to ensure that Plaintiff and Aggrieved Employees had the opportunity to take and were provided with off-duty meal and rest periods in accordance with the mandates of the California Labor Code and the applicable IWC Wage Order.

20.     Pursuant to Labor Code section 226.7, for each workday that a meal or rest period is not provided, employees are entitled to one additional hour of pay at the employee's regular rate of pay. Defendant, however, paid meal and rest period premium wages at an employee's base hourly rate of pay, which did not include non-discretionary incentive pay, including without limitation, shift differentials. As such, Plaintiff and t Aggrieved Employees are owed additional meal and rest period premiums based on the correct, higher regular rate of pay.

21.     Defendant failed in its affirmative obligation to pay sick time wages in accordance with Labor Code section 246. Labor Code section 246 provides that an employee is

5

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM, Sandra Tafolla

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

1  entitled to receive sick time pay. The employer shall calculate paid sick leave by using one of

2  two calculations: (1) "Paid sick time for nonexempt employees shall be calculated in the same

3  manner as the regular rate of pay for the workweek in which the employee uses paid sick time,

4  whether or not the employee actually works overtime in that workweek;" or (2) "Paid sick time

5  for nonexempt employees shall be calculated by dividing the employee's total wages, not

6  including overtime premium pay, by the employee's total hours worked in the full pay periods of

7  the prior 90 days of employment."

8      22.    Whenever Defendant paid Plaintiff and Aggrieved Employees sick pay pursuant

9  to California Labor Code section 246, Defendant did so at the incorrect rate of pay. Plaintiff and

10 Aggrieved Employees routinely earned non-discretionary incentive remuneration, including

11 without limitation, shift differentials, thereby increasing their regular rates of pay to amounts that

12 were higher than their base rates of pay. However, whenever sick pay was paid to Plaintiff and

13 Aggrieved Employees, it was paid only at their base rates of pay, rather than the higher regular

14 rates of pay, as required under Labor Code section 246.

15     23.    Defendant failed in its affirmative obligation to provide <u>accurate</u> itemized wage

16 statements, in violation of Labor Code section 226.As a result of the underpayment of overtime,

17 meal period premiums and rest period premiums, Defendant issued inaccurate wage statements

18 to Plaintiff and Aggrieved Employees. In this regard, the wage statements failed to accurately

19 identify the hourly rates of pay, gross wages earned, and net wages earned.

20     24.    Separately, whenever overtime and/or shift differential wages were paid, the wage

21 statements issued to Aggrieved Employees did not identify the accurate total hours worked. In

22 particular, when the hours shown on the wage statements are added up, they do not appear to add

23 up to the actual total hours worked.

24     11.    On or about June 21 2022, Plaintiff sent written notice to the California Labor &

25 Workforce Development Agency ("LWDA") of Defendant's violation of Labor Code sections

26 201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, and 1197.1, pursuant to Labor Code

27 section 2698, *et seq.*, the Private Attorneys General Act ("PAGA"). To date, the LWDA has not

28 responded to Plaintiff's written notice.

REPRESENTATIVE ACTION COMPLAINT

12.     As such, pursuant to Labor Code section 2699(a), Plaintiff seeks recovery of any and all applicable civil penalties for Defendant's violation of Labor Code sections 201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, and 1197.1, for the time period described above, on behalf of himself and other Aggrieved Employees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment for himself and all others on whose behalf this suit is brought against Defendants, jointly and severally, as follows:

1.     Upon the First Cause of Action, for penalties pursuant to statute as set forth in California Labor Code sections 226.3 and 2698, *et seq.*, and for costs and attorneys' fees;

2.     On all causes of action for attorneys' fees and costs as provided by California Labor Code sections 2699, and Code of Civil Procedure section 1021.5; and

3.     For such other and further relief the Court may deem just and proper.

DATED: August 25, 2022                    DIVERSITY LAW GROUP, P.C.

By:_____
             Larry W. Lee
             Kristen M. Agnew
             Nicholas Rosenthal
             Attorneys for Plaintiff and the Aggrieved
             Employees

REPRESENTATIVE ACTION COMPLAINT

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

Exhibit 2

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*
FILED
8/25/2022 1:33 PM
Nocona Soboleski, Clerk of Court
Superior Court of the State of California
County of Kings

_____ Deputy

Sandra Tafolla

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LEPRINO FOODS COMPANY, a Colorado corporation; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHRISTOPHER DOMINGUEZ, as an individual and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Kings<br>1640 Kings County Drive, Hanford, CA 93230 | CASE NUMBER: *(Número del Caso):*<br>22C-0317 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Larry W. Lee, Diversity Law Group, 515 S. Figueroa Street, Suite 1250, Los Angeles, CA 90071, (213) 488-6555

| | | | |
|---|---|---|---|
| DATE: 8/25/2022<br>*(Fecha)* | Clerk Of Court, Nocona Soboleski | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

Sandra Tafolla

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* LEPRINO FOODS COMPANY, A COLORADO CORPORATION

    under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** |

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Electronically filed by Superior Court of California, County of Kings, 8/25/2022 4:30 PM, Sandra Tafolla

Exhibit 3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Larry W. Lee (SBN 228175) / DIVERSITY LAW GROUP<br>515 S. Figueroa Street, Suite 1250, Los Angeles, CA 90071 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: (213) 488-6555    FAX NO. (Optional):<br>E-MAIL ADDRESS: lwlee@diversitylaw.com<br>ATTORNEY FOR (Name): Plaintiff Christopher Dominguez | FILED<br>8/25/2022 1:33 PM<br>Nocona Soboleski, Clerk of Court<br>Superior Court of the State of California<br>County of Kings |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF KINGS
STREET ADDRESS: 1640 Kings County Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Hanford, CA 93230
BRANCH NAME: Kings Superior Court

Sandra Tafolla _____ Deputy

CASE NAME:
Christopher Dominguez v. Leprino Foods Company

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER 22C-0317 |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount demanded exceeds $25,000) | [ ] Limited<br>(Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): One (1)
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: August 25, 2022
Larry W. Lee
_____
(TYPE OR PRINT NAME)             (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Electronically filed by Superior Court of California, County of Kings, 8/25/2022 4:30 PM, Sandra Tafolla

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

Electronically filed by Superior Court of California, County of Kings 8/25/2022 4:30 PM ,Sandra Tafolla

Exhibit 4

| SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>**COUNTY OF KINGS**<br>**1640 Kings County Drive Hanford California 93230** | FOR COURT USE ONLY<br><br>CONFORMED COPY<br>ORIGINAL FILED ON<br><br>AUG 25 2022<br><br>NOCONA SOBOLESKI, CLERK OF COURT<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF KINGS<br>DEPUTY<br><br>SANDRA TAFOLLA |
|---|---|
| **PLAINTIFF:** CHRISTOPHER DOMINGUEZ | |
| **DEFENDANT:** LEPRINO FOODS COMPANY | |
| **NOTICE OF JUDICIAL ASSIGNMENT AND CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>**22C-0317** |

**TO ALL INTERESTED PARTIES**: Pursuant to the Standing Order Regarding Judicial Assignments, you are hereby notified that this case is assigned to **Melissa D'Morias** for all purposes (i.e., motions, pre-trials, settlement conferences, trials, post review hearings).

You are further notified that a ***Mandatory Case Management Conference*** has been scheduled in this matter as set forth below. All parties must be ready to discuss all issues described in California Rule of Court, Rule 3.728.

| Date: **December 27, 2022** | Time: **10:30 AM** | **Department 7** |
|---|---|---|
| Address of the Court: **1640 Kings County Drive Hanford California 93230** | | |

**Notice to Defendant[s]:** The Case Management Conference is not a trial. You will need to preserve your rights by filing a written response within thirty [30] days of the date you were served with the Summons and Complaint. You must also have the Plaintiff served with a copy of the response you file with the court. A letter or phone call will not protect you. Your written response must be in proper legal format if you want the court to hear your case. There may be a court form that you can use for your response. If you do not do so, a judgment may be obtained against you. If a judgment is obtained prior to the Case Management Conference date, the Case Management Conference will be cancelled.

Parties are also required to meet and confer no later than thirty [30] calendar days before the above-referenced case management conference date as required in California Rule of Court 3.728

It is the plaintiff's responsibility to notify all parties of the case management conference who are not otherwise listed on the attached proof of service by mail.

All requests for telephonic appearances must be requested in writing at least 10 court days prior to the scheduled hearing.

**No later than fifteen [15] days** prior to the date set above, each party must file a Case Management Statement (Judicial Council form CM-110). If two or more parties so desire, they may file a joint case management statement.

Dated: 8/25/2022

**Nocona Soboleski**, Clerk of Court

By: Sandra Tafolla, Deputy Clerk

---

NOTICE OF JUDICIAL ASSIGNMENT AND CASE MANAGEMENT CONFERENCE

(Revised 04/08/16)

1

## PROOF OF SERVICE BY MAIL
-o0o-

2

3    Superior Court of the State of California        } Case Number: 22C-0317
4    County of Kings                    ss.          }

5

6        I hereby declare under penalty of perjury that I am employed by the Kings County Superior

7    Court, over the age of eighteen (18) years, and not a party to the within action.

8
         That on **August 25, 2022** I served the attached by placing a true copy thereof, enclosed in a
9

10   sealed envelope and deposited at my place of business for collection and mailing with the United States

11   mail at Hanford, California, following our ordinary business practices with which I am readily familiar,

12   addressed as follows:

13
         **Larry W. Lee**
14       **Attorney at Law**
         **515 S. Figueroa Street, Suite 1250**
15       **Los Angeles, CA 90071**

16
         **Attorney for Plaintiff**
17
     Executed on **August 25, 2022,** at Hanford, California.
18

19                                              **Nocona Soboleski**, Clerk of the Court

20                              By: _____

21                                  Sandra Tafolla, Deputy Clerk

22

23

24

25

26

27

28

ATTACHED PROOF OF SERVICE

Exhibit 5

Electronically filed by Superior Court of California, County of Kings,10/27/2022 1:24 PM ,Candy Ochoa

1   Larry W. Lee (State Bar No. 228175)
2   Kristen M. Agnew (State Bar No. 247656)
    Nicholas Rosenthal (State Bar No. 268297)
3   **DIVERSITY LAW GROUP, P.C.**
    515 S. Figueroa Street, Suite 1250
4   Los Angeles, CA 90071
    (213) 488-6555
5   (213) 488-6554 facsimile
6   lwlee@diversitylaw.com
    kagnew@diversitylaw.com
7   nrosenthal@diversitylaw.com

8   William L. Marder (State Bar No. 170131)
9   bill@polarislawgroup.com
    **Polaris Law Group**
10   501 San Benito Street, Suite 200
    Hollister, CA 95023
11   (831) 531-4214
12   (831) 634-0333 facsimile

13   Attorneys for Plaintiff and the Aggrieved Employees

FILED
10/27/2022 10:58 AM
Nocona Soboleski, Clerk of Court
Superior Court of the State of California
County of Kings

_____ Deputy
Candy Ochoa

---

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF KINGS

| | |
|---|---|
| CHRISTOPHER DOMINGUEZ, as an individual and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    vs.<br><br>LEPRINO FOODS COMPANY, a Colorado corporation; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No.: 22C-0317<br><br>**FIRST AMENDED REPRESENTATIVE ACTION COMPLAINT FOR VIOLATION OF LABOR CODE § 2698, *ET SEQ.*<br><br>DEMAND OVER $25,000.00** |

1

Electronically filed by Superior Court of California, County of Kings,10/27/2022 1:24 PM ,Candy Ochoa

Plaintiff Christopher Dominguez ("Plaintiff") hereby submits this First Amended Representative Action Complaint ("Complaint") against Defendant Leprino Foods Company ("Defendant"), and Does 1 through 50 (collectively, "Defendants"), on behalf of himself and aggrieved employees of Defendants for penalties for violations of the California Labor Code as follows:

## INTRODUCTION

1.      This representative action is within the Court's jurisdiction under California Labor Code sections 201-204, 226, 246, and 2698 *et seq.*, and the applicable Wage Orders of the California Industrial Welfare Commission ("IWC").

2.      This Complaint challenges systemic illegal employment practices resulting in violations of the California Labor Code against individuals who worked for Defendant.

3.      Plaintiff is informed and believes, and based thereon alleges, that Defendants, jointly and severally, have acted intentionally and with deliberate indifference and conscious disregard to the rights of all employees by: (a) failing to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay sick pay wages, in violation of Labor Code sections 201-204 and 246; and (b) failing to provide accurate itemized wage statements, in violation of Labor Code section 226.

4.      Plaintiff is informed and believes, and based thereon alleges, that Defendants have engaged in, among other things a system of willful violations of the California Labor Code and the applicable IWC Wage Orders by creating and maintaining policies, practices, and customs that knowingly deny employees the above stated rights and benefits.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the violations of the California Labor Code sections 201-204, 226, 246, and 2698 *et seq.*, and the applicable Wage Orders.

6.      Venue is proper in Kings County because Plaintiff worked for Defendants in Lemoore, California.

## PARTIES

7.      Plaintiff was employed by Defendant as an HVAC Foreman from about October

Electronically filed by Superior Court of California, County of Kings,10/27/2022 1:24 PM ,Candy Ochoa

2015, until about June 1, 2022. During his employment with Defendant, Plaintiff worked as an hourly, non-exempt employee.

8.     Plaintiff was and is the victim of the policies, practices, and customs of Defendants complained of in this action in ways that have deprived him of the rights guaranteed by California Labor Code sections 201-204, 226, 246, and 2698 *et seq.*, and the applicable Wage Orders.

9.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Leprino Foods Company was and is a Colorado corporation that maintains operations in the State of California, including in Kings County, California. Plaintiff is informed and believes, and based thereon alleges, that Defendant produces cheese and other dairy products to companies across the United States and in the State of California.

10.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned Does 1 through 50, are and were corporations, business entities, individuals, and partnerships, licensed to do business and actually doing business in the State of California. As such, and based upon all the facts and circumstances incident to Defendants' business, Defendants are subject to the California Labor Code.

11.     Plaintiff does not know the true names or capacities, whether individual, partner, or corporate, of the defendants sued herein as Does 1 through 50, inclusive, and for that reason, said defendants are sued under such fictitious names, and Plaintiff prays for leave to amend this Complaint when the true names and capacities are known. Plaintiff is informed and believes and based thereon alleges that each of said fictitious defendants was responsible in some way for the matters alleged herein and proximately caused Plaintiff and aggrieved employees to be subject to the illegal employment practices, wrongs and injuries complained of herein.

12.     At all times herein mentioned, each defendant participated in the doing of the acts hereinafter alleged to have been done by the named Defendant; and furthermore, Defendants, and each of them, were the agents, servants, and employees of each of the other defendants, as well as the agents of all Defendants, and at all times herein mentioned, were acting within the course and scope of said agency and employment.

FIRST AMENDED REPRESENTATIVE ACTION COMPLAINT

Electronically filed by Superior Court of California, County of Kings,10/27/2022 1:24 PM ,Candy Ochoa

13.     Plaintiff is informed and believes, and based thereon alleges, that at all times material hereto, each of the Defendants named herein was the agent, employee, alter ego and/or joint venturer of, or working in concert with each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity. To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendants.

14.     At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership, and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership, and common enterprise.

15.     At all times herein mentioned, the acts and omissions of various Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged. At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages as herein alleged.

## FIRST CAUSE OF ACTION

### VIOLATION OF LABOR CODE § 2698, *ET SEQ*.

### (BY PLAINTIFF AND AGGRIEVED EMPLOYEES AGAINST ALL DEFENDANTS)

16.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

17.     Plaintiff brings this cause of action as a proxy for the State of California, and in this capacity, seeks penalties on behalf of all Aggrieved Employees from June 21, 2021, through the present, for Defendant's policy and practice of: (a) failing to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay sick pay wages, in violation of Labor Code sections 201-204 and 246; and (b) failing to provide accurate itemized wage statements, in violation of Labor Code section 226.

Electronically filed by Superior Court of California, County of Kings,10/27/2022 1:24 PM ,Candy Ochoa

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

18.     Defendant failed in its affirmative obligation to pay sick time wages in accordance with Labor Code section 246. Labor Code section 246 provides that an employee is entitled to receive sick time pay. The employer shall calculate paid sick leave by using one of two calculations: (1) "Paid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek;" or (2) "Paid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

19.     Whenever Defendant paid Plaintiff and Aggrieved Employees sick pay pursuant to California Labor Code section 246, Defendant did so at the incorrect rate of pay. Plaintiff and Aggrieved Employees routinely earned non-discretionary incentive remuneration, including without limitation, shift differentials, thereby increasing their regular rates of pay to amounts that were higher than their base rates of pay. However, whenever sick pay was paid to Plaintiff and Aggrieved Employees, it was paid only at their base rates of pay, rather than the higher regular rates of pay, as required under Labor Code section 246.

20.     Defendant failed in its affirmative obligation to provide <u>accurate</u> itemized wage statements, in violation of Labor Code section 226.As a result of the underpayment of  sick pay wages, Defendant issued inaccurate wage statements to Plaintiff and Aggrieved Employees. In this regard, the wage statements failed to accurately identify the hourly rates of pay, gross wages earned, and net wages earned.

21.     Separately, whenever overtime and/or shift differential wages were paid, the wage statements issued to Aggrieved Employees did not identify the accurate total hours worked. In particular, when the hours shown on the wage statements are added up, they do not appear to add up to the actual total hours worked.

11.     On or about June 21 2022, Plaintiff sent written notice to the California Labor & Workforce Development Agency ("LWDA") of Defendant's violation of Labor Code sections 201-204, 226,  and 246, pursuant to Labor Code section 2698, *et seq*., the Private Attorneys

Electronically filed by Superior Court of California, County of Kings,10/27/2022 1:24 PM ,Candy Ochoa

General Act ("PAGA"). To date, the LWDA has not responded to Plaintiff's written notice.

12.    As such, pursuant to Labor Code section 2699(a), Plaintiff seeks recovery of any and all applicable civil penalties for Defendant's violation of Labor Code sections 201-204, 226, and 246, for the time period described above, on behalf of himself and other Aggrieved Employees.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment for himself and all others on whose behalf this suit is brought against Defendants, jointly and severally, as follows:

1.    Upon the First Cause of Action, for penalties pursuant to statute as set forth in California Labor Code sections 226.3 and 2698, *et seq.*, and for costs and attorneys' fees;

2.    On all causes of action for attorneys' fees and costs as provided by California Labor Code sections 2699, and Code of Civil Procedure section 1021.5; and

3.    For such other and further relief the Court may deem just and proper.

DATED: October 27, 2022                    DIVERSITY LAW GROUP, P.C.


By:_____
        Larry W. Lee
        Kristen M. Agnew
        Nicholas Rosenthal
Attorneys for Plaintiff and the Aggrieved
Employees

FIRST AMENDED REPRESENTATIVE ACTION COMPLAINT

Electronically filed by Superior Court of California, County of Kings;10/27/2022 1:24 PM ,Candy Ochoa

**PROOF OF SERVICE**

**(Code of Civil Procedure Sections 1013a, 2015.5)**

STATE OF CALIFORNIA       ]
                                 ]ss.

COUNTY OF LOS ANGELES   ]

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 515 S. Figueroa Street, Suite 1250, Los Angeles, California 90071.

     On October 27, 2022, I served the following document(s) described as:  **FIRST AMENDED REPRESENTATIVE ACTION COMPLAINT FOR VIOLATION OF LABOR CODE § 2698, *ET SEQ.*** on the interested parties in this action as follows:

Leprino Foods Company
CSC - Lawyers Incorporating Service
2710 Gateway Oaks Dr, Ste. 150N
Sacramento, CA  95833
*Agent for Service of Process*

    __X__    BY MAIL: by placing _____ the original or __X__ a true and correct copy thereof enclosed, in (a) sealed envelope(s) addressed to the party(ies) listed above or on the attached mailing list. I am readily familiar with the firm's practice for collection and processing of correspondence and other materials for mailing with the United States Postal Service.  On this date, I sealed the envelope(s) containing the above materials and placed the envelope(s) for collection and mailing on this date at the address above following our office's ordinary business practices.  The envelope(s) will be deposited with the United States Postal Service on this date, in the ordinary course of business.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on October 27, 2022, at Los Angeles, California.



Erika Mena

Exhibit 6

**From:** sop@cscglobal.com <sop@cscglobal.com>
**Sent:** Wednesday, October 5, 2022 5:15 PM
**To:** Tracy Welfringer Daniel <twelfringer@leprinofoods.com>
**Subject:** Notice of Service of Process - Transmittal Number:25676031

**NOTICE OF SERVICE OF PROCESS**

**Transmittal Number: 25676031**
(Click the Transmittal Number to view your SOP)

Pursuant to client instructions, we are forwarding this summary and Notice of Service of Process.

| | |
|---|---|
| **Entity:** | Leprino Foods Company |
| **Entity I.D. Number:** | 3988595 |
| **Entity Served:** | Leprino Foods Company |
| **Title of Action:** | Christopher Dominguez vs. Leprino Foods Company |
| **Matter Name/ID:** | Christopher Dominguez vs. Leprino Foods Company (13036064) |
| **Document(s) type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Kings County Superior Court, California |
| **Case/Reference No:** | 22C-0317 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC** | 10/05/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |

**Sender Information:**
Diversity Law Group
213-488-6555

**Primary Contact:**
Tracy Welfringer Daniel
Leprino Foods Company

**Electronic copy provided to:**
Jon Alby

---

**NOTES:**

To review other documents in this matter, please link to CSC's Matter Management Services at
www.cscglobal.com

---

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the document(s) and taking appropriate action.

---

251 Little Falls Drive, Wilmington, Delaware 19808-1674
(888) 690-2882   |   sop@cscglobal.com

**[EXTERNAL EMAIL]**
**WARNING:** This email originated outside of Leprino. Even if this looks like an internal Leprino email, it is not.
**DO NOT** provide your username, password, or any other personal information in response to this or any other email.
**LEPRINO WILL NEVER** ask you for your username or password via email.
**DO NOT CLICK** links or attachments unless you are positive the content is safe.
**IF IN DOUBT** about the safety of this message, use the Report Phishing drop-down.

**[EXTERNAL EMAIL]**
**WARNING:** This email originated outside of Leprino. Even if this looks like an internal Leprino email, it is not.
**DO NOT** provide your username, password, or any other personal information in response to this or any other email.
**LEPRINO WILL NEVER** ask you for your username or password via email.
**DO NOT CLICK** links or attachments unless you are positive the content is safe.
**IF IN DOUBT** about the safety of this message, use the Report Phishing drop-down.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LEPRINO FOODS COMPANY, a Colorado corporation; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHRISTOPHER DOMINGUEZ, as an individual and on behalf of all others similarly situated,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
FILED
8/25/2022 1:33 PM
Nocona Soboleski, Clerk of Court
Superior Court of the State of California
County of Kings

_____ Deputy
Sandra Tafolla

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Kings
1640 Kings County Drive, Hanford, CA 93230

CASE NUMBER: *(Número del Caso):*
22C-0317

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Larry W. Lee, Diversity Law Group, 515 S. Figueroa Street, Suite 1250, Los Angeles, CA 90071, (213) 488-6555

DATE: 8/25/2022           Clerk Of Court, Nocona Soboleski      Clerk, by _____, Deputy
*(Fecha)*                                                        *(Secretario)*                    Sandra Tafolla         *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* LEPRINO FOODS COMPANY, A COLORADO CORPORATION
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

FILED
8/25/2022 1:33 PM
Nocona Soboleski, Clerk of Court
Superior Court of the State of California
County of Kings

_____ Deputy
Sandra Tafolla

1   Larry W. Lee (State Bar No. 228175)
2   Kristen M. Agnew (State Bar No. 247656)
    Nicholas Rosenthal (State Bar No. 268297)
3   **DIVERSITY LAW GROUP, P.C.**
    515 S. Figueroa Street, Suite 1250
4   Los Angeles, CA 90071
5   (213) 488-6555
    (213) 488-6554 facsimile
6   lwlee@diversitylaw.com
    kagnew@diversitylaw.com
7   nrosenthal@diversitylaw.com

8   William L. Marder (State Bar No. 170131)
9   bill@polarislawgroup.com
    **Polaris Law Group**
10  501 San Benito Street, Suite 200
    Hollister, CA 95023
11  (831) 531-4214
12  (831) 634-0333 facsimile

13  Attorneys for Plaintiff and the Aggrieved Employees

14

15

16              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17                      **FOR THE COUNTY OF KINGS**      22C-0317

18  CHRISTOPHER DOMINGUEZ, as an          **REPRESENTATIVE ACTION COMPLAINT**
    individual and on behalf of all others    **FOR VIOLATION OF LABOR CODE § 2698,**
19  similarly situated,                        *ET SEQ.*

20              Plaintiff,                    **DEMAND OVER $25,000.00**

21       vs.

22

23  LEPRINO FOODS COMPANY, a
    Colorado corporation; and DOES 1
24  through 50, inclusive,

25              Defendants.

26

27

28

                                            1
                        REPRESENTATIVE ACTION COMPLAINT

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

1    Plaintiff Christopher Dominguez ("Plaintiff") hereby submits this representative action

2  complaint ("Complaint") against Defendant Leprino Foods Company ("Defendant"), and Does 1

3  through 50 (collectively, "Defendants"), on behalf of himself and aggrieved employees of

4  Defendants for penalties for violations of the California Labor Code as follows:

5                                **INTRODUCTION**

6        1.      This representative action is within the Court's jurisdiction under California

7  Labor Code sections 201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, 1197.1 and 2698 *et*

8  *seq.*, and the applicable Wage Orders of the California Industrial Welfare Commission ("IWC").

9        2.      This Complaint challenges systemic illegal employment practices resulting in

10  violations of the California Labor Code against individuals who worked for Defendant.

11        3.      Plaintiff is informed and believes, and based thereon alleges, that Defendants,

12  jointly and severally, have acted intentionally and with deliberate indifference and conscious

13  disregard to the rights of all employees by: (a) failing to incorporate all non-discretionary

14  incentive wages in the regular rate of pay used to calculate and pay overtime wages, in violation

15  of Labor Code sections 201-204, 510, 558 and 1194; (b) failing to incorporate all non-

16  discretionary incentive wages in the regular rate of pay used to calculate and pay meal/rest

17  period premiums, in violation of Labor Code sections 201-204, 226.7 and 512; (c) failing to

18  incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and

19  pay sick pay wages, in violation of Labor Code sections 201-204 and 246; and (d) failing to

20  provide accurate itemized wage statements, in violation of Labor Code section 226.

21        4.      Plaintiff is informed and believes, and based thereon alleges, that Defendants

22  have engaged in, among other things a system of willful violations of the California Labor Code

23  and the applicable IWC Wage Orders by creating and maintaining policies, practices, and

24  customs that knowingly deny employees the above stated rights and benefits.

25                            **JURISDICTION AND VENUE**

26        5.      The Court has jurisdiction over the violations of the California Labor Code

27  sections 201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, 1197.1 and 2698 *et seq.*, and the

28  applicable Wage Orders.

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

2

6.     Venue is proper in Kings County because Plaintiff worked for Defendants in Lemoore, California.

### PARTIES

7.     Plaintiff was employed by Defendant as an HVAC Foreman from about October 2015, until about June 1, 2022. During his employment with Defendant, Plaintiff worked as an hourly, non-exempt employee.

8.     Plaintiff was and is the victim of the policies, practices, and customs of Defendants complained of in this action in ways that have deprived him of the rights guaranteed by California Labor Code sections 2201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, 1197.1 and 2698 *et seq.*, and the applicable Wage Orders.

9.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Leprino Foods Company was and is a Colorado corporation that maintains operations in the State of California, including in Kings County, California. Plaintiff is informed and believes, and based thereon alleges, that Defendant produces cheese and other dairy products to companies across the United States and in the State of California.

10.    Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned Does 1 through 50, are and were corporations, business entities, individuals, and partnerships, licensed to do business and actually doing business in the State of California. As such, and based upon all the facts and circumstances incident to Defendants' business, Defendants are subject to the California Labor Code.

11.    Plaintiff does not know the true names or capacities, whether individual, partner, or corporate, of the defendants sued herein as Does 1 through 50, inclusive, and for that reason, said defendants are sued under such fictitious names, and Plaintiff prays for leave to amend this Complaint when the true names and capacities are known. Plaintiff is informed and believes and based thereon alleges that each of said fictitious defendants was responsible in some way for the matters alleged herein and proximately caused Plaintiff and aggrieved employees to be subject to the illegal employment practices, wrongs and injuries complained of herein.

12.    At all times herein mentioned, each defendant participated in the doing of the acts

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

1   hereinafter alleged to have been done by the named Defendant; and furthermore, Defendants,

2   and each of them, were the agents, servants, and employees of each of the other defendants, as

3   well as the agents of all Defendants, and at all times herein mentioned, were acting within the

4   course and scope of said agency and employment.

5       13.    Plaintiff is informed and believes, and based thereon alleges, that at all times

6   material hereto, each of the Defendants named herein was the agent, employee, alter ego and/or

7   joint venturer of, or working in concert with each of the other co-Defendants and was acting

8   within the course and scope of such agency, employment, joint venture, or concerted activity. To

9   the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the

10  remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting

11  Defendants.

12      14.    At all times herein mentioned, Defendants, and each of them, were members of,

13  and engaged in, a joint venture, partnership, and common enterprise, and acting within the course

14  and scope of, and in pursuance of, said joint venture, partnership, and common enterprise.

15      15.    At all times herein mentioned, the acts and omissions of various Defendants, and

16  each of them, concurred and contributed to the various acts and omissions of each and all of the

17  other Defendants in proximately causing the injuries and damages as herein alleged. At all times

18  herein mentioned, Defendants, and each of them, ratified each and every act or omission

19  complained of herein. At all times herein mentioned, Defendants, and each of them, aided and

20  abetted the acts and omissions of each and all of the other Defendants in proximately causing the

21  damages as herein alleged.

## FIRST CAUSE OF ACTION

## VIOLATION OF LABOR CODE § 2698, *ET SEQ.*

## (BY PLAINTIFF AND AGGRIEVED EMPLOYEES AGAINST ALL DEFENDANTS)

25      16.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as

26  though fully set forth herein.

27      17.    Plaintiff brings this cause of action as a proxy for the State of California, and in

28  this capacity, seeks penalties on behalf of all Aggrieved Employees from June 21, 2021, through

4

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

1   the present, for Defendant's policy and practice of: (a) failing to incorporate all non-discretionary

2   incentive wages in the regular rate of pay used to calculate and pay overtime wages, in violation

3   of Labor Code sections 201-204, 510, 558 and 1194; (b) failing to incorporate all non-

4   discretionary incentive wages in the regular rate of pay used to calculate and pay meal/rest

5   period premiums, in violation of Labor Code sections 201-204, 226.7 and 512; (c) failing to

6   incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and

7   pay sick pay wages, in violation of Labor Code sections 201-204 and 246; and (d) failing to

8   provide accurate itemized wage statements, in violation of Labor Code section 226.

9       18.     As a pattern and practice, Defendant paid Plaintiff and Aggrieved Employees

10  overtime wages based on the incorrect regular rate of pay. During workweeks when employees

11  worked overtime and earned non-discretionary incentive pay, Defendant failed to properly

12  calculate the regular rate of pay for purposes of paying overtime. Specifically, Defendant failed

13  to incorporate the non-discretionary pay, including without limitation, shift differentials, into the

14  calculation of the regular rate of pay. As a result of such policy and practice, Defendant

15  underpaid overtime wages to Plaintiff and Aggrieved Employees and thus owe additional

16  overtime wages.

17      19.     Defendant failed in its affirmative obligation to ensure that Plaintiff and

18  Aggrieved Employees had the opportunity to take and were provided with off-duty meal and rest

19  periods in accordance with the mandates of the California Labor Code and the applicable IWC

20  Wage Order.

21      20.     Pursuant to Labor Code section 226.7, for each workday that a meal or rest period

22  is not provided, employees are entitled to one additional hour of pay at the employee's regular

23  rate of pay. Defendant, however, paid meal and rest period premium wages at an employee's

24  base hourly rate of pay, which did not include non-discretionary incentive pay, including without

25  limitation, shift differentials. As such, Plaintiff and t Aggrieved Employees are owed additional

26  meal and rest period premiums based on the correct, higher regular rate of pay.

27      21.     Defendant failed in its affirmative obligation to pay sick time wages in

28  accordance with Labor Code section 246. Labor Code section 246 provides that an employee is

Electronically filed by Superior Court of California, County of Kings.8/25/2022 4:30 PM, Sandra Tafolla

5

entitled to receive sick time pay. The employer shall calculate paid sick leave by using one of two calculations: (1) "Paid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek;" or (2) "Paid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

22.    Whenever Defendant paid Plaintiff and Aggrieved Employees sick pay pursuant to California Labor Code section 246, Defendant did so at the incorrect rate of pay. Plaintiff and Aggrieved Employees routinely earned non-discretionary incentive remuneration, including without limitation, shift differentials, thereby increasing their regular rates of pay to amounts that were higher than their base rates of pay. However, whenever sick pay was paid to Plaintiff and Aggrieved Employees, it was paid only at their base rates of pay, rather than the higher regular rates of pay, as required under Labor Code section 246.

23.    Defendant failed in its affirmative obligation to provide accurate itemized wage statements, in violation of Labor Code section 226. As a result of the underpayment of overtime, meal period premiums and rest period premiums, Defendant issued inaccurate wage statements to Plaintiff and Aggrieved Employees. In this regard, the wage statements failed to accurately identify the hourly rates of pay, gross wages earned, and net wages earned.

24.    Separately, whenever overtime and/or shift differential wages were paid, the wage statements issued to Aggrieved Employees did not identify the accurate total hours worked. In particular, when the hours shown on the wage statements are added up, they do not appear to add up to the actual total hours worked.

11.    On or about June 21 2022, Plaintiff sent written notice to the California Labor & Workforce Development Agency ("LWDA") of Defendant's violation of Labor Code sections 201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, and 1197.1, pursuant to Labor Code section 2698, *et seq.*, the Private Attorneys General Act ("PAGA"). To date, the LWDA has not responded to Plaintiff's written notice.

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

6

12.     As such, pursuant to Labor Code section 2699(a), Plaintiff seeks recovery of any and all applicable civil penalties for Defendant's violation of Labor Code sections 201-204, 226, 226.7, 246, 510, 512, 558, 1194, 1197, and 1197.1, for the time period described above, on behalf of himself and other Aggrieved Employees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment for himself and all others on whose behalf this suit is brought against Defendants, jointly and severally, as follows:

1.     Upon the First Cause of Action, for penalties pursuant to statute as set forth in California Labor Code sections 226.3 and 2698, *et seq.*, and for costs and attorneys' fees;

2.     On all causes of action for attorneys' fees and costs as provided by California Labor Code sections 2699, and Code of Civil Procedure section 1021.5; and

3.     For such other and further relief the Court may deem just and proper.

DATED: August 25, 2022                    DIVERSITY LAW GROUP, P.C.

By:_____
Larry W. Lee
Kristen M. Agnew
Nicholas Rosenthal
Attorneys for Plaintiff and the Aggrieved
Employees

REPRESENTATIVE ACTION COMPLAINT

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Larry W. Lee (SBN 228175) / DIVERSITY LAW GROUP<br>515 S. Figueroa Street, Suite 1250, Los Angeles, CA 90071<br><br>TELEPHONE NO.: (213) 488-6555   FAX NO. (Optional):<br>E-MAIL ADDRESS: lwlee@diversitylaw.com<br>ATTORNEY FOR (Name): Plaintiff Christopher Dominguez | FILED<br>8/25/2022 1:33 PM<br>Nocona Soboleski, Clerk of Court<br>Superior Court of the State of California<br>County of Kings<br><br>_Sandra Tafolla_  Deputy<br>Sandra Tafolla |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF KINGS**
STREET ADDRESS: 1640 Kings County Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Hanford, CA 93230
BRANCH NAME: Kings Superior Court

CASE NAME:
Christopher Dominguez v. Leprino Foods Company

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER 22C-0317 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

_Items 1–6 below must be completed (see instructions on page 2)._

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): One (1)
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: August 25, 2022
Larry W. Lee
(TYPE OR PRINT NAME)     ► (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

Electronically filed by Superior Court of California, County of Kings, 8/25/2022 4:30 PM, Sandra Tafolla

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

Electronically filed by Superior Court of California, County of Kings,8/25/2022 4:30 PM ,Sandra Tafolla

**CIVIL CASE COVER SHEET**

| SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>**COUNTY OF KINGS**<br>**1640 Kings County Drive Hanford California 93230** | FOR COURT USE ONLY<br><br>CONFORMED COPY<br>ORIGINAL FILED ON<br><br>AUG 25 2022<br><br>NOCONA SOBOLESKI, CLERK OF COURT<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF KINGS<br>DEPUTY<br><br>SANDRA TAFOLLA |
|---|---|
| **PLAINTIFF:** CHRISTOPHER DOMINGUEZ | |
| **DEFENDANT:** LEPRINO FOODS COMPANY | |
| **NOTICE OF JUDICIAL ASSIGNMENT AND CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>**22C-0317** |

**TO ALL INTERESTED PARTIES**: Pursuant to the Standing Order Regarding Judicial Assignments, you are hereby notified that this case is assigned to **Melissa D'Morias** for all purposes (i.e., motions, pretrials, settlement conferences, trials, post review hearings).

You are further notified that a *Mandatory Case Management Conference* has been scheduled in this matter as set forth below. All parties must be ready to discuss all issues described in California Rule of Court, Rule 3.728.

| Date: **December 27, 2022** | Time: **10:30 AM** | **Department 7** |
|---|---|---|
| Address of the Court: **1640 Kings County Drive Hanford California 93230** | | |

**Notice to Defendant[s]:** The Case Management Conference is not a trial. You will need to preserve your rights by filing a written response within thirty [30] days of the date you were served with the Summons and Complaint. You must also have the Plaintiff served with a copy of the response you file with the court. A letter or phone call will not protect you. Your written response must be in proper legal format if you want the court to hear your case. There may be a court form that you can use for your response. If you do not do so, a judgment may be obtained against you. If a judgment is obtained prior to the Case Management Conference date, the Case Management Conference will be cancelled.

Parties are also required to meet and confer no later than thirty [30] calendar days before the above-referenced case management conference date as required in California Rule of Court 3.728

It is the plaintiff's responsibility to notify all parties of the case management conference who are not otherwise listed on the attached proof of service by mail.

All requests for telephonic appearances must be requested in writing at least 10 court days prior to the scheduled hearing.

**No later than fifteen [15] days** prior to the date set above, each party must file a Case Management Statement (Judicial Council form CM-110). If two or more parties so desire, they may file a joint case management statement.

Dated: 8/25/2022

**Nocona Soboleski**, Clerk of Court

By: Sandra Tafolla, Deputy Clerk

NOTICE OF JUDICIAL ASSIGNMENT AND CASE MANAGEMENT CONFERENCE

(Revised 04/08/16)

PROOF OF SERVICE BY MAIL
-oOo-

Superior Court of the State of California      Case Number: 22C-0317
County of Kings                      ss.

    I hereby declare under penalty of perjury that I am employed by the Kings County Superior Court, over the age of eighteen (18) years, and not a party to the within action.

    That on **August 25, 2022** I served the attached by placing a true copy thereof, enclosed in a sealed envelope and deposited at my place of business for collection and mailing with the United States mail at Hanford, California, following our ordinary business practices with which I am readily familiar, addressed as follows:

**Larry W. Lee**
**Attorney at Law**
**515 S. Figueroa Street, Suite 1250**
**Los Angeles, CA 90071**

**Attorney for Plaintiff**

Executed on **August 25, 2022,** at Hanford, California.

                               **Nocona Soboleski**, Clerk of the Court

                    By: _____

                          Sandra Tafolla, Deputy Clerk

ATTACHED PROOF OF SERVICE

Exhibit 7

FILED
11/2/2022 4:07 PM
Nocona Soboleski, Clerk of Court
Superior Court of the State of California
County of Kings

_Sandra Tafolla_ Deputy
Sandra Tafolla

1  HANSON BRIDGETT LLP
   SANDRA L. RAPPAPORT, SBN 172990
2  srappaport@hansonbridgett.com
   LISA M. POOLEY, SBN 168737
3  lpooley@hansonbridgett.com
   RACHEL J. VINSON, SBN 331434
4  RVinson@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone:    (415) 777-3200
6  Facsimile:    (415) 541-9366

7  Attorneys for Defendant
   LEPRINO FOODS COMPANY

8

9           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                        **COUNTY OF KINGS**

11

12 | CHRISTOPHER DOMINGUEZ, as an            | Case No. 22C-0317
   | individual and on behalf of all others similarly |
13 | situated,                                | **COMPLEX**
   |                                          |
14 |              Plaintiff,                  | **DEFENDANT LEPRINO FOODS**
   |                                          | **COMPANY'S ANSWER TO**
15 |        v.                                | **REPRESENTATIVE ACTION**
   |                                          | **COMPLAINT FOR VIOLATION OF**
16 | LEPRINO FOODS COMPANY, a Colorado       | **LABOR CODE § 2698, et seq.**
   | corporation; and DOES 1 through 50,      |
17 | inclusive,                               | Assigned for All Purposes to the
   |                                          | Honorable Melissa D'Morias
18 |              Defendants.                 | Department 7
   |                                          |
19 |                                          | Action Filed:     August 25, 2022

20

21                        **GENERAL DENIAL**

22       Defendant LEPRINO FOODS COMPANY ("Defendant"), under California Code of Civil

23 Procedure §431.30(d), generally denies each and every material allegation contained in Plaintiff

24 CHRISTOPHER DOMINGUEZ's ("Plaintiff") Representative Action Complaint and further

25 denies that Plaintiff and the allegedly aggrieved employees have suffered damages in the manner

26 alleged or in any amount as a result of the alleged acts and omissions of Defendant.

27              **SEPARATE AND AFFIRMATIVE DEFENSES**

28       Defendant asserts the following separate and affirmative defenses to Plaintiff's complaint:

Electronically filed by Superior Court of California, County of Kings, 11/3/2022 8:39 AM ,Sandra Tafolla

Electronically filed by Superior Court of California, County of Kings, 11/3/2022 8:39 AM ,Sandra Tafolla

## AFFIRMATIVE DEFENSES

Defendant pleads the following separate defenses.  Defendant reserves the right to assert additional affirmative defenses that discovery indicates are proper.

### FIRST DEFENSE

Plaintiff's Complaint does not allege facts sufficient to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent Plaintiff alleges claims barred by the applicable statutes of limitations, including but not limited to those set forth in California Code of Civil Procedure Section 340.

### THIRD DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent that they are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a), and to the extent the claims require interpretation of a collective bargaining agreement governing their employment.

### FOURTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent they have failed to exhaust the remedies provided under the internal grievance procedure, including final and binding arbitration, as required by the collective bargaining agreement governing their employment.

### FIFTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, under California Labor Code section 514.

### SIXTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent for civil penalties under PAGA, California Labor Code section 2698 *et seq*., are barred, in whole or in part, to the extent they would result in duplicative recovery.

Electronically filed by Superior Court of California, County of Kings,11/3/2022 8:39 AM ,Sandra Tatolla

1

### SEVENTH DEFENSE

2   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

3 represent for civil penalties under PAGA, California Labor Code section 2698 *et seq*., are barred,

4 in whole or in part, to the extent they are unjust, arbitrary and oppressive, or confiscatory.

5

### EIGHTH DEFENSE

6   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

7 represent are barred, in whole or in part, to the extent that Defendant acted in accordance with the

8 applicable law, state regulations, and applicable order of the California Industrial Welfare

9 Commission in effect during the relevant time periods.

10

### NINTH DEFENSE

11   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

12 represent are barred, in whole or in part, and/or recovery is precluded because Defendant's alleged

13 acts or omissions, if any, were made in good faith, not willful, not knowing and intentional, and

14 Defendant had reasonable grounds for believing that the alleged acts or omissions did not violate

15 any California Labor Code provision or any orders of the California Industrial Welfare

16 Commission.

17

### TENTH DEFENSE

18   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

19 represent are barred by the principles of fairness and public policy relating to changes in the law

20 upon which Defendant relied during the relevant time periods.

21

### ELEVENTH DEFENSE

22   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

23 represent are barred, in whole or in part, to the extent that Plaintiff or any allegedly aggrieved

24 employee pursued any claim before the California Labor Commissioner, Division of Labor

25 Standards Enforcement, or the United States Department of Labor.

26

### TWELFTH DEFENSE

27   Plaintiff's claims are barred, in whole or in part, by the doctrines of res judicata, collateral

28 estoppel, or the doctrine barring duplicative litigation, to the extent that Plaintiff has asserted or

18987012.2

1  could have asserted the same or similar claims in any other judicial, administrative, or arbitral

2  forum.

3  ### THIRTEENTH DEFENSE

4  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

5  represent are barred, in whole or in part, by the doctrine of consent.

6  ### FOURTEENTH DEFENSE

7  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

8  represent are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

9  ### FIFTEENTH DEFENSE

10  The claims for monetary relief by Plaintiff and the allegedly aggrieved employees he seeks

11  to represent are barred and subject to offset, in whole or in part, to the extent that the same or

12  similar claims are governed by orders, awards, or judgments issued in any other judicial,

13  administrative, or arbitral forum.

14  ### SIXTEENTH DEFENSE

15  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

16  are barred, in whole or in part, to the extent that they were parties to any settlement agreements,

17  releases, or waivers of claims.

18  ### SEVENTEENTH DEFENSE

19  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

20  represent for monetary relief based upon alleged violation of Labor Code Section 203 are barred

21  based on a good faith dispute as to whether any claimed premium pay was owed, and Defendant's

22  acts or omissions, if any, were not willful.

23  ### EIGHTEENTH DEFENSE

24  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

25  represent are barred, in whole or in part, to the extent that Plaintiff and any "aggrieved employee"

26  worked pursuant to on-duty meal period agreements that they either executed individually or to

27  which their collective bargaining representative entered into on their behalf.

28

DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO COMPLAINT

18987012.2

Electronically filed by Superior Court of California, County of Kings,11/3/2022 8:39 AM ,Sandra Tafolla

Electronically filed by Superior Court of California, County of Kings,11/3/2022 8:39 AM ,Sandra Tafolla

1

## NINETEENTH DEFENSE

2    Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

3  represent are barred, in whole or in part, to the extent that Plaintiff and any "aggrieved employee"

4  voluntarily waived their off-duty meal periods, including for workdays in which they worked six

5  hours or less, and for workdays in which they worked more than ten and no more than twelve

6  hours.

7

## TWENTIETH DEFENSE

8    Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

9  represent are barred, in whole or in part, because Defendant has at all times acted reasonably and

10  in good faith with respect to its obligations under Labor Code Section 226, Plaintiff and the

11  allegedly aggrieved employees did not suffer any injury within the meaning of Labor Code

12  Section 226, and Defendant's alleged acts or omissions, if any, were not knowing and not

13  intentional.

14

## TWENTY-FIRST DEFENSE

15    Plaintiff's claims are barred, in whole or in part, because Defendant provided all non-

16  exempt employees the opportunity to take meal periods in compliance with the law.  To the extent

17  Plaintiff and/or any allegedly aggrieved employee he seeks to represent did not take a full 30-

18  minute meal period or did not take it by their fifth hour of work, it was due to their voluntary

19  choice, and not due to any policy or practice of Defendant.

20

## TWENTY-SECOND DEFENSE

21    Plaintiff's claims related to unpaid rest period premiums are barred, in whole or in part,

22  because Defendant provided all non-exempt employees the opportunity to take rest periods in

23  compliance with the law.  To the extent Plaintiff and/or any allegedly aggrieved employee he

24  seeks to represent did not take a rest period, it was due to their voluntary choice, and not due to

25  any policy or practice of Defendant.

26

## TWENTY-THIRD DEFENSE

27    Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

28  represent are barred, in whole or in part, for failure to give timely and sufficient notice of the

Electronically filed by Superior Court of California, County of Kings, 11/3/2022 8:39 AM ,Sandra Tatolla

1  alleged statutory violations to the California Labor and Workforce Development Agency and to

2  Defendant, as required by PAGA, California Labor Code section 2698 *et seq*.

3  ## TWENTY-FOURTH DEFENSE

4       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

5  represent are barred, in whole or in part, to the extent the they are based upon actions barred by the

6  failure to exhaust administrative remedies required by the California Labor Code, including but

7  not limited to, California Labor Code section 2698 *et seq*.

8  ## TWENTY-FIFTH DEFENSE

9       Plaintiff's claims, and the claims of the other allegedly aggrieved employees he seeks to

10  represent, are barred, in whole or in part, because Plaintiff lacks standing to bring claims for civil

11  penalties under the Private Attorneys general Act (PAGA) on behalf of others to the extent such

12  claims are based upon actions for which neither he nor others are "aggrieved employees" as

13  defined under PAGA, California Labor Code section 2698 *et seq*., and any other applicable

14  authority.

15  ## TWENTY-SIXTH DEFENSE

16       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

17  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

18  United States Constitution's Fourteenth Amendment's procedural due process guarantee.

19  ## TWENTY-SEVENTH DEFENSE

20       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

21  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

22  United States Constitution's Fourteenth Amendment's substantive due process guarantee.

23  ## TWENTY-TWENTY-EIGHTH DEFENSE

24       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

25  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

26  procedural due process guarantee of the California Constitution.

27  ## TWENTY-TWENTY-NINTH DEFENSE

28       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

Electronically filed by Superior Court of California, County of Kings,11/3/2022 8:39 AM ,Sandra Tafolla

1     are barred because the Private Attorneys General Act is unconstitutional in that it violates the

2     United States Constitution's Eighth Amendment's prohibition on excessive fines and unusual

3     punishment.

### THIRTIETH DEFENSE

5        Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

6     are barred because the Private Attorneys General Act is unconstitutional in that it violates the

7     California Constitution's prohibition on excessive fines and unusual punishment.

### THIRTY-FIRST DEFENSE

9        Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

10    are barred because the Private Attorneys General Act is unconstitutional in that it violates the

11    United States Constitution's Fourteenth Amendment's guarantee of equal protection.

### THIRTY-SECOND DEFENSE

13       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

14    are barred because the Private Attorneys General Act is unconstitutional in that it violates the

15    California Constitution's guarantee of equal protection.

### THIRTY-THIRDTHIRD DEFENSE

17       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

18    are barred because the Private Attorneys General Act is unconstitutional in that it violates the

19    California Separation of Powers Doctrine.

### THIRTY-FOURTHFOURTH DEFENSE

21       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

22    represent for monetary relief are barred or subject to offset, in whole or in part, to the extent that

23    they have received premium pay for any non-compliant meal periods or any payments under

24    Labor Code Section 226.7.

### THIRTY-FIFTH DEFENSE

26       Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

27    represent for monetary relief are barred or subject to offset, in whole or in part, to the extent that

28    they have received premium pay for any non-compliant rest periods or any payments under Labor

DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO COMPLAINT

18987012.2

Electronically filed by Superior Court of California, County of Kings.11/3/2022 8:39 AM ,Sandra Tafolla

1  Code Section 226.7.

2                        **<u>RESERVATION OF RIGHTS</u>**

3        Defendant reserves its right to assert additional separate or affirmative defenses if

4  Defendant becomes aware of the existence of such defenses arising during the course of discovery.

5        WHEREFORE, Defendant prays as follows:

6        1.      That Plaintiff take nothing by this action;

7        2.      That judgment be entered in Defendant's favor;

8        3.      That Defendant recovers costs in this proceeding, including reasonable attorneys'

9  fees; and

10       4.      That the Court grant such other and further relief as it deems appropriate.

11  DATED:  November 2, 2022                    HANSON BRIDGETT LLP

12

13                                     By:  *Rachel Vinson*

14                                          SANDRA L. RAPPAPORT
                                           LISA M. POOLEY
15                                          RACHEL J. VINSON
                                           Attorneys for Defendant
16                                          LEPRINO FOODS COMPANY

17

18

19

20

21

22

23

24

25

26

27

28

18987012.2          DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO COMPLAINT

Electronically filed by Superior Court of California, County of Kings, 11/3/2022 8:39 AM ,Sandra Tafolla

## PROOF OF SERVICE

**Christopher Dominguez v. Leprino Foods Company, et al.**
**(Kings County Superior Court Case No. 22C-0317)**

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Sacramento, State of California. My business address is 500 Capitol Mall, Suite 1500, Sacramento, CA 95814.

On November 2, 2022, I served true copies of the following document(s) described as **DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO REPRESENTATIVE ACTION COMPLAINT** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address cgermain@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 2, 2022, at Sacramento, California.

_____
Catharine F. Germain

DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO COMPLAINT

18987012.2

**SERVICE LIST**
*Christopher Dominguez v. Leprino Foods Company, et al.*
**(Kings County Superior Court Case No. 22C-0317)**

Larry W. Lee                                    *(Attorneys for Plaintiff*
Kristen M. Agnew                                *CHRISTOPHER DOMINGUEZ)*
Nicholas Rosenthal
DIVERSITY LAW GROUP, P.C.
515 S. Figueroa Street, Suite 1250
Los Angeles, CA  90071
Email:        lwlee@diversitylaw.com
              kagnew@diversitylaw.com
              nrosenthal@diversitylaw.com

William L. Marder                               *(Attorneys for Plaintiff*
POLARIS LAW GROUP                               *CHRISTOPHER DOMINGUEZ)*
501 San Benito Street, Suite 200
Hollister, CA  95023
Email:        bill@polarislawgroup.com

DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO COMPLAINT

Electronically filed by Superior Court of California, County of Kings,11/3/2022 8:39 AM ,Sandra Tafolla

18987012.2

Exhibit 8

Electronically filed by Superior Court of California, County of Kings,11/3/2022 2:18 PM ,Sandra Tafolla

1   HANSON BRIDGETT LLP
    SANDRA L. RAPPAPORT, SBN 172990
2   srappaport@hansonbridgett.com
    LISA M. POOLEY, SBN 168737
3   lpooley@hansonbridgett.com
    RACHEL J. VINSON, SBN 331434
4   RVinson@hansonbridgett.com
    425 Market Street, 26th Floor
5   San Francisco, California 94105
    Telephone:    (415) 777-3200
6   Facsimile:    (415) 541-9366

7   Attorneys for Defendant
    LEPRINO FOODS COMPANY

8

FILED
11/3/2022 10:32 AM
Nocona Soboleski, Clerk of Court
Superior Court of the State of California
County of Kings

_____ Deputy
Sandra Tafolla

9               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                          **COUNTY OF KINGS**

11

12   CHRISTOPHER DOMINGUEZ, as an
     individual and on behalf of all others similarly
13   situated,

14              Plaintiff,

15       v.

16   LEPRINO FOODS COMPANY, a Colorado
     corporation; and DOES 1 through 50,
17   inclusive,

18              Defendants.

19   _____

Case No. 22C-0317

**COMPLEX**

**DEFENDANT LEPRINO FOODS
COMPANY'S ANSWER TO FIRST
AMENDED REPRESENTATIVE ACTION
COMPLAINT FOR VIOLATION OF
LABOR CODE § 2698, *ET SEQ.***

Assigned for All Purposes to the
Honorable Melissa D'Morias
Department 7

Action Filed:        August 25, 2022

20

21                          **GENERAL DENIAL**

22       Defendant LEPRINO FOODS COMPANY ("Defendant"), under California Code of Civil

23   Procedure §431.30(d), generally denies each and every material allegation contained in Plaintiff

24   CHRISTOPHER DOMINGUEZ's ("Plaintiff") First Amended Representative Action Complaint

25   and further denies that Plaintiff and the allegedly aggrieved employees have suffered damages in

26   the manner alleged or in any amount as a result of the alleged acts and omissions of Defendant.

27   / / /

28   / / /

Case No. 22C-0317

19047178.1
                DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO FIRST AMENDED REPRESENTATIVE ACTION
                        COMPLAINT FOR VIOLATION OF LABOR CODE § 2698, *ET SEQ.*

Electronically filed by Superior Court of California, County of Kings,11/3/2022 2:18 PM ,Sandra Tafolla

## SEPARATE AND AFFIRMATIVE DEFENSES

Defendant asserts the following separate and affirmative defenses to Plaintiff's complaint:

## AFFIRMATIVE DEFENSES

Defendant pleads the following separate defenses.  Defendant reserves the right to assert additional affirmative defenses that discovery indicates are proper.

## FIRST DEFENSE

Plaintiff's Complaint does not allege facts sufficient to state a claim upon which relief may be granted.

## SECOND DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent Plaintiff alleges claims barred by the applicable statutes of limitations, including but not limited to those set forth in California Code of Civil Procedure Section 340.

## THIRD DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent that they are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a), and to the extent the claims require interpretation of a collective bargaining agreement governing their employment.

## FOURTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent they have failed to exhaust the remedies provided under the internal grievance procedure, including final and binding arbitration, as required by the collective bargaining agreement governing their employment.

## FIFTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, under California Labor Code sections 245, 245.5, 246, *et seq.*

## SIXTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO FIRST AMENDED REPRESENTATIVE ACTION COMPLAINT FOR VIOLATION OF LABOR CODE § 2698, *ET SEQ.*

19047178.1

Electronically filed by Superior Court of California, County of Kings,11/3/2022 2:18 PM ,Sandra Tafolla

1  represent for civil penalties under PAGA, California Labor Code section 2698 *et seq.*, are barred,

2  in whole or in part, to the extent they would result in duplicative recovery.

### SEVENTH DEFENSE

4      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

5  represent for civil penalties under PAGA, California Labor Code section 2698 *et seq.*, are barred,

6  in whole or in part, to the extent they are unjust, arbitrary and oppressive, or confiscatory.

### EIGHTH DEFENSE

8      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

9  represent are barred, in whole or in part, to the extent that Defendant acted in accordance with the

10  applicable law, state regulations, and applicable order of the California Industrial Welfare

11  Commission in effect during the relevant time periods.

### NINTH DEFENSE

13      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

14  represent are barred, in whole or in part, and/or recovery is precluded because Defendant's alleged

15  acts or omissions, if any, were made in good faith, not willful, not knowing and intentional, and

16  Defendant had reasonable grounds for believing that the alleged acts or omissions did not violate

17  any California Labor Code provision or any orders of the California Industrial Welfare

18  Commission.

### TENTH DEFENSE

20      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

21  represent are barred by the principles of fairness and public policy relating to changes in the law

22  upon which Defendant relied during the relevant time periods.

### ELEVENTH DEFENSE

24      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

25  represent are barred, in whole or in part, to the extent that Plaintiff or any allegedly aggrieved

26  employee pursued any claim before the California Labor Commissioner, Division of Labor

27  Standards Enforcement, or the United States Department of Labor.

28  / / /

DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO FIRST AMENDED REPRESENTATIVE ACTION
COMPLAINT FOR VIOLATION OF LABOR CODE § 2698, *ET SEQ.*

19047178.1

Electronically filed by Superior Court of California, County of Kings,11/3/2022 2:18 PM ,Sandra Tafolla

**TWELFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, or the doctrine barring duplicative litigation, to the extent that Plaintiff has asserted or could have asserted the same or similar claims in any other judicial, administrative, or arbitral forum.

**THIRTEENTH DEFENSE**

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, by the doctrine of consent.

**FOURTEENTH DEFENSE**

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

**FIFTEENTH DEFENSE**

The claims for monetary relief by Plaintiff and the allegedly aggrieved employees he seeks to represent are barred and subject to offset, in whole or in part, to the extent that the same or similar claims are governed by orders, awards, or judgments issued in any other judicial, administrative, or arbitral forum.

**SIXTEENTH DEFENSE**

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent that they were parties to any settlement agreements, releases, or waivers of claims.

**SEVENTEENTH DEFENSE**

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent for monetary relief based upon alleged violation of Labor Code Section 203 are barred based on a good faith dispute as to whether any claimed amount was owed, and Defendant's acts or omissions, if any, were not willful.

**EIGHTEENTH DEFENSE**

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, because Defendant has at all times acted reasonably and

-4-

DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO FIRST AMENDED REPRESENTATIVE ACTION
COMPLAINT FOR VIOLATION OF LABOR CODE § 2698, *ET SEQ.*

19047178.1

1  in good faith with respect to its obligations under Labor Code Section 226, Plaintiff and the

2  allegedly aggrieved employees did not suffer any injury within the meaning of Labor Code

3  Section 226, and Defendant's alleged acts or omissions, if any, were not knowing and not

4  intentional.

5  **NINETEENTH DEFENSE**

6  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

7  represent are barred, in whole or in part, for failure to give timely and sufficient notice of the

8  alleged statutory violations to the California Labor and Workforce Development Agency and to

9  Defendant, as required by PAGA, California Labor Code section 2698 *et seq.*

10  **TWENTIETH DEFENSE**

11  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

12  represent are barred, in whole or in part, to the extent the they are based upon actions barred by the

13  failure to exhaust administrative remedies required by the California Labor Code, including but

14  not limited to, California Labor Code section 2698 *et seq.*

15  **TWENTY-FIRST DEFENSE**

16  Plaintiff's claims, and the claims of the other allegedly aggrieved employees he seeks to

17  represent, are barred, in whole or in part, because Plaintiff lacks standing to bring claims for civil

18  penalties under the Private Attorneys general Act (PAGA) on behalf of others to the extent such

19  claims are based upon actions for which neither he nor others are "aggrieved employees" as

20  defined under PAGA, California Labor Code section 2698 *et seq.*, and any other applicable

21  authority.

22  **TWENTY-SECOND DEFENSE**

23  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

24  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

25  United States Constitution's Fourteenth Amendment's procedural due process guarantee.

26  **TWENTY-THIRD DEFENSE**

27  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

28  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

Case No. 22C-0317

Electronically filed by Superior Court of California, County of Kings,11/3/2022 2:18 PM ,Sandra Tafolla

19047178.1

Electronically filed by Superior Court of California, County of Kings,11/3/2022 2:18 PM ,Sandra Tafolla

1  United States Constitution's Fourteenth Amendment's substantive due process guarantee.

2  **TWENTY-FOURTH DEFENSE**

3      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

4  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

5  procedural due process guarantee of the California Constitution.

6  **TWENTY-FIFTH DEFENSE**

7      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

8  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

9  United States Constitution's Eighth Amendment's prohibition on excessive fines and unusual

10  punishment.

11  **TWENTY-SIXTH DEFENSE**

12      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

13  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

14  California Constitution's prohibition on excessive fines and unusual punishment.

15  **TWENTY-SEVENTH DEFENSE**

16      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

17  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

18  United States Constitution's Fourteenth Amendment's guarantee of equal protection.

19  **TWENTY-EIGHTH DEFENSE**

20      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

21  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

22  California Constitution's guarantee of equal protection.

23  **TWENTY-NINTH DEFENSE**

24      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

25  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

26  California Separation of Powers Doctrine.

27  **RESERVATION OF RIGHTS**

28      Defendant reserves its right to assert additional separate or affirmative defenses if

Case No. 22C-0317

19047178.1

1  Defendant becomes aware of the existence of such defenses arising during the course of discovery.

2      WHEREFORE, Defendant prays as follows:

3      1.      That Plaintiff take nothing by this action;

4      2.      That judgment be entered in Defendant's favor;

5      3.      That Defendant recovers costs in this proceeding, including reasonable attorneys'

6  fees; and

7      4.      That the Court grant such other and further relief as it deems appropriate.

8  DATED:  November 3, 2022                     HANSON BRIDGETT LLP

9

10                                      By: _____

11                                      SANDRA L. RAPPAPORT
                                        LISA M. POOLEY
12                                      RACHEL J. VINSON
                                        Attorneys for Defendant
13                                      LEPRINO FOODS COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO FIRST AMENDED REPRESENTATIVE ACTION
COMPLAINT FOR VIOLATION OF LABOR CODE § 2698, *ET SEQ.*

Electronically filed by Superior Court of California, County of Kings,11/3/2022 2:18 PM ,Sandra Tafolla

19047178.1

Electronically filed by Superior Court of California, County of Kings,11/3/2022 2:18 PM ,Sandra Tafolla

1

**PROOF OF SERVICE**
*Christopher Dominguez v. Leprino Foods Company, et al.*
(Kings County Superior Court Case No. 22C-0317)

2

3 **STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

4          At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of San Francisco, State of California.  My business address is 425 Market
5 Street, 26th Floor, San Francisco, CA  94105.

6          On **November 3, 2022**, I served a true copy of the following document(s) described as:

7          **DEFENDANT LEPRINO FOODS COMPANY'S ANSWER TO**
**FIRST AMENDED REPRESENTATIVE ACTION COMPLAINT**
8          **FOR VIOLATION OF LABOR CODE § 2698, *ET SEQ*.**

9 on the interested parties in this action as follows:

10 | Larry W. Lee | *(Attorneys for Plaintiff* |
Kristen M. Agnew | *CHRISTOPHER DOMINGUEZ)*
11 Nicholas Rosenthal
DIVERSITY LAW GROUP, P.C.
12 515 S. Figueroa Street, Suite 1250
Los Angeles, CA  90071
13 Email:          lwlee@diversitylaw.com
                kagnew@diversitylaw.com
14                nrosenthal@diversitylaw.com

15 William L. Marder                    *(Attorneys for Plaintiff*
POLARIS LAW GROUP                       *CHRISTOPHER DOMINGUEZ)*
16 501 San Benito Street, Suite 200
Hollister, CA  95023
17 Email:          bill@polarislawgroup.com

18

19          **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the
document(s) to be sent from e-mail address aghiorso@hansonbridgett.com to the person(s) at the
20 e-mail address(es) listed above.  I did not receive, within a reasonable time after the transmission,
any electronic message or other indication that the transmission was unsuccessful.
21
          I declare under penalty of perjury under the laws of the State of California that the
22 foregoing is true and correct.

23          Executed on **November 3, 2022**, at Foster City, California.

24

25

26          *Ann D. Ghiorso*
          Ann D. Ghiorso
27

28

Case No. 22C-0317

19048269.1                    PROOF OF SERVICE

Exhibit 9

1  HANSON BRIDGETT LLP
   SANDRA L. RAPPAPORT, SBN 172990
2  srappaport@hansonbridgett.com
   LISA M. POOLEY, SBN 168737
3  lpooley@hansonbridgett.com
   RACHEL J. VINSON, SBN 331434
4  rvinson@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone:    (415) 777-3200
6  Facsimile:    (415) 541-9366

7  Attorneys for Defendant
   LEPRINO FOODS COMPANY
8

9              UNITED STATES DISTRICT COURT

10     EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

11

12  CHRISTOPHER DOMINGUEZ, as an            Case No. ****
    individual and on behalf of all others similarly
13  situated,                               **DECLARATION OF BARBARA
                                            GREGORICH IN SUPPORT OF
14            Plaintiff,                     DEFENDANT'S NOTICE OF REMOVAL**

15        v.

16  LEPRINO FOODS COMPANY, a Colorado
    corporation; and DOES 1 through 50,
17  inclusive,

18            Defendants.

19

20

21

22

23

24

25

26

27

28

DECLARATION OF BARBARA GREGORICH IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

1    I, Barbara Gregorich, declare as follows:

2    1.    I am employed by Leprino Foods Company ("Leprino") as its Senior Vice

3    President of Human Resources, a position I have held since December 2013.  As Senior Vice

4    President of Human Resources, I oversee staffing, employee relations, labor union relations, and

5    benefits and compliance for all of Leprino's facilities. among other responsibilities. I have personal

6    knowledge of the facts set forth herein, except as to those stated on information and belief and, as

7    to those, I am informed and believe them to be true.  If called as a witness, I could and would

8    competently testify to the matters stated herein.

9    2.    As part of my job duties, I have access to, and am familiar with, business records,

10    data and other information related to Leprino's employment of employees represented by various

11    labor organizations. These records are created and maintained by Leprino in the course of its

12    regularly-conducted business activities, according to Leprino's regular practices.

13    3.    As relevant here, a collective bargaining agreement by and between Teamsters

14    Local Union No. 517 ("Local 517") and Leprino was entered into on January 1, 2019, and applied

15    to work performed by covered hourly, non-exempt employees at Leprino's Lemoore East,

16    California, facility from January 1, 2019 to December 31, 2021.  Attached hereto as **Exhibit A** is a

17    true and correct copy of that 2019-2021 CBA between Leprino and Local 517.

18    4.    Also as relevant here, a collective bargaining agreement by and between Local 517

19    and Leprino was entered into on January 1, 2022, and applied to work performed by covered

20    hourly, non-exempt employees at Leprino's Lemoore East, California, facility from January 1,

21    2022 to December 31, 2024.  Attached hereto as **Exhibit B** is a true and correct copy of that 2022-

22    2024 CBA between Leprino and Local 517.

23    5.    Also as relevant here, a collective bargaining agreement by and between Teamsters

24    Local Union No. 439 ("Local 439") and Leprino was entered into on January 1, 2018, and applied

25    to work performed by covered hourly, non-exempt employees at Leprino's Tracy, California,

26    / / /

27    / / /

28    / / /

19002930.1    DECLARATION OF BARBARA GREGORICH IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

1  facility from January 1, 2018 to December 31, 2022. Attached hereto as **Exhibit C** is a true and

2  correct copy of that 2018-2022 CBA between Leprino and Local 439.

3       I declare under penalty of perjury under the laws of the United States of America that the

4  foregoing is true and correct.

5       Executed on this _2nd_ day of _November_ , 2022, at Denver, Colorado.

6

7

Barbara Gregorich

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF BARBARA GREGORICH IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

**Exhibit A**





AGREEMENT BETWEEN

LEPRINO FOODS COMPANY

LEMOORE, CALIFORNIA PLANT


AND


CREAMERY EMPLOYEES AND DRIVERS

TEAMSTERS LOCAL UNION NO. 517


January 1, 2019 through December 31, 2021

**INDEX**

Page

Arbitration – Section 33 ......................................................................................... 25
Bereavement Leave – Section 40 .......................................................................... 31
Break-In Period – Section 27 ................................................................................. 22
Bulletin Board – Section 20 ................................................................................... 20
Discharge – Section 13 .......................................................................................... 11
Dues Deduction – Section 39 ................................................................................ 31
Employment Practices – Section 5 .......................................................................... 2
Health and Welfare – Section 15 ........................................................................... 11
Holidays – Section 7 ................................................................................................ 7
Hours of Work – Section 6 ....................................................................................... 2
Job Bidding – Section 18 ....................................................................................... 16
Jury Duty – Section 34 ........................................................................................... 27
Leave of Absence – Section 32 ............................................................................. 25
List of Employees – Section 23 ............................................................................. 21
Maintenance of Bargaining Unit – Section 4 .......................................................... 2
Management Trainees and Interns – Section 30 ................................................... 23
Meal Periods – Section 22 ..................................................................................... 21
Night Work Pay – Section 9 ................................................................................... 10
On Call  ........................................................... Pages 4, 5, 9, 14, 15, 16, 18, 19, 25 and 35
Operation of Agreement – Section 2 ....................................................................... 1
Pay Days – Section 28 ........................................................................................... 23
Performance of Work Covered by This Agreement – Section 35 .......................... 27
Protective Clothing – Section 26 ........................................................................... 22
Recognition – Section 1 ........................................................................................... 1
Relief Periods – Section 12 ................................................................................... 11
Remittance Advice – Section 29 ............................................................................ 23
Retirement Plan – Section 16 ................................................................................ 13
Schedule "A" Classification and Wage Rates ....................................................... 34
Seniority – Section 17 ............................................................................................ 14
Severance Pay – Section 37 .................................................................................. 28
Sick Leave – Section 31 ......................................................................................... 23
Signature Page ...................................................................................................... 33
Term of Agreement – Section 41 ........................................................................... 33
Termination Notice – Section 14 ........................................................................... 11
Transfer of Company Title or Interests – Section 36 ............................................. 28
Transfer of Personnel – Section 38 ....................................................................... 29
Uniforms – Section 11 ............................................................................................ 10
Union Affiliation and Preference of Employment – Section 3 .................................. 1
Union Relations – Section 24 ................................................................................. 21
Vacation – Section 8 ................................................................................................ 8
Visits to Plant – Section 19 .................................................................................... 20
Wage Reductions – Section 21 .............................................................................. 20
Wages and Classification – Section 10 ................................................................. 10
Work in Two or More Classifications – Section 25 ................................................ 22

LEPRINO FOODS COMPANY
AGREEMENT

**January 1, 2019 to December 31, 2021**

This Agreement made and entered into as of January 1, 2019 by and between **Leprino Foods Company,** hereinafter referred to as **"the Employer"** and **Teamsters Local #517,** hereinafter referred to as **"the Union".**  WITNESSETH that in consideration of the promises, it is mutually agreed as follows:

**Section 1.**         **Recognition**

A.     The Employer and the aforementioned Local Union each mutually recognizes the other as the sole agency for the purpose of collective bargaining for all employees working in Employer's listed plant in the classifications listed in SCHEDULE "A", attached hereto.

B.     Such employees shall be covered by the provisions of this Agreement; it being understood that additional classifications may be added in the manner set forth in said SCHEDULE "A", attached hereto.

C.     There shall be no discrimination of any kind against any employee on account of union affiliation or on account of the bona fide union activities of such union employees.

**Section 2.**         **Operation of Agreement**

This agreement shall operate as a direct contract between the Employer and Local Union mutually concerned.

**Section 3.**         **Union Affiliation and Preference of Employment**

A.     All employees covered by this Agreement, who are members of the Union on the date of execution of this Agreement or on the effective date of this Agreement whichever is later, shall as a condition of employment remain in good standing in said Union.  All present employees covered by Agreement who are hired hereafter shall become and remain members in good standing in the Union, as a condition of employment, on and after the thirtieth (30th) day following the beginning of their employment, the effective date of this Agreement or the date of execution of this Agreement, whichever is later.

B.     When new or additional employees are needed, the Employer will notify the office of the Union and the Union will furnish the Employer with a list of any experienced and qualified persons who may be available for work.

C.     The Employer may hire qualified persons from any source.

Within seven (7) business days following the employment of a new employee, the Employer shall notify the Union in writing of the new employee's name, address, classification and date of employment.  Such notification shall be transmitted by a postcard furnished by the Local Union.  Such persons shall make application for and complete union membership subject to this provision.

D.     The Union agrees that it will designate a representative, who shall be authorized to receive applications for membership.  If any employee is not in good standing with the Union, as provided herein, and the Union so notifies the Employer in writing, the Employer will discharge such employee within seven (7) days thereafter.

**Section 4.**        **Maintenance of Bargaining Unit**

Clerical work, which is being performed by bargaining unit employees, may be transferred only under the following circumstances: (1) to other bargaining unit employees; (2) in the case of a consolidation or centralization of the Employer's clerical functions by transfer to non-bargaining unit employees at another location of the Employer.

**Section 5.**        **Employment Practices**

A.      Neither the Employer nor the Union shall discriminate against any employee because of race, sex, religion, national origin, age, color, marital status, sexual orientation, status as a Vietnam Era Veteran, or physical or mental disability or on any other basis prohibited by federal, state or local law or ordinance. The Employer will reasonably accommodate any qualified applicants and employees with known mental or physical disabilities, as required by applicable state and federal laws, subject to the provisions of this Agreement. The Employer will consult with the Union in formulating reasonable accommodations, but retains the right to make the final determination.

B.      The Employer and the Union agree to full compliance with The Uniformed Service Employment and Reemployment Rights Act (USERRA) of 1994.

C.      In this Agreement when the masculine gender is used, it shall be deemed to include the feminine and vice versa.

**Section 6.**        **Hours of Work**

A.      Work Week. Not more than forty (40) hours shall constitute a week's work to be completed within five (5) days, Sunday through Saturday, each day consisting of 8 hours to be completed within 9 hours. The employer may establish a work day of eight (8) continuous hours. An alternative schedule may be established upon mutual agreement between the Company and the Union.

B.      1.      Time and one-half (1½) will be paid for all hours worked above eight (8) hours within nine and one-half (9½) consecutive hours in any one (1) day, or forty (40) hours in any one (1) week, whichever is greater. Any time worked in excess of nine and one-half (9½) hours in any one (1) day shall be overtime and paid for at the rate of two (2) times the straight time hourly rate.

        2.      Double time will be paid for all hours (minimum of 2 hours) during which an employee is required to don a Level A Hazmat Suit (and so does) and responds to an unforeseen Hazardous Material situation, as directed by the Company.

C.      In lieu of the provisions of Paragraph A. and B. of this Section, the Employer may establish a work week, Sunday through Saturday, of forty (40) hours consisting of four (4) ten (10) hour days upon the following conditions:

        1.      For all employees except Administration employees, ten (10) hours shall constitute a days work and shall be completed within ten and one-half (10½) hours; for Administration employees, ten (10) hours shall constitute a work day and shall be completed within eleven (11) hours.

        2.      All such employees shall receive three (3) days off each calendar week. At least two (2) of them shall be consecutive.

        3.      For purposes of calculating holiday pay, sick leave pay, funeral leave pay and jury duty pay, a day, including a holiday, shall consist of ten (10) hours in any one (1) day.

2

4.      Twice the straight time hourly rate shall be paid for time worked in excess of ten (10) hours in any one (1) day.

5.      For all timed worked on his/her day off an employee shall be paid at the rate of twice his/her straight time hourly rate.

D.      For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Lab employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

E.      Posting Days Off and or Starting Time. Weekly work schedules shall be posted by noon on Thursday in advance of each workweek. The Company shall be responsible to notify employees of changes to the schedule after noon on Thursday.  When an employee leaves the plant, he/she is not responsible to contact the Company; burden to notify the employee of a schedule change is the Company's responsibility. An employee whose starting time is to be delayed shall be notified of such change not less than eight (8) hours prior to the commencement of his/her regularly scheduled starting time.

When employees' scheduled starting time is changed after posting and while employee is still on premises, the supervisor will provide a written notice to the employee advising employee of such change.

1.      Any employee called to work prior to his/her starting time will be paid one-half time penalty pay up to his/her regular starting time.

2.      Overtime will be paid after eight (8) hours of work.

F.      Days Off. Any employee required to work on his/her scheduled day off shall be paid at the rate of two (2) times the straight time hourly rate for all time worked, unless the employee takes off another day during such work week for reasons other than the request of the Employer, or unless a change in work schedule results from a promotion or change of shift assignment pursuant to the operation of Section 17 and 18, hereof.  In this event, new days off shall be scheduled to meet the new assignment and no penalty shall result from working a scheduled day off under the former assignment while affecting such a change.

- VTOR, non-worked holiday, jury duty, bereavement, would be considered a worked day
- TOR's, sick days, FMLA, family partnership, kin care, unavailable call-in's are not considered a worked day.

1.      When working a six (6) day schedule, the Company will attempt to schedule Sundays and/or Holidays as down days whenever possible.

2.      When working a seven (7) day schedule, the Company will attempt to allow employees to have at least two (2) weekends off every six (6) weeks whenever possible.

3.      In the event an employee is scheduled for overtime on the posted schedule or called in for overtime, with a 90-minutes notice without penalty, the overtime can be canceled and/or altered. Employer will verbally speak to the employee to cancel this overtime. In the event the overtime is not cancelled within the 90-minute notice, the employer will offer a minimum of four hours work to the employee.

G.      Minimum Hours.  Employees called to work, scheduled and reporting for work, or working four (4) hours or less in any day shall be offered a minimum of four (4) hours of work, and all employees working more than four (4) hours shall be offered eight (8) hours of work at their scheduled bracket or the higher bracket of the two.  However, minimum hours shall not apply when the Employer does not receive ninety (90) minutes notification as prescribed in Section 31.L. The employee who is scheduled to fill a vacancy resulting in less than the ninety (90) minutes notification shall be paid the appropriate rate of pay for all hours actually worked to complete that shift's vacancy.

H.      Delays of Operations.  Any delays in operations caused by circumstances beyond the control of the Employer, such as failure of power, acts of God, bomb threats or break down of plant machinery or equipment, shall not require the payment of overtime, except to employees who may be continued at work during such delayed interval.

I.      Method of Spreading Work.  It is the policy of the Employer that the maximum proportion of bid-holding employees shall receive eight (8) hours daily and forty (40) hours weekly employment; that the principle of spreading work by reducing hours for all employees who perform like duties shall not be applied; and that, where feasible, days off will be scheduled consecutively.

J.      Call-Back.  Whenever an employee is called back to work after the close of his/her shift and before the commencement of his/her next shift, he/she shall be guaranteed a minimum of two (2) hours of work at the appropriate rate.  This Section shall apply only in the following circumstances:

        1.      The employee has left the Employer's premises after the close of his/her shift (including overtime, if any); and

        2.      The call-back begins more than two (2) hours before the commencement of the employee's next scheduled shift.

K.      The Employer may maintain an on call list of employees to fill vacancies.  This list may be comprised of bidholders and non-bidholders.  All the bidholders listed in seniority order shall precede the non-bidholders listed in seniority order.  On call employees may be scheduled on the weekly schedule for known vacancies to which they must adhere. Senior qualified on call will be utilized first in regards to scheduling full workweeks; however specific assignments will be made according to the company's needs with consideration given to seniority and qualifications. When an on call employee is scheduled to work for five days, his/her days off shall be scheduled and he/she shall receive two (2) times the straight time rate of pay for working a scheduled day off.  If an on call employee is scheduled to work for less than five days, he/she shall have no scheduled days off and shall receive overtime at the appropriate rate of pay after working forty (40) straight time hours. When necessary, the Employer may cancel scheduled work without penalty. When filling an unscheduled vacancy with an on-call employee on straight time and they decline or there is no response from the on-call employee within eight (8) hours, after three (3) such instances in a rolling four (4) week period, the employee will be terminated. Previous bid-holders, who are now on-call, would be exempt from this subsection.

L.      Refusal to Work Overtime.  Qualified employee is defined as having all aspects of the JTPR completed and have any required certifications/licenses and have performed the job within the last twelve (12) months for the specific position completed for the job. Overtime is available to qualified employees only first who have signed the overtime list. It shall not be a violation of this Agreement or a cause for discharge or disciplinary action for an employee to refuse to work voluntary overtime, except as otherwise provided hereafter:

1.    Daily Overtime (Less than four (4) hours)

    a.    Offer overtime to employee performing the job.

    b.    In the event the overtime work is not assigned in accordance with sub-section (a) the Company will offer the overtime to the senior qualified employee in the department who is available at the time the overtime is to occur, provided he/she has signed the overtime list.

    c.    In the event the overtime work is not assigned in accordance with sub-section (a) and (b) the Company will require the qualified employee to perform the overtime work in reverse order of seniority working in the department who is available at the time overtime is to occur. Disciplinary action will be administered per the disciplinary policy up to and including termination, if the least senior qualified employee refuses to stay.

    d.    No employee will be required to work more than two (2) hours of daily overtime. For purposes of daily overtime, the on-call person is in the department where they are working.

    e.    If it is necessary to fill a full-shift vacancy as outlined below in L-2E, an employee may be required to work 4 hours of overtime to fill a full-shift vacancy. These four hours will count towards the 12-hour daily requirement.

    f.    No employee will be required to work more than 12 hours of daily overtime in any one workweek.

2.    Day-Off Overtime (vacancy for full shift – four (4) hours or more)

    a.    Schedule or call in a senior qualified employee who is on call and can work at the straight time hourly rate.

    b.    In the event the vacancy is not assigned in accordance with subsection (a) the employer will schedule or call in senior qualified employee in the department who is on a scheduled day off, has signed the overtime list, and has had seven and one-half (7½) hours rest before reporting for this shift and will have seven and one-half (7½) hours rest following this shift. Employees will only be allowed to work one shift per day off.

    c.    In the event the vacancy is not assigned in accordance with sub-section (a) and (b), the employer shall offer the vacancy in seniority order to qualified employees on the overtime list at the location.

    d.    In the event the vacancy is not assigned in accordance with sub-section (a), and (b) and (c) the employer shall offer an additional four (4) hours to the employee performing the job where the overtime is to occur provided they have signed the overtime list and offer the next scheduled employee four (4) hours work prior to his/her regular scheduled shift provided they have signed the overtime list. In the event the vacancy is not assigned in this manner, the Employer shall offer an additional four (4) hours in seniority order to qualified employees who have signed the overtime list on the shift where the overtime is to occur and offer to the next scheduled qualified employee in seniority order four (4) hours work prior to their regular scheduled shift provided they have signed the overtime list. Once all options have been exhausted above, and the employee has been asked to stay over four (4) hours, these four (4)

hours cannot be retracted, unless agreed upon by employee staying over.

    e.    If unable to fill the vacancy in accordance to sub-sections (a) - (d), the employer shall fill the vacancy by reasonable means.  An employee may be required to work up to four (4) hours of overtime.

    f.    If the Maintenance Foreperson vacancy was without prior knowledge, the supervisor must:
1. Ask the senior qualified mechanic on duty if he would like to assume the responsibilities of a foreperson.
2. Should he/she decline, the next senior mechanic will be asked. This process is to be continued until the vacancy is filled.
3. The acting foreperson will be compensated at the rate of time and one-half (1 ½) for all hours worked as a foreperson.

    g.    If the Maintenance Foreperson absence has been scheduled, the following measures will be taken:
1. The supervisor will ask the senior qualified mechanic on duty if he would like to assume the responsibilities of a foreperson for the dates of absence, before the end of the shift.
2. Should he/she decline, the next senior mechanic will be asked. This process is to be continued until the vacancy is filled.
3. The acting foreperson will be paid at foreperson rate.

3.    In the event a bid-holder or foreperson is requested or required to perform a different job other than their daily scheduled job, they will be compensated at the rate of time and one-half (1½) for all regular hours worked on the different job.

4.    In the event of a vacancy, when any employee is requested or required to perform, and is responsible for, a job(s) in addition to their daily scheduled job, they will be compensated at the rate of time and one-half (1½) for all regular hours worked while performing the assigned multiple jobs.

5.    <span style="color:red">Overtime list shall be posted for a one week period every week. An employee will be able to indicate shift(s) and one day not available for overtime.</span> Unclassified work will be assigned by location seniority.

M.    If an employee (bid-holder) is going to be off work for more than a scheduled work week, management and union will meet and discuss and give due consideration to the senior qualified employee in that classification from a different shift. Upon agreement with the employee, the Company may schedule that employee to cover the vacancy as long as it can be scheduled at the time of the posting of the weekly schedule.  The employee will be paid at the appropriate contractual rate of pay for the job performed. There will be only one lateral move. Foreperson position vacancies will be filled at the discretion of the Company.

If an employee is going to be off work but is not going to be off for more than a full scheduled work week, the Company will fill the vacancy through Section 6.L.2. of  the collective bargaining agreement.

N.    Industrial Injury.  If an employee sustains an industrial injury and there is medical evidence that such injury prevented him from continuing work on the day of injury, he/she shall be paid for time worked on such day for not less than eight (8) hours or ten (10) hours, if so scheduled.

O.    If an employee is regularly scheduled to return to work within seven and one-half (7½) hours

after completing his/her regular straight time hours on any shift he/she shall be paid at the rate of time and one half (1½) for all hours worked within such seven and one-half (7½).

### Section 7.          Holidays

A.      The following holidays will be recognized for eligible employees as hereinafter defined:

New Year's Day
Martin Luther King Day (third Monday in January)
Washington's Birthday (third Monday in February)
Easter Sunday
Memorial Day (last Monday in May)
Fourth of July
Labor Day
Veteran's Day (as designated by the State of California)
Thanksgiving Day
Christmas Day

B.      The day upon which the holiday falls shall be treated as the holiday for payroll purposes.

C.      To be eligible for the benefits provided by this Section, an employee must meet the following requirements:

1.      He/she must work on his/her regularly scheduled work day next before and next after the holiday unless excused by the Employer, provided that an employee off work because of illness or injury shall be deemed to be excused by his/her Employer if he/she notifies his/her Employer of his/her illness prior to the commencement of his/her shift on the day on which he/she is unable to work.

2.      He/she must work on the holiday if scheduled to work, unless excused by the Employer.

3.      He/she must perform work during the seven (7) day periods immediately preceding or immediately following the holiday provided that this requirement shall not apply to employees covered by paragraph (H) of this Section.

D.      Eight (8) hour shift:  During each week in which a holiday falls, each eligible employee will receive eight (8) hours of pay at the straight time rate as holiday pay in addition to all other compensation earned by him under other provisions of this Agreement.  An eligible employee working on any of the above mentioned holidays shall be paid one and one-half (1½) times the straight time rate for time worked up to eight (8) hours and twice the straight time rate for work performed in excess of eight (8) hours.

E.      Ten (10) hour shift:  During each week in which a holiday falls, each eligible employee shall receive ten (10) hours of pay at the straight time rate as holiday pay in addition to all other compensation earned by him/her under other provisions of this Agreement.  An eligible employee working on any of the contractual holidays shall be paid one and one-half (1½) times the straight time rate for time worked up to ten (10) hours and twice the straight time rate for work performed in excess of ten (10) hours.

F.      Regular part-time employees working three (3) or less days a week shall not be entitled to pay for holidays not worked.

G.      Any employee working at the reduced rate provided for in Section 27 of this Agreement shall be ineligible for paid holidays during his/her first sixty-six (66) days actually worked.  If said

employee works on a paid holiday, he/she shall be paid at the straight time rate unless otherwise eligible for premium pay.

H.      Any shift differential to which an employee is entitled shall be included in holiday pay.

## Section 8.          Vacation

A.      The Employer shall grant paid vacations in accordance with the following schedule:

| Continuous Service | Weeks Paid |
|---|---|
| One (1) year | One (1) week |
| Two (2) years | Two (2) weeks |
| Five (5) years | Three (3) weeks |
| Ten (10) years | Four (4) weeks |
| Fifteen (15) years | Five (5) weeks |

The vacation period listed above shall be earned after the completion of the year or years of continuous service.

An employee shall be entitled to receive full vacation pay as set forth above if he/she has actually performed work for 2,000 hours during his/her vacation eligibility year.  If an employee has completed a vacation eligibility year but has performed work for less than 2,000 hours during such year, such employee's vacation time shall be based upon his/her years of continuous service, but the amount of vacation pay to which he/she shall be entitled shall be determined by the ratio between 2,000 hours and the total hours actually worked by him during his/her vacation eligibility year.  If an employee is on layoff at the time of completing his/her first vacation eligibility year, he/she shall not be eligible for vacation pay for that year, unless he/she is recalled to work while his/her seniority remains unbroken.  The vacation eligibility year shall be the time between the employee's anniversary date of hire and one (1) year thereafter and in yearly periods thereafter.

B.      An employee may divide his/her vacation into five (5) periods.  Whenever an employee splits his/her vacation, his/her location seniority preference in vacation selection shall be applicable.

Beginning with the vacation year of 2002, for employees with two or more weeks vacation, one week of vacation per year may be taken in single or multiple, maximum three consecutive days upon approval, paid vacation days. These paid vacation days may not be requested more than thirty days in advance; but, they must be requested by the Monday before the work schedule is posted for the coming week; however, emergency paid vacation days may be granted upon a 24 hours notice on a case-by-case basis. Such paid vacation days will have priority over any unpaid time off requests. Full week vacations have priority over single paid vacation days. Overtime may be worked to cover a single paid vacation day; but unpaid time off requests will not be covered by overtime. During the life of this agreement, necessary changes for the administration of this benefit will be made by the negotiating committee. Any unused paid vacation days will be paid out at the end of the calendar year. An employee may rollover up to a maximum of two single paid vacation days into the next year by written notification to the Human Resources Department by December 1.

C.      Vacation allowance shall be computed on the basis of the employees' straight time hourly rate during the week immediately preceding the commencement of the vacation plus any night work pay earned during such week.  When night work is regularly rotated, the night work pay shall be pro-rated for this purpose.

D.    An employee who has completed one (1) or more years of continuous service with the Employer shall be entitled to pro-rated vacation pay upon having his/her seniority broken in the manner described in Section 17.  An employee who fails to give the termination notice required in Section 14 shall not be entitled to such pro-rated vacation pay.

E.    For purposes of computing time worked during a vacation eligibility year, the following shall be counted as straight time hours worked: paid holidays not worked, paid vacation time and paid sick leave.

F.    If an employee's seniority is lost pursuant to Section 17, his/her accumulated service for purposes of vacation benefits is canceled.

G.    If called back to work during his/her scheduled vacation or if required by this Employer to completely forego a scheduled vacation, or any part thereof, an employee shall be paid at two (2) times his/her regular straight time rate of pay for all hours worked during said scheduled vacation.  The employee shall reschedule the unused portion of his/her vacation in accordance with the provisions of this Section.

H.    An employee may not receive vacation pay in lieu of taking his/her vacation unless mutually agreed to between the Union and the Employer, and provided that in accordance with Section 16A, no pension will be paid on such vacation pay in lieu of taking vacation. If an employee receives vacation pay in lieu of taking their vacation, or a vacation switch is granted after the vacation relief schedule has been prepared, the employee will go to the bid-holders on-call list for the week(s) originally scheduled and be scheduled for work as their seniority and qualifications dictate and be paid at the appropriate rate of pay for jobs worked during that week(s).  If such week(s) have not been selected by the vacation relief, the employee will continue to work their regularly scheduled job

I.    Schedules for the selection of vacation periods shall be posted no later than October 1 of each year.  Employees who fail to select their vacation periods within thirty (30) days of the posting of the schedule shall forfeit their right to select a vacation period.  Upon request of the Union made by February 1, the Employer shall furnish the Union with a copy of the vacation schedule as of that date.  This Section shall also apply to vacation periods which become available after the posting of the vacation schedule.

On call employees will select their vacation in the department where the majority of hours are worked during the prior period from Aug 1 through July 31.

J.    Vacations shall be taken at the convenience of the Employer but due consideration will be given to an employee's request for time of vacation in accordance with location seniority within the department.  The months of June, July, and August shall not be blocked out of the schedule.  No employee shall be required to commence his/her vacation period without having been given thirty (30) days prior notice.  If operating requirements permit, employees operating the same machinery may take vacations at the same time. An on-call employee's vacation selection will not close out a vacation week.

K.    New employees hired on or after January 1, 1994, will receive the choice between one of two vacation options.  These options will be explained to the employee within the first 66 days of employment by representatives of the Company and Union. The option chosen will be binding for the life of their employment with Leprino Foods, Lemoore Plant.

1.    For employees hired after January 1, 1994, vacation time earned upon completion of an anniversary year may not be scheduled until the following calendar year; or,

2.    If the employee desires a vacation in the calendar year after they are hired, he/she may schedule one (1) week of vacation in the year they are hired to be taken the

following calendar year. The employee will be paid in full unless vacation is taken prior to his/her anniversary date in which case vacation will be pro-rated based on actual hours worked as of the date of vacation.  Future vacations will be similarly calculated.

      3.     For the employees who choose option 2 above, they can also choose to have their balance of pro-rated vacation banked or paid on the first payroll following their anniversary date.

L.     Any employee hired before January 1, 1994, who takes vacation prior to his/her anniversary date, shall receive whatever full days of prorated vacation pay he/she has earned as of the date of his/her vacation up to the amount of time taken off.  Balance to be paid on the first payroll following their anniversary date.

Effective for 1998 vacations forward, employees can choose to have their balance of prorated vacation banked or paid on the first payroll following their anniversary date. The Employer will provide a form to employees to make their selections.  Employees can change their selection on an annual basis if the change is submitted by July 1 to be effective for the following year.

M.    An employee entitled to vacation pay shall, upon a request submitted at least seven (7) days prior to the commencement of the vacation period, receive his/her vacation pay at the commencement of the vacation period.

N.    If an employee is off work because of disability immediately prior to the time his/her vacation is scheduled to commence, he/she may have his/her vacation rescheduled in accordance with the provisions of this Section, provided he/she so notifies his/her Employer before his/her vacation is scheduled to begin.  The employee shall not have the right to interfere with the scheduled vacation period of another employee.

O.    For the purpose of this section, the following departments are recognized: cheese, processing, whey, warehouse, lab, maintenance, Administration, and such departments as may be agreed upon by the employer and the Union. Maintenance will be split into two groups (1) Maintenance Mechanics and (2) all others.

## Section 9.        Night Work Pay

A.    An employee working between 6 p.m. and 6 a.m. shall receive forty cents ($.40) per hour premium above the regular hourly rate.  When an employee works more than fifty percent (50%) of a straight time shift between the hours of 6 p.m. and 6 a.m., he/she shall receive the work premium for the entire shift worked.

B.    The shift premium is to be included as part of the regular hourly rate upon which overtime is calculated.

## Section 10.        Wages and Classifications

The minimum scale of wages to be maintained by the Employer during the term of this Agreement is as set forth in Schedule "A" attached hereto and incorporated herein and made a part of this Agreement.

## Section 11.        Uniforms

If an Employer requires his/her employees to wear a uniform, the Employer shall furnish and launder said uniforms.

Employees who are required to change into and out of uniforms will do so at the employer's designated locker room facilities. Employees will not be allowed to remove uniforms off the premises. Employees will be paid a total of 14 minutes of additional compensation for donning and doffing at the straight time rate for each shift worked. This compensated time is not considered hours worked.

**Section 12.**        **Relief Periods**

The Employer agrees to provide adequate relief and rest periods of ten (10) minutes during the first half of the shift and ten (10) minutes during the second half of the shift. The employee will be entitled to an additional ten (10) minute rest period when they are working two (2) or more hours of overtime.

**Section 13.**        **Discharge**

A.    No employee shall be discharged without just cause.

B.    Warning letters shall be effective for the purposes of further discipline for no more than one (1) year from the date of issuance.

C.    Whenever a regular employee becomes unable to perform the essential functions of his/her regular work, with or without reasonable accommodation, by reason of physical or mental disability, he/she shall be placed on a medical leave of absence upon the submission of medical certification of employee's functional limitations, onset of limitations, and probable duration.  Such leave shall continue while the employee is disabled, but no longer than the period of the employee's employment at the commencement of his/her disability or one (1) year, whichever is shorter, unless it is extended by the Employer.  Unless the employee returns to his/her job at the end of his/her medical leave of absence, his/her employment may be terminated without violating the provisions of this Section.

**Section 14.**        **Termination Notice**

A.    Any employee who proposes to resign his/her position shall give one (1) week's notice to his/her Employer.

B.    The Employer shall give one (1) week's notice or one (1) week's salary in lieu thereof to an employee who is to be laid off or discharged, except that notice shall not be required when an employee is discharged for violation of Company rules posted on the bulletin board referred to in Section 20, provided that this exception shall apply only when the rules posted have previously been sent to the Local Union.

C.    One (1) week's notice shall not be required in the case of new employees, whether or not a member of the Union, for the first sixty-six (66) days actually worked.

**Section 15.**        **Health and Welfare**

A.    Effective January 1, 2008, health and welfare benefits shall be provided by the Company through the Northern California General Teamsters (NCGT) Choice Plus Plan.

Employees will receive six (6) months of Health and Welfare coverage during a medical leave of absence, including the premium waiver by the NCGT Choice Plus Plan, provided the employee continues to make any required monthly contributions.

B.    The Company shall remit each month the full amount of the monthly contribution for each eligible employee in conformance with, and to be bound by, the Agreement and Declaration of Trust for the Fund.

C.    For purposes of this section, an eligible employee for whom the Company shall make a monthly contribution is an employee meeting the following qualifications:

    1.    The employee is on the company's payroll on the first (1st) day of the calendar month following the month for which the payment is being made, and;

    2.    The employee has worked at least eighty (80) hours during the previous calendar month. Holiday hours, vacation hours, funeral leave hours and jury duty hours, paid for but not worked, shall constitute hours worked for this purpose.

    3.    New employee will not be eligible for Health and Welfare benefits until they have completed six (6) months of qualifying hours (at least 80 hours worked per month).

D.    Effective January 1, 2008, current (non-retired) employees will make contributions to the Company toward their health and welfare coverage for any month in which a premium is paid by the Company, pursuant to the terms of Section 15D 1, 2 and 3 below. Employee contributions will be through payroll deduction; the employee shall be responsible for making payment by check or other method accepted by the Company. Employee contributions during the term of the Agreement will be made on a pretax basis, to the extent permissible by law, in the following amounts:

    1.    Effective January 1, 2019, employees will contribute the following percentage on a monthly basis of the total monthly contribution for the tenure of the contract – needed to maintain NCGT Select Plus, through the term of this agreement:

| YEAR | % CONTRIBUTION |
|------|----------------|
| 2019 | 20% |
| 2020 | 20% |
| 2021 | 20% |

        a.    Company agrees that employees who select Family coverage on the Select Plus PPO plan will not pay a monthly contribution amount more than what their equivalent employee cost share amount would have been under that year's Choice Plus PPO plan at the specified employee contribution percentage for that year.

        b.    Employees who select only Dental/VSP/Life coverage will pay the employee cost share percentage for that year of the Dental/VSP/Life premium.

        c.    Employees electing to be in the Kaiser Plan would be responsible for 100% of any cost in excess of the Company's cost for their selected tier of Select Plus PPO.

E.    Retired Employees' Hospital, Medical, Surgical Benefits:

The Company will make medical benefits available to eligible retired employees pursuant to the rules of the Teamsters Retiree Trust, with such retirees paying contributions established by the Trustees to fund their benefits, and the Company agrees to be bound by the Agreement and Declaration of Trust.

F.    An employee may be terminated for filing or causing a fraudulent claim to be filed.

12

G.    Both the Company and the Union agree that having healthy employees is in the best interest of the Company and the Union and as such, agree to continue and encourage voluntary participation in programs of good health and wellness. The Union agrees to work with the Company in developing programs that improve the Company's employees' health and well-being which may control or reduce the cost of the Fund.

The Company is concerned that the Fund could at some point during the term of this agreement become subject to federal excise taxes as a result of the application of certain provisions of the federal Patient Protection and Affordable Care Act, as may be amended from time to time (PPACA). If the Fund is at any time determined to be in a situation where excise taxes are applicable or likely to become applicable, the Union understands that would be a serious issue for the Company.

The Union agrees that during the term of this agreement if any excise tax becomes applicable to the Fund under the PPACA, the Company has the right to reopen this agreement for the limited purpose of renegotiating those provisions of the agreement related to the medical benefits discussed in Section 15 of the agreement to the extent necessary to eliminate the impact of any such excise tax on the Company.

## Section 16.        Retirement Plan

A.    Commencing with hours worked on and after the dates hereinafter set forth, the Employer shall pay upon the following basis:

| Date | Basic Contribution Rate | Peer Contribution Rate | Total Contribution Rate |
|---|---|---|---|
| 01/01/19 | 3.57      .. | .23 | 3.80 |
| 01/01/20 | 3.66 | .24 | 3.90 |
| 01/01/21 | 3.76 | .24 | 4.00 |

The Employer shall provide the Program for Enhanced Early Retirement (PEER) to the Bargaining Unit Employees.  Total contribution to the WCTPTF shall be (Basic Rate + PEER Rate).

The contributions required to provide the Program for Enhanced Early Retirement will not be taken into consideration for benefit accrual purposes under the Plan.  The additional contribution for the PEER must all times be 6.5% of the basic contribution and cannot be decreased or discontinued at any time.

For the purposes of this Agreement, paid holidays and paid vacation time shall be counted as time worked but no payments shall be made on overtime hours.

No payments shall be made on vacation time paid in lieu of taking vacation, pursuant to Section 8H, unless the employee has not reached at least 2,080 hours by the end of the calendar year. Accordingly, at the end of each calendar year, the Employer will report pension contributions on all vacation hours including those paid in lieu of taking vacation up to a maximum of 2,080 hours worked per calendar year.

13

B.    It is mutually understood that all of the Employer contributions as provided herein shall be deductible from gross income under Section 404 of the Internal Revenue Code.

C.    All applicable federal and state laws pertaining to Taft-Hartley Pension Trusts will be observed.

D.    For probationary employees (part-time regular employees and full-time regular employees serving a probationary period), the Employer will pay an hourly contribution rate of ten cents ($0.10, including $0.01 for PEER/84) during the probationary period as specified in Section 17 (first sixty (66) days actually worked); but in no case for a period longer than ninety (90) calendar days from an employee's first day of hire. Contributions shall be made on the same basis as set forth in Section 16 of the Agreement. After the expiration of the probationary period as specified in Section 17; but in no event longer than ninety (90) calendar days from an employee's first date of hire, the contribution shall be increased to the full contractual rate.

## Section 17.    Seniority

A.    Location seniority shall be defined as an employee's most recent period of unbroken service at the plant or location of the Employer at which he/she is working.

B.    Department seniority is defined as an employee's most recent period of unbroken service at the location in the department in which he/she is presently working.

C.    Classification seniority is defined as an employee's most recent period of unbroken service in the classification in which he/she is working.

D.    If an employee's starting time is permanently changed by more than four (4) hours for fifty percent (50%) or more of the workweek, he/she may displace an employee with the least departmental seniority in his/her classification whose work he/she is able to perform. The employee so displaced may exercise the same shift preference right.

        a.    In the event the employee's start time moves them into a different shift, the job will be rebid and the employee may exercise their bumping rights per Section F. Shift times are defined as: Day shift 4:00 am – 12:00 noon, Swing shift 12:00 noon – 8:00 pm and Night shift 8:00 pm – 4:00 am.
        b.    In the event the employee's wage (bracket) changes, the job will be re-bid and the employee may exercise their bumping rights per Section F.
        c.    If it is determined by LFC, the affected employee and the Union that the skills and responsibilities required of the position have changed substantially (fifty percent (50%) or more), the position will be re-bid and the employee may exercise their bumping rights per Section F.
        d.    Employees exercising their seniority rights per Section F shall have their bid rights restored with the exception of a bump pertaining to Section I - Temporary Work Stoppage.

E.    In the event of a reduction in force, the following procedures shall be applied, provided the employees in the department having seniority are capable of performing the remaining jobs. Bid-holders on-call whom are displaced due to a job elimination or temporary Meiji work stoppage, would be trained on job(s) requiring five (5) days or less of training, based on the needs of the business, in accordance with Section 6.1.

        1.    When one of several jobs in the same classification on the same shift is to be eliminated, the employee in the classification on that shift who has the least location seniority shall be the employee whose job is to be eliminated.

2.    The employee whose job is to be eliminated shall have the option of exercising their seniority rights as outlined below or can elect to go to the on-call list.

3.    To implement F below, "walk-on capability" means that an employee previously and successfully held the job pursuant to a bid, assignment by the Employer, or by exercising seniority rights.  The employee must demonstrate a present ability to perform the job adequately after a full shift refresher training. An employee who fails to demonstrate such a present ability in the judgment of the Employer, subject to the grievance procedure, shall be placed on-call.

4.    In determining wage brackets, relief differentials shall be disregarded.

F.    The employee whose job is to be eliminated shall have the following seniority rights which shall be exercised in the order listed. During the bumping process, if an employee is notified that a bump will occur that may affect them, they are to be present at the date and time specified by the company or be immediately available at a phone number they have provided when notified of the potential bump. If they are not immediately available at the time of bump, a Union Business Agent or Secretary/Treasurer will speak on their behalf.

Walk-on capability applies to 1-5. Employees exercising their bump option will displace the employee with the least location seniority in the following order.

Area is defined as working area (Production Dept has four areas: Cheese, Processing Whey and Warehouse.  Lab Dept has two areas: Main and Melt.  Maintenance has three areas: Mechanics, Parts and Utilities. Clerical is one area.)

If a vacation relief or day off relief employee's job is eliminated, he or she may select which shift among those to which he or she is assigned to exercise his or her bumping rights.

1.    Least Location Seniority:
      a.    Same shift, same department (walk-on capabilities)

2.    Least Location Seniority:
      a.    Any shift, same department (walk-on capabilities)

3.    Least Location Seniority:
      a.    At location, he/she shall be given a break-in period of 10 working days to assist the employer in determining his/her capabilities. The 10 working days may be extended up to an additional 10 days upon mutual agreement between the Company and the Union.

4.    Bid-Holder on call

5.    May return to original bid within 12 month reactivation.

G    Any employee displaced by the operation of this Section shall himself exercise his/her seniority rights in the manner set forth above.

H.    The parties acknowledge the unique nature of the Meiji/P2 operations. For purposes of these operations only, Meiji/P2 will be considered to have had a temporary work stoppage if it is inactive for up to twelve (12) consecutive work weeks. If the operation is inactive for more than twelve (12) consecutive work weeks, the job will be considered eliminated. If there is a temporary work stoppage, the following will apply to Meiji/P2 bidholders and Meiji support personnel:

1.      Receive no less than Bracket 2 for all hours worked.

2.      Must return to Meiji/P2 once the operation reactivates.

3.      Bid rights will be restored only 12 months from the original bid, or when the job is eliminated.

4.      Will go, in seniority order, to the bid-holders on-call list and will be assigned work the employee is qualified to perform and/or would be trained on job(s) requiring five (5) days or less of training, based on the needs of the business, in accordance with Section 6.1. Bid-holders have preference over non-bidholders on the on-call list.

If the Meiji/P2 operation is eliminated, i.e., inactive for more than twelve (12) consecutive work weeks, the Meiji/P2 bidholders and Meiji support personnel may exercise seniority rights under Section 17F and bidding rights will be immediately restored.

I.      Temporary Work Stoppage.  With the exception of Meiji/P2 bidholders and Meiji support personnel, any bid job that is not scheduled for any one-week period is defined as a temporary work stoppage and is not considered a job elimination. Affected employees may exercise their seniority rights in Section F above, or they may go to the on call list as a bidholder.  Job bidding rights are not reinstated during this temporary work stoppage.  If job is eliminated, employees may exercise their seniority rights in Section F above and their bidding rights are restored.

J.      Seniority shall be broken if any employee quits, is discharged or is laid off for more than one (1) year or if any employee has failed to report back for work within three (3) calendar days after being notified to do so, provided that a written notice by registered or certified mail was sent to said employee at his/her last address on file with the Employer.

K.      An employee shall not acquire seniority during his/her first sixty-six (66) days actually worked; provided, that if an employee is employed more than sixty-six (66) days actually worked, his/her seniority shall commence with his/her date of hire.  Employees who are assigned to a workweek consisting of four (4) ten (10) hour days shall acquire seniority after fifty-three (53) days actually worked.

L.      Seniority lists shall be submitted to the Union on request, but not more often than once every six (6) months.  Any question concerning the application of seniority under this Section may be reviewed as provided in Section 33 of this Agreement.

M.      When an Employer calls employees back to work after a layoff, said employees shall be called to work in order of seniority, provided the employee can perform the available work.

N.      For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Lab employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

O.      For purposes of this Section, area is defined as working area (Production Dept has four areas: Cheese, Processing Whey and Warehouse.  Lab Dept has two areas: Main and Melt. Maintenance has three areas: Mechanics, Parts and Utilities. Clerical is one area.)

## Section 18.       Job Bidding

A.      Promotions to the job classifications of working Foreperson shall be made in the order of seniority if the employee having seniority is qualified to perform the job. The filling of vacancies in said job classification is excluded from the job bidding procedures as set forth

herein. However, when such vacancies occur, employees shall be advised by posted notice. Any employee may express interest in this vacancy by submitting a written letter stating their desire and qualifications for consideration. The Employer shall interview all interested employees that have submitted letters of interest and select the most senior employee that the Employer considers to be qualified. Forepersons who bid into another job and are either disqualified or decline that job bid, within the 10-day training period, will be allowed to return to their Foreperson appointed position.

B.    If an employee becomes disabled per the Americans with Disabilities Act, the employer will reasonably accommodate such qualified employee as required by applicable state and federal laws, subject to the provisions of this Agreement. The Employer will consult with the Union in formulating reasonable accommodations, but retains the right to make the final determination.

C.    Temporary positions of ninety (90) days or less may be filled without reference to the provisions of this Section. This period may be extended by agreement of the Employer and the Union.

D.    Any vacancy or job opening resulting from the reactivation of a job that was eliminated in the previous twelve (12) months shall not be subject to the bidding procedure, if the employee previously performing said job is eligible for recall to active employment, has not exercised bid rights, is currently in the employment of the Employer, and chooses to return to said job.

E.    Except as specified above, whenever vacancies occur in any job classification covered by this Agreement, said vacancies shall be filled in accordance with the procedures herein set forth:

1.    All such vacancies shall be conspicuously posted for bidding at mutually suitable locations designated for this purpose within fifteen (15) days after they occur. They shall be posted on a form which shall give the job titles or the principal job titles in the case of a combination job, requirements, hours, days off, location and wage rate of the job. If there are any changes from the previous job bid or duties of that job bid, it is agreed that Union and Employer will review bid prior to posting. Copies of jobs bids and awards will be provided to the Union.

Disputes regarding requirements shall be resolved pursuant to Section 33. The vacancies shall be posted for a period of one hundred twenty (120) hours, and the bid form shall remain posted for seventy-two (72) hours after the end of the posting period. The Employer shall retain completed bid forms for a period of two (2) years. During this period the forms shall be available for inspection and copying by Union representative.

2.    The job vacancy will be filled within sixty (60) days after the job has been awarded. In the event that the Employer is unable to fill the job within this period, the circumstances will be reviewed with the Union and the time limit for filling the vacancy may be extended by mutual agreement. If the employee is not put on the job within 60 days, unless mutually agreed to extend due to no fault of the employer, employees' bid rights will be restored. Employee must go to the new job unless he exercises his restored bid rights to go to another job.

a.    Once an employee is awarded a new bid job, the employee will be moved immediately, if possible, for a period of no more than ten (10) days (or longer if mutually agreed to by Local 517 and LFC) to satisfy the terms of Section 18E-7 of the CBA. The initial ten (10) day period will be uninterrupted. After this period, a mutual decision is made to determine: (1) If the employee qualifies for the position, and/or (2) If the employee accepts the new job bid

17

or chooses to return to his/her former job bid. If the employee qualifies and accepts the new bid, the process then begins of back filling and training to replace the employee. The employee may be placed back in their original job bid at the new rate of pay (or same pay if the new bracket is less).

If the employee fails to qualify or chooses to return to their former job bid, the employee loses bid rights per contract and the next senior qualified eligible bidder is now awarded the bid job as of that date and goes through the same process. If an employee elects to decline the awarded job bid, they shall do so in writing on a form provided by the Employer, prior to the end of their 10-day (or extended) training period.

b.    If an employee is on a LOA at the time they are awarded a job bid, they will have two options:

Option 1:    If they accept the job bid within 30 days from the date of the award, that is their job and the bid process continues. Upon their return, they begin their 10-day training. If disqualified, they will go to the on-call list. The employee loses bid rights per contract.

Option 2:    If the employee declines Option 1, they have up to 60 days from the date of the initial bid award to be fully released to perform the essential functions of the job and commence their 10-day training. If disqualified, they return to their previous job. If the employee is not released within the 60 - day period to commence their 10-day training, they are disqualified from the awarded job and keep their previous job bid. The employee loses bid rights per contract and the next senior qualified eligible bidder is awarded the job bid.

If any employee elects to decline an awarded job bid, they shall do so in writing on a form provided by the Employer, prior to the end of their 10-day (or extended) training period.

c.    If the employee has not started the 10-day training period within 45 days of being awarded the bid, and the awarded employee turns the job bid down, the next senior eligible bidder will be given the opportunity to accept or decline the job bid. If the second employee declines, they will not lose bid rights. This process will continue, in seniority order, until the first senior eligible person accepts the job bid. If everyone declines, the job bid will be re-posted.

3.    For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Laboratory employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

4.    The Employer shall give consideration to any bid made by any employee who has been employed a minimum of 90 calendar days; however; the employer shall not give consideration to any bid made by an employee who has successfully bid on a job within the preceding twelve (12) month period, unless such employee's days off are changed or his/her starting time or length of shift is changed by more than two (2) hours on two (2) or more days per week or an employee has met the ninety (90) days Class A requirement but failed to qualify.

5.    Only bids submitted within the one hundred twenty (120) hour period during which the vacancy was posted shall be considered by the Employer.

6.    The job vacated by the employee successfully bidding on a posted vacancy shall be posted and filled in accordance with the provisions of the Section (Bid #2); the job vacancy thereby resulting shall be posted and filled in accordance with the provisions of the Section (Bid #3). The 4th bid will be posted and awarded to the senior on-call person who has signed the bid and has bidding rights. If no on-call employee with bid rights signs the #4 bid, the senior employee on the on-call list in that department will be assigned the position. They will retain bidding rights, but they must qualify for the position as per Section 18E7 of this Agreement. If they fail to qualify, they will lose seniority rights and their employment will be terminated. Foreperson position openings that result from this bid process will be counted in this 4th bid give-away procedure.

In the event a fourth bid job is an A shift or any bid job with "Saturday-Sunday" scheduled days off position, the bid will be awarded pursuant to Section 18 guidelines of qualifications, eligibility and seniority. The resulting vacancy created by this fourth bid A shift or weekend off position will then be awarded by the employer per the 4th bid procedure above.

Shift A is defined as any job starting between the hours of 4:00 a.m. and 12:00 p.m.

On a first, second or third job bid where there are no eligible bidders, it will be assigned in the same manner as the #4 bid.

All jobs will be awarded, including the fourth bid in succession, and will be subject to the twelve-month lockout.

7.    The bidder having location seniority shall be awarded any job required to be submitted to bid pursuant to the provisions of this Section, provided the bidder is capable of performing the job. If a successful bidder fails to qualify during his/her first ten (10) working days on said job, he/she shall be restored to his/her former job and the bid job shall be awarded to the next senior bidder on the original posting, provided he/she is capable of performing the job. During the period the successful bidder is qualifying, his/her former job may be temporarily filled without regard to the bidding procedure. A bidder who is awarded a job and fails to qualify shall be considered a successful bidder. The ten (10) working days may be extended up to an additional ten (10) days upon mutual agreement between the Company and the Union.

8.    Whenever no bids are submitted for a job opening or whenever no employee submitting a bid is capable of performing the job (for example, maintenance, lab, clerical), and all provisions of Section 18E6 have been met, the Employer may select an employee to fill such job without regard to the provisions of this Section.

9.    Positions which are filled shall not be rebid unless the skills or responsibilities required of the position change substantially. LFC and Union will meet and review to determine if there has been a substantial change, when necessary.

F.    1.    Vacation Relief bids, that are limited to those bid positions covering multiple shifts that may have varying or rotating days off, will have the option of locking in their bid for an initial three-year period (and subsequent one-year periods) and receive a premium as described below. The premium will only be applicable to those Vacation Relief employees who do lock in their bid. Present Vacation Relief bid holders may,

at their option, lock in their present bid for an additional three years, thus becoming eligible for the premium. At any time a Vacation Relief employee who previously elected not to lock in his/her bid wishes to do so, he/she will immediately become eligible for the premium; provided he/she locks in for an initial three-year period. Once the initial three-year lock-in period requirement has been satisfied, subsequent lock-in periods will be one year increments provided the individual has not left the previously locked-in bid position. In the event a Vacation Relief employee leaves their position and subsequently returns to a Vacation Relief position and elects to lock in, they would then start over with the initial three-year lock-in period.

3.      A lock-in premium of $.25 per hour will be paid for all hours worked, including vacation and holiday hours, for the first year. Beginning the second year of lock-in, he/she will be paid $.50 premium for those hours worked, including vacation and holiday hours, For the third year hours and all succeeding years he/she will be paid a lock-in premium of $.75 for all hours worked, including vacation and holiday hours. Further, the amount of the lock-in premium will be determined by considering the number of continuous years in the current Vacation Relief position.

G.      For Maintenance Mechanic positions only, when such vacancy occurs, employees shall be advised by posted job bid. Internal maintenance qualification test can be taken only once every 12 months.

## Section 19.        Visits to Plants

Visits by Union Representatives.  An authorized representative of the Union shall have access to the Company's plant at reasonable times, provided such representative:

A.      Informs management of his/her visit upon arrival;

B.      Confines his/her activities to collecting dues, observing the application of this Agreement, and adjusting grievances; and

C.      Carries out his/her activities without unreasonable disruption of work schedules or unnecessary loss of employee's time.

## Section 20.        Bulletin Board

Notice of Posting and Distribution.  The Union shall be provided with a bulletin board at each time clock; notices posted shall be restricted to:

A.      Union recreational and social activities;

B.      Union elections and results, appointments of Union representatives;

C.      Union meetings; and

D.      Other subject matter mutually agreed upon by the Union and the Company.

Prior to posting or distributing a notice, a copy shall be submitted to the plant manager.

## Section 21.        Wage Reductions

No employee shall suffer reduction in wages or loss of working conditions through adoption of this Agreement.

**Section 22.**           **Meal Periods**

A.      Each employee shall be granted meal time off not sooner than two and one-half (2½) hours and not more than five (5) hours after the beginning of his/her shift.  Meal periods are unpaid.

B.      Employees may waive their meal period if they work a shift that is not longer than 6 hours.  Otherwise, all work performed after five (5) consecutive hours without receipt of meal time off shall be compensated with penalty pay equal to the greater of (i) one hour of regular rate of pay or (ii) half time in addition to the scheduled rate of pay up until the time the employee takes his/her meal period.   Whenever possible, employees must notify their supervisor or a supervisor in advance any time they are unable to take their meal period prior to 5 hours after the beginning of his/her shift.

C.      Where the nature of the work prevents an employee from taking an off-duty meal period, the Employer may schedule a shift of eight (8) continuous hours by written mutual agreement with the Union and the affected employee.  In that situation, the meal period shall be considered an on-duty meal period which shall be paid time.

D.      No employees of Leprino Foods, Lemoore East plant work paid lunches unless job bids so state, and/or mutual agreement between the Company, the Union and the affected employee.  The Company and the Union agree that all employees are provided with and are expected to take a 30-minute off-duty meal period for every 5 hours worked.  Employees in the following positions have historically chosen to work through meal breaks: Processing Sanitation, Cheese Sanitation, Forepersons, Whey Department and 3rd Shift Warehouse.  If these employees choose to work through their meal periods, they will be paid for the time worked, but will not receive penalty pay.  At no time will any employee be required to work through a meal period.  No employee is permitted to work through his or her second meal period if he or she works more than 10 hours and did not take a first meal period.  Employees in other positions that have not historically chosen to work through meal breaks will not generally be permitted to choose to work through a meal period.


**Section 23.**           **List of Employees**

Periodically or upon request, but not more often than once every three (3) months, the Employer shall furnish the Union with a complete list of employees, the classification of each and pay of each.

**Section 24.**           **Union Relations**

A.      Right of the Parties.  The Company retains all rights, except as those rights are limited by the subsequent Sections of the Agreement and in the Supplemental Agreements, which are part of this Agreement.  Nothing in this Agreement shall be construed to impair the right of the Company to conduct all its business in all particulars except as modified by subsequent Sections of this Agreement.

        1.      The Union has all rights, which are specified in the subsequent Sections of this Agreement and the Supplemental Agreement which are part of this Agreement, and retains all rights granted by law except as such rights are limited by provisions of this Agreement.

2.      It shall not be a violation of this Agreement, and it shall not be a cause for discharge or disciplinary action if an employee refuses to cross a primary lawful picket line established at the Lemoore plant which has been sanctioned by the appropriate Joint Council.

B.      Strikes and Lockouts.  During the life of this Agreement, there shall be no lockout and there shall be no strikes of any kind (including sympathy strikes, unfair labor practices strikes, politically motivated strikes, work stoppages and slowdown) picketing boycotts, deliberate withholding of production, interference with or suspension of work, regardless of whether the conduct is in protest of the actions of a party or non-party to this Agreement and regardless of whether the matter or actions precipitating the conduct are resolvable under the grievance process.

1.      The Company shall not lockout the employees and the Union shall not authorize, call, encourage, or assist the conduct prohibited above.  Further the Union shall exert its best effort to bring about the immediate termination of any such conduct.

C.      The parties recognized the right of the Company to take disciplinary action, including discharge, against any employees who participate in violation of this Section, whether such action is taken against all or only some of the participants provided that the Company articulate a business reason.

## Section 25.      Work in Two or More Classifications

All employees whose work regularly falls in more than one (1) bracket shall be paid a rate mutually agreed upon between the Employer and the Union.

## Section 26.      Protective Clothing

A.      The Employer will provide parkas, protective headgear, gloves and foot gear necessary to perform work in a sharp room.  A sharp room is defined as a room in which temperature is normally kept at less than 32 degrees Fahrenheit.

B.      The Employer will provide to each eligible plant employee appropriate footwear under the following conditions:

1.      The manufacturer, supplier and style of footwear is to be determined by the Employer.

2.      No employee is to appear on the job without such footwear where so required by the Employer.

3.      No employee shall wear the footwear supplied by the Employer except on the job.

4.      Where rubber boots are required, the Company shall be notified no less than seven (7) days in advance of the time new boots are required.

5.      The Company will provide appropriate footwear as needed and within the guidelines agreed to at Joint Labor Relations Committee Meetings.

6.      The Company will issue boots of proper size.

## Section 27.      Break-In Period

All new employees hired may be employed at a rate of pay 30% less than the classification rate for the first six months; at a rate of 25% less than the classification rate for the second six months; and at a rate of 20% less than the classification rate for the third six months.

100% of classification for work performed beginning, with the first pay period following eighteen (18) months of employment.

In the event a new employee under the break-in rate is awarded a bid job, upon the successful completion of the bid qualification, will move to full pay for the bid job awarded. In the event the employee loses this bid job by no fault of their own, he/she shall be deemed to have completed the break-in period.

## Section 28.        Pay Days

All employees covered by this Agreement shall be paid in full on a bi-weekly basis.

## Section 29.        Remittance Advice

It shall be possible to determine from the stub accompanying an employee's paycheck the following items: regular hourly earnings, overtime earnings, social security deduction, disability insurance deduction, withholding tax and any other deduction authorized by the employee.

## Section 30.        Management Trainees and Interns

Employer and Union mutually agree that the Employer may employ Management trainees and interns to learn the operations of the business. In so doing, the trainees and interns will not displace or deny work opportunities to any bargaining unit employees.

Management trainee is defined as an exempt level employee training for a supervisory position and an intern is defined as a college student conducting project-based studies during a specific period of time.

The Union shall be informed of all trainees and interns in the facility and will meet with the Company to discuss if any issues/concerns arise.

## Section 31.        Sick Leave

Every employee covered by this Agreement shall be entitled to sick and accident leave benefits under the following conditions:

A.   1.      Benefits shall be earned at the rate of four (4) hours per month up to a maximum of forty-eight (48) hours in any contract year.  Benefits can be accumulated to a maximum of four hundred (400) hours.

     2.      An employee who has perfect attendance during the twelve (12) month period between December 1 and November 30 and has accrued over 400 hours of sick leave as of November 30 will receive a perfect attendance bonus equivalent to one hundred percent (100%) of the employee's hourly rate for each hour over 400 hours accrued.  Perfect attendance means working all scheduled time of every scheduled day except for vacations, holidays, jury duty, funeral leave and time missed with the approval of the Employer.

             An employee who has less than perfect attendance during the twelve month period between December 1 and November 30 and has accrued over 400 hours sick leave as of November 30, will receive a bonus equivalent to 50% of the employee's hourly rate for each hour over 400 hours accrued.

     2.      Any employee retiring during the year will be paid at prorated amount under Section A. 1. or 2. above.

3.    At retirement, employees with earned sick leave balances will be paid out as follows:

    a.    Employees with balances of forty (40) to one hundred twenty (120) hours will be paid at 50%.

    b.    Employees with balances greater than one hundred twenty (120) hours will be paid at 100%.

B.    Employees shall start earning sick leave benefits as follows:

    1.    A newly hired employee who has not worked under this Agreement during the previous twelve (12) months is not eligible to earn sick leave benefits until ninety (90) days after the commencement of his/her employment and having worked eighty (80) hours in the previous month.

    2.    An employee who returns to employment within twelve (12) months will start earning sick leave benefits the first day of the month following employment and having worked eighty (80) hours in the previous month.

    3.    An employee who returns to employment after twelve (12) months is not eligible to earn sick leave benefits until ninety (90) days after the commencement of his/her employment and having worked eighty (80) hours in the previous month.

C.    Sick benefits shall be payable for their scheduled hours of the day in two-hour increments from the first day of absence due to illness.

D.    Sick benefit payments, including disability insurance or worker's compensation payments, for any week, shall not exceed an employees normal straight-time weekly earnings, including shift differential, if any.

E.    Sick benefits are payable only for any employee's regularly scheduled work days on which he/she is off sick.

F.    The Employer will require a doctor's certificate or other satisfactory proof of illness, accident or return to work, when the absence is more than three days. Other than in connection with FMLA, or similar laws, the employer will not require a doctor's certificate for absences of three days or less.

G.    Sick leave benefits shall accrue only for employees who work eighty (80) hours or more in a calendar month.

H.    Any employee found to have willfully abused the sick leave provisions shall be subject to immediate dismissal.

I.    Benefits shall not be payable for any period more than twenty-one (21) days prior to the filing of a claim as hereinafter prescribed. Benefits shall be paid within thirty (30) days after the filing of a valid claim. If an Employer has to pay a valid claim within the time set forth in this Section, liquidated damages shall be added to the valid claim in an amount equal to ten percent (10%) thereof, provided that if the request is made for submission of the validity of the claim to an Arbitration Board or Arbitrator pursuant to Section 33, the time between making the request and final determination of validity shall not count as part of the thirty (30) day period.

1.  Claims shall be filed in writing with a designated management representative at the employees place of employment.  The employee shall receive for his/her use a copy of the claim form filed;

2.  For purpose of this Section, a claim shall be deemed valid unless a request is made for an Arbitration Board within thirty (30) days of the filing of the claim.

J.  If an employee is absent on account of sick leave more than five (5) working days, he/she shall notify the Employer no later than the close of his/her regular shift next preceding the day on which he/she will be able to return to work, before the Employer shall be obligated to restore him to the job.

K.  A record of the sick leave benefits accumulated by an employee shall be furnished to the Union by the Employer upon receipt of written request therefore.

L.  Absence Notification.  The employee shall notify the Employer, in a manner prescribed by the Employer, of the employee's expected absence no later than ninety (90) minutes prior to commencement of his/her required start of shift.  Failure to comply with the notice requirement of the preceding sentence shall subject the employee to disciplinary action.

M.  When an employee is on the bid holder's on call list or the on call list and is called in for unscheduled work and the employee declines the work the employee will not be paid sick leave. The employee is declining work and not entitled to sick pay.

Unscheduled is defined as work that is to be performed in the same day the employee is called.

## Section 32.        Leave of Absence

Leaves of absence shall be granted only upon written approval of the Employer and the Union.  A copy of the written approval shall be furnished to the Union and to the employee.

## Section 33.        Arbitration

A.  It is the desire of the parties to this Agreement that all disputes arising out of the Agreement shall be settled amicably.  For this purpose, it is hereby agreed that the procedure set forth below shall be followed to facilitate such settlement.

B.  A concern raised by the Union shall be presented in the following manner:

1.  Step One.  The employee (with or without a Steward) will meet with his/her Supervisor or Department Manager to discuss their concern and will do so within ten (10) days of the time the concern first came to the attention of the employee or should have, in the exercise or reasonable diligence, come to the attention of the employee.

2.  Step Two.  If Step One has been timely invoked and the concern has not been resolved within five (5) days after receipt of Supervisors or Managers response, the employee and the Union (Business Agent) will notify the Plant Manager or his designee of an unresolved concern and schedule a meeting to attempt to resolve the matter within 15 days of such notice.

3.  Step Three.  If Step Two has been timely invoked and the concern is not resolved within five (5) days after it was presented to the Plant Manager, the Union must file a formal grievance in writing to the Plant Manager and Plant Human Resources Manager within 15 days.

The formal written grievance shall set forth the following information as a minimum:

a.      The name and location of the Employee involved;
b.      The substance of the grievance including the date when it occurred;
c.      The sections of the contract which the grievant claims have been violated;
d.      The relief sought by the grievant; and
e.      The date of the first discussion with a local management representative and the name of that representative.

The Employer will respond to the written grievance in writing within 15 days of receipt of such written grievance.

4.      Step Four.  If Step Three has been timely invoked and the grievance is not resolved within five (5) days of union receipt of written response, either party may request that it be submitted to an Arbitration Board consisting of two (2) representatives each appointed by the Union and the Employer.  Such a request must be made within 15 days. No Board member shall be an employee of Leprino Foods or member of Local 517, unless mutually agreed upon. The Arbitration Board shall meet not more than 30 days after the written request has been made.

5.      Step Five.  A majority vote of these Board members hearing a grievance shall be necessary before the Board's decision is final and binding upon the parties.

If the Board cannot reach a final and binding decision upon the matter submitted within five (5) days after the close of hearing, the parties shall be so notified.

Within ten (10) days after receipt of notice from the Arbitration Board of its failure to reach a decision, either party may demand that the grievance be submitted to a single impartial arbitrator to be selected by the parties.  If neither party files such a demand, the grievance shall stand as dismissed by the Arbitration Board.

When arbitration is demanded, the parties shall have ten (10) days after the demand within which to select an arbitrator to process the dispute to final and binding resolution. If the Union and Employer cannot agree on the selection of an arbitrator, then the parties shall request that the Federal Mediation and Conciliation Service (FMCS) nominate a panel of seven (7) arbitrators. The Union and the Employer shall alternately strike one (1) name until only one (1) name remains on the list; the remaining name shall be the person designated as the arbitrator. The party to strike first shall be decided by coin toss.  If the arbitrator selected is not willing or able to hear the matter for any reason, then the Union and the Employer shall request a new list of seven (7) arbitrators from the FMCS and follow the selection process set forth in this paragraph until an available arbitrator is selected. If both the Union and the Employer agree that none of the arbitrators supplied by the FMCS on any panel of seven (7) is satisfactory, then a new panel may be requested from the FMCS.

C.      If the parties are unable to agree upon a single impartial arbitrator to hear the dispute within the ten (10) days after the submission demand has been made, pursuant to subsection (b), either party may seek to have the Superior Court of the State of California in and for the County in which the Union party has its principal office designate such an arbitrator pursuant to the provisions of the Code of Civil Procedure Section 1281.6.

D.      The decision of the arbitrator shall be final and binding.  Pending final settlement of a dispute in accordance with the provisions of this Section, there shall be no cessation of, or interference with work whether by strike, lockout, intentional slowdown or otherwise.

E.      Service and filing of any document described in this Section may be personal, by delivery to the party to be served or his/her attorney, or may be by mail upon the party to be served in

accordance with the provisions of the Code of Civil Procedure Section 1011-1013.

F.     In computing any time period prescribed by this Section, the date of the act, event or default after which the designated time period begins to run is not to be included, unless it is a Sunday or a legal holiday.

Intermediate Saturdays, Sundays and holidays shall be included.

G.     By agreement of the parties, time limits provided by this Section may be extended and compliance with any procedural step may be waived.  The Employer shall not unreasonably withhold its agreement to extend the time limits set forth above, provided further the request to extend the time limit is made before the time limit has expired.

H.     Expenses of an arbitrator shall be borne equally by the parties.

I.     Neither the Arbitration Board nor an arbitrator shall have the authority to amend, modify or alter the Agreement.

## Section 34.          Jury Duty

A.     The Employer shall reimburse an employee for any loss of wages caused by such employee performing jury duty for a maximum of ten (10) working days during a calendar year.

B.     On any day on which an employee is called for jury duty, he/she shall not be required to report for work on any shift starting prior to the time he/she is due to report for said jury duty.

C.     If documented jury duty, plus travel time (30 min) is less than or equal to four (4) hours, the employee will report to supervisor for remaining work hours up to eight (8) at normal wage rate, or has option to decline work and be paid for time served on jury duty only. If employee serves over four (4) hours, he/she is not required to return to work and will be paid eight (8) hours. This language would also apply to any swing shift employee selected to serve on the jury.

D.     An employee's starting time shall not be changed on any day for which he/she is called for jury duty.  Days off cannot be changed solely because an employee is called for jury duty.

E.     No employee shall be required to work a scheduled shift starting after 7 p.m. (5 p.m. for employees working a ten (10) hour shift) on the day before a day on which he/she is required to report for jury duty.

F.     Mandatory Grand Jury service (not voluntary) will be reimbursed in accordance to this Section.

G.     In the event jury duty assignment goes beyond the 10 day period as indicated above in Subsection A, the employer and employee may work together to develop a modified work schedule.

## Section 35.          Performance of Work Covered by This Agreement

A.     The Employer agrees that its employees, who are not covered by this Agreement, shall perform no work covered by the Agreement, except:

1.     In case of emergencies; or

2.     In training or instructing another employee.

27

B.      If a grievance is filed within thirty (30) days, the parties, the Arbitration Board or the Arbitrator as the case may be, shall assess liquidated damages in an amount not to exceed one hundred dollars ($100.00) against the Employer for violation of this Section.  Damages so assessed shall be paid over to a charity designated by the parties.

C.      No working Foreperson shall effectively hire or fire or issue written warnings to any employee.

## Section 36.           Transfer of Company Title or Interests

A.      This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns.  In the event an entire operation or portion thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment or receivership or bankruptcy proceeding (unless otherwise provided by law) such operation shall continue to be subject to the conditions of this Agreement for the remainder of its then existing term.

B.      In the event the Employer fails to require the purchaser, the transferee or lessee to sign this contract or to otherwise assume the obligations of this contract, the Employer shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure.  When the purchaser, transferee or lessee signs this Agreement or otherwise assumes its obligations, the Employer shall be under no further liability to the Union or to employees by reason of this Section.

C.      The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee or assignee of the operation covered by this Agreement or a part thereof.  Such notice shall be in writing with a copy to the Union no later than the effective date of the sale, transfer, lease or assignment.

## Section 37.           Severance Pay

Whenever an employee is terminated, he/she shall receive severance pay benefits pursuant to the provisions set forth below:

A.      Upon completion of five (5) years of unbroken service, an employee shall be eligible for a severance benefit equal to twenty (20) hours of pay at the employee's regular straight time rate.  The night work pay set forth in Section 9 shall be included in the employee's straight time rate to the same degree it is included in the calculation of vacation allowance under Section 8.

B.      The employee shall be eligible for an additional twenty (20) hours severance pay benefit for each additional year of severance through the fifteenth (15th) year.

C.      For each year of unbroken service in excess of fifteen (15), the employee shall be eligible for an additional forty (40) hours severance benefit; provided, that in no event shall the total severance benefit to which an employee shall become entitled to exceed four hundred (400) hours.  The yearly severance benefit due an employee shall be proportionately applied to any period of service between the employee's most recent anniversary of hire and the date of his/her termination.

D.      No severance benefit shall be due under this Section to an employee under any of the following conditions:

  1.      The employee quits or is discharged for cause.

  2.      The employee is currently eligible to receive retirement benefits under the Social Security Act and under the Western Conference of Teamsters Pension Plan.

3.      Prior to his/her termination, the employee is offered regular full time employment within the jurisdiction of the Local Union.  If the employee rejects the employment offer, he/she is not entitled to severance pay.  If he/she accepts the offer and is subsequently terminated for just cause, he/she shall receive severance pay based upon his/her company seniority.

4.      Prior to his/her termination, the employee is offered and accepts full time employment, at a location of the Employer, outside the jurisdiction of the Local Union.  If he/she is subsequently terminated, unless he/she quits or is discharged for just cause, he/she shall receive severance pay based upon his/her company seniority.  However, if he/she rejects the above employment offer, severance pay shall be paid.

5.      If an employee is on layoff at the time of the closing, and his/her seniority has not been broken, he/she shall not be eligible for a severance benefit if he/she has regular full time employment elsewhere.

6.      At the time an employee is laid off, he/she shall have the option to receive the severance pay, if any, to which he/she is then entitled, or to retain his/her recall rights for a period of twelve (12) months.  If he/she elects to retain his/her recall rights, and he/she is not recalled within twelve (12) months of his/her layoff, he/she shall thereupon be entitled to his/her severance pay; provided that if the plant closes and one of the conditions described in Paragraph (D) (3), (4), or (5) above applies, he/she shall not be entitled to severance pay.

E.      The seniority of an employee shall be broken upon his/her receipt of a severance benefit.

F.      Severance benefits shall be paid to the employee no later than his/her final paycheck.

G.      The severance benefits provided by this Section shall be exclusive of all other benefits under this Agreement.

H.      This Section shall not apply if the work at the closed plant or location is transferred to another plant or location covered by this Agreement.

I.      Upon the completion of five (5) years unbroken service to the Employer, an employee shall be eligible for a severance benefit payable at the end of twelve (12) months, or his/her termination or layoff, in the event said employee cannot find employment with any of the signatories to either the Fluid or Manufacturing Milk Agreements under Local Unions 137, 386, 517 jurisdiction.  In the event said employee is offered regular full time employment by the aforementioned Employers within the twelve (12) month period, he/she shall lose any right to severance pay.

## Section 38.          Transfer of Personnel

A.      Whenever, within the geographic area covered by this Agreement, a new operation is opened, except as a replacement for existing operations within the geographic area covered by the Agreement, the Employer shall offer, pursuant to the provisions of Section 17, the opportunity to transfer to regular positions in the new operation to employees in those operations within the geographic area covered by this Agreement affected in whole or in part by the opening.

B.      Whenever the new operation is opened as a replacement of an existing operation located within the geographical area covered by this Agreement, employees in the operation being replaced shall be offered, pursuant to the provisions of Section 17, employment in a regular

full time position at the new operation. If all regular full time positions are not filled by employees from the replaced operation, the remaining such positions shall be offered to employees at other operations located within the geographic area covered by this Agreement.

C.     Provided, however, that the limitation of Section 18 relating to one (1) job bid per year are not applicable to bids submitted under the conditions set forth herein. Provided further, that the provisions of this Section shall be deemed applicable for a period of six (6) months subsequent to the commencement of operations at the new plant. The departmental seniority of employees at the new operation shall date from the commencement of his/her most recent period of unbroken service for the Employer in the same department.

D.     In the event regular full time jobs thereafter remain un-filled, the Employer may obtain employees without reference to the provisions of Section 18.

E.     The transferred employees shall, for a period of thirty (30) days following transfer, have an unqualified right to return to their former operation if it is still in existence and retain their seniority at their former operation. Employees who avail themselves of the transfer privilege, while they are on layoff at their original operation, may exercise their seniority rights if work becomes available at their original operation during the one (1) year layoff period allowed them at their original operation.

F.     When an operation is closed and the work of the operation is eliminated, an employee who was formerly employed at another operation shall have the right to transfer back to such former operation and exercise his/her seniority based on date of hire provided he/she has not been away from such original operation for more than one (1) year.

G.     When an operation is closed or partially closed and any of its work is transferred to another location, vacancies resulting from the transfer shall be filled in the following manner;

     1.     If any employees are on layoff at the location to which the work is transferred, the recall provisions of Section 17 shall be applied first.

     2.     An employee whose work is transferred shall first be offered his/her work in the same classification at the location to which it is transferred. This offer shall be made in the order of location seniority among the employees whose work is transferred.

     3.     Any vacancy remaining in the transferred work shall be posted in accordance with the provisions of Section 18 for bidding by employees at the location to which the work is transferred.

     4.     Any vacancies then remaining in transferred work shall be offered to employees in the department at the location where the work was performed, who have become unemployed by reason of the transfer. Such offer shall be made on the basis of their location seniority, provided the employees are capable of performing the work.

     5.     Any vacancies still remaining in transferred work shall be filled by the Employer without regard to the provisions of Section 17 and 18.

     6.     When work other than route work is transferred pursuant to this Section, all employees who transfer with such work within sixty (60) days of the date of transfer of the first such employee shall be deemed to have transferred on the same date as the first transferring employee, and their location seniority at the transfer location shall commence at that date. Among the employees who transfer their relative departmental and location seniority shall be based on their relative departmental and

location seniority at the former location.  When more than one (1) route is transferred to location within sixty (60) days, the same principle shall apply.

7.      Provided that if no regular work is available, the Employer during the period for which an employee's seniority remains unbroken, shall offer the employee employment in the same department at other operations within the area covered by this Agreement on the basis of the employee's departmental seniority, provided that this paragraph shall be applicable only at operations at which no employees are on a layoff status.

8.      Except as provided in Paragraph H below, such employees shall go to the bottom of the seniority list and shall have the right of job selection and other contractual rights in accordance with the seniority at the new operation.

H.      Whenever an employee is transferred pursuant to the provisions of this Section, his/her length of vacation, his/her severance pay and his/her accumulated sick leave benefits shall be based upon his/her most recent period of unbroken service under the collective bargaining Agreement of the Employer.

I.      As used in this Section, the term operation shall include a plant, branch or division of the Employer.

## Section 39.          Dues Deduction

A.      The Employer shall deduct monthly dues of such amount as has become due from the wages of each employee who has filed with the Employer a written assignment of such monies to the Union having territorial jurisdiction in the area which the individual is employed.

The assignments shall be irrevocable for a period of one (1) year or until the termination of this Collective Bargaining Agreement, whichever occurs sooner.

B.      The assignment shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable Collective Bargaining Agreement, whichever shall be shorter, unless written notice is given by the employee to the Employer and to the Union not more than (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year or of each applicable Collective Bargaining Agreement.

C.      The appropriate deduction shall be made on the first day of each month and shall be forwarded to the designated Local Union forthwith.

## Section 40.          Bereavement Leave

A.      Upon providing proof of death, an employee who loses time on scheduled work days on account of the death of a member of his/her immediate family will be paid as a result of attending to pre-burial, burial, or post burial matters, as defined in B. below.

B.      For the purpose of this Section, a member of the employee's immediate family is defined as:

1.      Spouse, son, daughter, mother or father: five (5) days (paid time off not to exceed 40 hours)

2.      Brother, sister, grandparents, and grandparents of the spouse, great grandparents, and great grandparents of the spouse, step-grandparents and step-grandparents of the spouse, mother and father-in-law, grandchildren, step-mother, step-father, and step-children: three (3) days.

31

3.      Brother-in-law and sister-in-law: one (1) day.

## Section 41          Management Rights

It is understood and agreed that all of the customary, historical and usual rights, functions, prerogative and authority of management are retained and remain solely exclusively within the rights of management.  These rights include, but are not limited to, the right to manage, operate and maintain the facilities, to select, hire and terminate employment, direct the work force, schedule work, determine what is to be produced and by what methods, determined the size of the work force, to relocate or remove any portion of the facilities (subject to the requirements of Section 38) and to abandon any operation it deems appropriate, to discipline, suspend and discharge employees for cause, to install any labor saving device or equipment and to replace, modify, discontinue or introduce new products. Any transfer of work that has been traditionally bargaining unit work will be handled in accordance with the other provisions of this contract.

## Section 41.  Terms of Agreement

A.   This Agreement shall be in force and effect through December 31, 2021 and shall be considered as renewed from year to year on a calendar basis thereafter, unless either party shall give written notice to the other party to termination of renegotiation as provided in Paragraph (B) hereof.

B.   Either party to this contract may terminate the Agreement or reopen the same for negotiation by giving to the other party written notice of intention to terminate or renegotiate by registered mail sixty (60) days prior to January 1, 2021 or January 1st of any year thereafter.

IN WITNESS HEREOF, the parties have executed this Agreement on the _____ 1st _____ day of _____ January _____, 2019.

LEPRINO FOODS COMPANY:                    TEAMSTERS LOCAL #517

_____                 _____
Heidi Nunes, Plant Manager                Greg Landers, Secretary-Treasurer

_____                 _____
Steven Schmidt, Sr. Director, Production   Steve Nelson, Business Agent
Division HR & Safety

_____                 _____
Kelly Soto, Sr. Manager, Regional          Jamal Adlouni, Union Team Member
Production Division HR

_____                 _____
Ana Nicks, HR Manager                     Robert Goykendall, Union Team Member

_____                 _____
Susan Parry, HR Generalist                Carlos Gutiérrez, Union Team Member

                                          _____
                                          Rodney Cotta, Union Team Member

                                          _____
                                          Patrick Matthews, Union Team Member

34

33

SCHEDULE "A"
CLASSIFICATION AND WAGE RATES

The following minimum straight time hourly rates and classifications shall govern, it being understood that additional classifications may be added or combination rates fixed within the limits of the wage schedules herein set forth by mutual consent of the parties.  Any disagreement over such classification of labor or the addition of more classifications shall be subject to the jurisdiction of the Arbitration Board herein provided in Section 33.

For purpose of the agreement non-classified work is defined as work not specifically included in "Schedule A".

|  | **2018** | **1/1/19** | **1/1/20** | **1/1/21** |
|---|---|---|---|---|
| Maintenance Working Foreperson | 27.27 | 28.02 | 28.79 | 29.58 |
| Maintenance – Vacation Relief | 26.77 | 27.51 | 28.26 | 29.04 |
| Maintenance Mechanic | 26.42 | 27.15 | 27.89 | 28.66 |
| Maintenance – Parts Room Working Foreperson | 26.27 | 26.99 | 27.73 | 28.50 |
| Production Working Foreperson – Day off Relief | 26.04 | 26.76 | 27.49 | 28.25 |
| Production Working Foreperson | 25.75 | 26.46 | 27.19 | 27.93 |
| Production – Vacation Relief | 25.31 | 26.01 | 26.72 | 27.46 |
| Skilled Relief Person | 25.19 | 25.88 | 26.59 | 27.33 |
| **Bracket 1:**<br>Cheese Maker<br>Milk Receiver<br>Lab Tech<br>Evaporator Operator<br>UF/Separator Operator<br>Dryer Operator<br>Starter Maker<br>MSP Operator<br>Relief Person (Bracket 2)<br>Power Lift Operator<br>Extruder Operator<br>Rail Loader<br>Maintenance Helper (Painter)<br>Parts Room<br>Sanitation/Sep CIP/UF Tester<br>Sanitation Day Off Relief | 24.90 | 25.58 | 26.29 | 27.01 |
| **Bracket 2:**<br>Brine Floater<br>Line Floater | 24.77 | 25.45 | 26.15 | 26.87 |

34

| | | | | |
|---|---|---|---|---|
| Filler Operator<br>Powder Bagger<br>Box Maker<br>Powder Blender<br>Cellulose/Rework<br>  (When performing Cellulose,<br>employee to be paid at Brk 2 rate)<br>Palletizer Operator<br>Maintenance Helper (Lubricator)<br>Sanitation/Cheese<br>Sanitation/Processing<br>HTST/Cheese<br>Sanitation/CCT PHT<br>Sanitation/Cheese Environmental<br>Sanitation/Process Environmental<br>Sanitation/Whey Environmental<br>Sanitation/Mixers<br>Liquid Application/Freezer Opr | | | | |
| **Bracket 3:**<br>Uncuffer<br>Cellulose/Rework<br>  (When performing Rework,<br>employee to be paid at Brk 3 rate)<br>Sweeper<br>On Call Base Pay | 21.89 | 22.49 | 23.11 | 23.75 |
| **Clerical**<br>Vacation Relief | 24.42 | 25.09 | 25.78 | 26.49 |
| Senior Clerk | 23.73 | 24.38 | 25.05 | 25.74 |

**CLASSIFICATIONS:**
**Working Foreperson (Production and Maintenance)**

Assigned to supervision of and working with other workers.

**Skilled Relief Person (Relief for Bracket 1)**

The rate of Skilled Relief Person shall be paid as follows:

a.    For all hours worked in the workweek, to any employee working in Bracket 1, who is regularly scheduled to work on two (2) or more different shifts during the same workweek.

b.    For any full days worked on any shift in Bracket 1 which differs in starting time from his/her regularly scheduled shift, to any employee who is temporarily so assigned.

c.    For the purpose of subsections (a), (b) and (d) herein set forth, starting times within the workweek which do not vary by four (4) hours or more shall be deemed to be the same starting time on the same shift.

d.    For all hours worked in the workweek, to any employee who relieves other employees on their scheduled days off in two (2) or more classifications in Bracket 1 on the same shift.

e.    For any full days worked in Bracket 1, outside his/her regularly scheduled classification, to any employee who was temporarily so assigned.

**Maintenance Person**
**Tool Allowance**: Tool Allowance of two hundred dollars ($200.00) per year.

a.  Will have the option to purchase Craftsman through the Employer or be reimbursed upon presentation of receipts.
b.  Current mechanics will have one year to attain agreed upon tool list.

**Bracket 1**  includes the following classifications:

| | |
|---|---|
| Cheese Maker | Parts Room |
| Milk Receiver | Relief Person (Bracket 2) |
| Lab Tech | Power Lift Operator |
| Evaporator Operator | Extruder Operator |
| UF/Separator Operator | Rail Loader |
| Dryer Operator | Maintenance Helper (Painter) |
| Starter Maker | Sanitation/Separator CIP/UF Tester |
| MSP Operator | Sanitation Day Off Relief |

**Relief Person (Relief for Bracket 2)**  - The rate for Relief Persons shall be paid as follows:

a.  For all hours worked in the workweek, to any employee working in Bracket 2, who is regularly scheduled to work on two (2) or more different shifts during the same workweek.
b.  For any full days worked in any shift in Bracket 2, which differs in starting time from his/her regularly scheduled shift, to any employee who is temporarily so assigned.
c.  For purposes of subsections (a), (b) and (d) herein set forth, starting times within the work week which do not vary by four (4) hours or more shall be deemed to be the same starting times on the same shift.
d.  For all hours worked in the work week, to any employee who relieves other employees on their scheduled days off in two (2) or more classifications in Bracket 2, on the same shift.
e.  For any full days worked in Bracket 2, outside his/her regularly scheduled classification any employee who is temporarily so assigned.

**Bracket 2** includes the following classifications:

| | |
|---|---|
| Brine Floater | Sanitation/Processing |
| Line Floater | HTST/Cheese |
| Filler Operator | Sanitation/CCT PHT |
| Powder Bagger | Sanitation/Cheese Environmental |
| Powder Blender | Sanitation/Process Environmental |
| Box Maker | Sanitation/Whey Environmental |
| Palletizer Operator | Sanitation/Mixers |
| Maintenance Helper (Lubricator) | Liquid Application/Freezer Operator |
| Sanitation/Cheese | |

**Office Employees**
Vacation Relief
Principal Clerk (Currently there are no employees in this classification as of 1/1/08).
Senior Clerk

# Exhibit B





AGREEMENT BETWEEN

LEPRINO FOODS COMPANY

LEMOORE, CALIFORNIA PLANT


AND


CREAMERY EMPLOYEES AND DRIVERS

TEAMSTERS LOCAL UNION NO. 517



January 1, 2022 through December 31, 2024

**INDEX**

Page

Arbitration – Section 33 ........................................................................................... 26
Bereavement Leave – Section 40 ............................................................................ 32
Break-In Period – Section 27 ................................................................................... 23
Bulletin Board – Section 20 ..................................................................................... 21
Discharge – Section 13 ............................................................................................ 11
Dues Deduction – Section 39 .................................................................................. 32
Employment Practices – Section 5 ............................................................................ 2
Health and Welfare – Section 15 ............................................................................. 12
Holidays – Section 7 .................................................................................................. 7
Hours of Work – Section 6 ......................................................................................... 2
Job Bidding – Section 18 ......................................................................................... 17
Jury Duty – Section 34 ............................................................................................. 28
Leave of Absence – Section 32 ............................................................................... 26
List of Employees – Section 23 ............................................................................... 22
Maintenance of Bargaining Unit – Section 4 ............................................................. 2
Management Rights – Section 41 ............................................................................. 33
Management Trainees and Interns – Section 30 ...................................................... 24
Meal Periods – Section 22 ....................................................................................... 21
Night Work Pay – Section 9 ..................................................................................... 10
On-call ........................................................... Pages 4, 5, 9, 15, 16, 18, 19, 26 and 36
Operation of Agreement – Section 2 .......................................................................... 1
Pay Days – Section 28 ............................................................................................. 23
Performance of Work Covered by This Agreement – Section 35 .............................. 28
Protective Clothing – Section 26 ............................................................................. 23
Recognition – Section 1 ............................................................................................. 1
Relief Periods – Section 12 ..................................................................................... 11
Remittance Advice – Section 29 .............................................................................. 24
Retirement Plan – Section 16 .................................................................................. 13
Schedule "A" Classification and Wage Rates .......................................................... 35
Seniority – Section 17 .............................................................................................. 14
Severance Pay – Section 37 .................................................................................... 29
Sick Leave – Section 31 .......................................................................................... 24
Signature Page ......................................................................................................... 34
Term of Agreement – Section 42 ............................................................................. 34
Termination Notice – Section 14 ............................................................................. 11
Transfer of Company Title or Interests – Section 36 ................................................ 28
Transfer of Personnel – Section 38 ......................................................................... 30
Uniforms – Section 11 ............................................................................................. 11
Union Affiliation and Preference of Employment – Section 3 ..................................... 1
Union Relations – Section 24 ................................................................................... 22
Vacation – Section 8 .................................................................................................. 8
Visits to Plant – Section 19 ...................................................................................... 21
Wage Reductions – Section 21 ................................................................................ 21
Wages and Classification – Section 10 .................................................................... 11
Work in Two or More Classifications – Section 25 ................................................... 23

0

LEPRINO FOODS COMPANY
AGREEMENT

**January 1, 2022 to December 31, 2024**

This Agreement made and entered into as of January 1, 2022 by and between **Leprino Foods Company,** hereinafter referred to as **"the Employer"** and **Teamsters Local #517,** hereinafter referred to as **"the Union".** WITNESSETH that in consideration of the promises, it is mutually agreed as follows:

## Section 1.          Recognition

A.     The Employer and the aforementioned Local Union each mutually recognizes the other as the sole agency for the purpose of collective bargaining for all employees working in Employer's listed plant in the classifications listed in SCHEDULE "A", attached hereto.

B.     Such employees shall be covered by the provisions of this Agreement; it being understood that additional classifications may be added in the manner set forth in said SCHEDULE "A", attached hereto.

C.     There shall be no discrimination of any kind against any employee on account of union affiliation or on account of the bona fide union activities of such union employees.

## Section 2.          Operation of Agreement

This agreement shall operate as a direct contract between the Employer and Local Union mutually concerned.

## Section 3.          Union Affiliation and Preference of Employment

A.     All employees covered by this Agreement, who are members of the Union on the date of execution of this Agreement or on the effective date of this Agreement whichever is later, shall as a condition of employment remain in good standing in said Union. All present employees covered by Agreement who are hired hereafter shall become and remain members in good standing in the Union, as a condition of employment, on and after the thirtieth (30th) day following the beginning of their employment, the effective date of this Agreement or the date of execution of this Agreement, whichever is later.

B.     When new or additional employees are needed, the Employer will notify the office of the Union and the Union will furnish the Employer with a list of any experienced and qualified persons who may be available for work.

C.     The Employer may hire qualified persons from any source.

       Within seven (7) business days following the employment of a new employee, the Employer shall notify the Union in writing of the new employee's name, address, classification and date of employment. Such notification shall be transmitted by a postcard furnished by the Local Union. Such persons shall make application for and complete union membership subject to this provision.

D.     The Union agrees that it will designate a representative, who shall be authorized to receive applications for membership. If any employee is not in good standing with the Union, as provided herein, and the Union so notifies the Employer in writing, the Employer will discharge such employee within seven (7) days thereafter.

**Section 4.**          **Maintenance of Bargaining Unit**

Clerical work, which is being performed by bargaining unit employees, may be transferred only under the following circumstances: (1) to other bargaining unit employees; (2) in the case of a consolidation or centralization of the Employer's clerical functions by transfer to non-bargaining unit employees at another location of the Employer.

**Section 5.**          **Employment Practices**

A.      Neither the Employer nor the Union shall discriminate against any employee because of race, sex, religion, national origin, age, color, marital status, sexual orientation, status as a Vietnam Era Veteran, or physical or mental disability or on any other basis prohibited by federal, state or local law or ordinance. The Employer will reasonably accommodate any qualified applicants and employees with known mental or physical disabilities, as required by applicable state and federal laws, subject to the provisions of this Agreement. The Employer will consult with the Union in formulating reasonable accommodations, but retains the right to make the final determination.

B.      The Employer and the Union agree to full compliance with The Uniformed Service Employment and Reemployment Rights Act (USERRA) of 1994.

C.      In this Agreement when the masculine gender is used, it shall be deemed to include the feminine and vice versa.

**Section 6.**          **Hours of Work**

A.      Work Week. Not more than forty (40) hours shall constitute a week's work to be completed within five (5) days, Sunday through Saturday, each day consisting of 8 hours to be completed within 9 hours. The employer may establish a work day of eight (8) continuous hours. An alternative schedule may be established upon mutual agreement between the Company and the Union.

B.      1.      Time and one-half (1½) will be paid for all hours worked above eight (8) hours within nine and one-half (9½) consecutive hours in any one (1) day, or forty (40) hours in any one (1) week, whichever is greater. Any time worked in excess of nine and one-half (9½) hours in any one (1) day shall be overtime and paid for at the rate of two (2) times the straight time hourly rate.

        2.      Double time will be paid for all hours (minimum of 2 hours) during which an employee is required to don a Level A Hazmat Suit (and so does) and responds to an unforeseen Hazardous Material situation, as directed by the Company.

C.      In lieu of the provisions of Paragraph A. and B. of this Section, the Employer may establish a work week, Sunday through Saturday, of forty (40) hours consisting of four (4) ten (10) hour days upon the following conditions:

        1.      For all employees except Administration employees, ten (10) hours shall constitute a days work and shall be completed within ten and one-half (10½) hours; for Administration employees, ten (10) hours shall constitute a work day and shall be completed within eleven (11) hours.

        2.      All such employees shall receive three (3) days off each calendar week. At least two (2) of them shall be consecutive.

2

3.    For purposes of calculating holiday pay, sick leave pay, funeral leave pay and jury duty pay, a day, including a holiday, shall consist of ten (10) hours in any one (1) day.

4.    Twice the straight time hourly rate shall be paid for time worked in excess of ten (10) hours in any one (1) day.

5.    For all timed worked on his/her day off an employee shall be paid at the rate of twice his/her straight time hourly rate.

D.    For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Lab employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

E.    Posting Days Off and or Starting Time. Weekly work schedules shall be posted by noon on Thursday in advance of each workweek. The Company shall be responsible to notify employees of changes to the schedule after noon on Thursday.  When an employee leaves the plant, he/she is not responsible to contact the Company; burden to notify the employee of a schedule change is the Company's responsibility. An employee whose starting time is to be delayed shall be notified of such change not less than eight (8) hours prior to the commencement of his/her regularly scheduled starting time.

When employees scheduled starting time is changed after posting and while employee is still on premises, the supervisor will provide a written notice to the employee advising employee of such change.

1.    Any employee called to work prior to his/her starting time will be paid one-half time penalty pay up to his/her regular starting time.

2.    Overtime will be paid after eight (8) hours of work.

F.    Days Off. Any employee required to work on his/her scheduled day off shall be paid at the rate of two (2) times the straight time hourly rate for all time worked, unless the employee takes off another day during such work week for reasons other than the request of the Employer, or unless a change in work schedule results from a promotion or change of shift assignment pursuant to the operation of Section 17 and 18, hereof.  In this event, new days off shall be scheduled to meet the new assignment and no penalty shall result from working a scheduled day off under the former assignment while affecting such a change.

- VTOR, non-worked holiday, jury duty, bereavement, would be considered a worked day
- TOR's, sick days, FMLA, family partnership, unavailable call-in's are not considered a worked day.

1.    When working a six (6) day schedule, the Company will attempt to schedule Sundays and/or Holidays as down days whenever possible.

2.    When working a seven (7) day schedule, the Company will attempt to allow employees to have at least two (2) weekends off every six (6) weeks whenever possible.

3.    In the event an employee is scheduled for overtime on the posted schedule or called in for overtime, with a 90-minutes notice without penalty, the overtime can be canceled and/or altered. Employer will verbally speak to the employee to cancel

this overtime. In the event the overtime is not cancelled within the 90-minute notice, the employer will offer a minimum of four hours work to the employee.

G.      Minimum Hours.  Employees called to work, scheduled and reporting for work, or working four (4) hours or less in any day shall be offered a minimum of four (4) hours of work, and all employees working more than four (4) hours shall be offered eight (8) hours of work at their scheduled bracket or the higher bracket of the two.  However, minimum hours shall not apply when the Employer does not receive ninety (90) minutes notification as prescribed in Section 31.L. The employee who is scheduled to fill a vacancy resulting in less than the ninety (90) minutes notification shall be paid the appropriate rate of pay for all hours actually worked to complete that shift's vacancy.

H.      Delays of Operations.  Any delays in operations caused by circumstances beyond the control of the Employer, such as failure of power, acts of God, bomb threats or break down of plant machinery or equipment, shall not require the payment of overtime, except to employees who may be continued at work during such delayed interval.

I.      Method of Spreading Work.  It is the policy of the Employer that the maximum proportion of bid-holding employees shall receive eight (8) hours daily and forty (40) hours weekly employment; that the principle of spreading work by reducing hours for all employees who perform like duties shall not be applied; and that, where feasible, days off will be scheduled consecutively.

J.      Call-Back.  Whenever an employee is called back to work after the close of his/her shift and before the commencement of his/her next shift, he/she shall be guaranteed a minimum of two (2) hours of work at the appropriate rate.  This Section shall apply only in the following circumstances:

1.      The employee has left the Employer's premises after the close of his/her shift (including overtime, if any); and

2.      The call-back begins more than two (2) hours before the commencement of the employee's next scheduled shift.

K.      The Employer may maintain an on-call list of 30 employees to fill vacancies.  If business needs require any additional on-call employees, the Company and Union will meet and confer. This list may be comprised of bidholders and non-bidholders.  All the bidholders listed in seniority order shall precede the non-bidholders listed in seniority order.  On-call employees may be scheduled on the weekly schedule for known vacancies to which they must adhere. Senior qualified on-call will be utilized first in regards to scheduling full workweeks; however specific assignments will be made according to the company's needs with consideration given to seniority and qualifications. When an on-call employee is scheduled to work for five days, his/her days off shall be scheduled and he/she shall receive two (2) times the straight time rate of pay for working a scheduled day off.  If an on-call employee is scheduled to work for less than five days, he/she shall have no scheduled days off and shall receive overtime at the appropriate rate of pay after working forty (40) straight time hours.  When necessary, the Employer may cancel scheduled work without penalty. When filling an unscheduled vacancy with an on-call employee on straight time and they decline or there is no response from the on-call employee within eight (8) hours, after three (3) such instances in a rolling four (4) week period, the employee will be terminated. Previous bid-holders, who are now on-call, would be exempt from this subsection.

L.      Refusal to Work Overtime.  Qualified employee is defined as having all aspects of the

4

JTPR completed and have any required certifications/licenses and have performed the job within the last twelve (12) months for the specific position completed for the job. Overtime is available to qualified employees only first who have signed the overtime list. It shall not be a violation of this Agreement or a cause for discharge or disciplinary action for an employee to refuse to work voluntary overtime, except as otherwise provided hereafter:

1.  Daily Overtime (Less than four (4) hours)

    a.  Offer overtime to employee performing the job.

    b.  In the event the overtime work is not assigned in accordance with sub-section (a) the Company will offer the overtime to the senior qualified employee in the department who is available at the time the overtime is to occur, provided he/she has signed the overtime list.

    c.  In the event the overtime work is not assigned in accordance with sub-section (a) and (b) the Company will require the qualified employee to perform the overtime work in reverse order of seniority working in the department who is available at the time overtime is to occur. Disciplinary action will be administered per the disciplinary policy up to and including termination, if the least senior qualified employee refuses to stay.

    d.  No employee will be required to work more than two (2) hours of daily overtime. For purposes of daily overtime, the on-call person is in the department where they are working.

    e.  If it is necessary to fill a full-shift vacancy as outlined below in L-2E, an employee may be required to work 4 hours of overtime to fill a full-shift vacancy. These four hours will count towards the 12-hour daily requirement.

    f.  No employee will be required to work more than 12 hours of daily overtime in any one workweek.

2.  Day-Off Overtime (vacancy for full shift – four (4) hours or more)

    a.  Schedule or call in a senior qualified employee who is on-call and can work at the straight time hourly rate.

    b.  In the event the vacancy is not assigned in accordance with subsection (a) the employer will schedule or call in senior qualified employee in the department who is on a scheduled day off, has signed the overtime list, and has had seven and one-half (7½) hours rest before reporting for this shift and will have seven and one-half (7½) hours rest following this shift. Employees will only be allowed to work one shift per day off.

    c.  In the event the vacancy is not assigned in accordance with sub-section (a) and (b), the employer shall offer the vacancy in seniority order to qualified employees on the overtime list at the location.

    d.  In the event the vacancy is not assigned in accordance with sub-section (a), and (b) and (c) the employer shall offer an additional four (4) hours to the employee performing the job where the overtime is to occur provided they have signed the overtime list and offer the next scheduled employee

four (4) hours work prior to his/her regular scheduled shift provided they have signed the overtime list.  In the event the vacancy is not assigned in this manner, the Employer shall offer an additional four (4) hours in seniority order to qualified employees who have signed the overtime list on the shift where the overtime is to occur and offer to the next scheduled qualified employee in seniority order four (4) hours work prior to their regular scheduled shift provided they have signed the overtime list. Once all options have been exhausted above, and the employee has been asked to stay over four (4) hours, these four (4) hours cannot be retracted, unless agreed upon by employee staying over.

e.    If unable to fill the vacancy in accordance to sub-sections (a) - (d), the employer shall fill the vacancy by reasonable means.  An employee may be required to work up to four (4) hours of overtime.

f.    If the Maintenance Foreperson vacancy was without prior knowledge, the supervisor must:
  1. Ask the senior qualified mechanic on duty if he would like to assume the responsibilities of a foreperson.
  2. Should he/she decline, the next senior mechanic will be asked. This process is to be continued until the vacancy is filled.
  3. The acting foreperson will be compensated at the rate of time and one-half (1 ½) for all hours worked as a foreperson.

g.    If the Maintenance Foreperson absence has been scheduled, the following measures will be taken:
  1. The supervisor will ask the senior qualified mechanic on duty if he would like to assume the responsibilities of a foreperson for the dates of absence, before the end of the shift.
  2. Should he/she decline, the next senior mechanic will be asked. This process is to be continued until the vacancy is filled.
  3. The acting foreperson will be paid at foreperson rate.

3.    In the event a bid-holder or foreperson is requested or required to perform a different job other than their daily scheduled job, they will be compensated at the rate of time and one-half (1½) for all regular hours worked on the different job.

4.    In the event of a vacancy, when any employee is requested or required to perform, and is responsible for, a job(s) in addition to their daily scheduled job, they will be compensated at the rate of time and one-half (1½) for all regular hours worked while performing the assigned multiple jobs.

5.    Overtime list shall be posted for a one week period every week. An employee will be able to indicate shift(s) and one day not available for overtime. Unclassified work will be assigned by location seniority.

M.    If an employee (bid-holder) is going to be off work for more than a scheduled work week, management and union will meet and discuss and give due consideration to the senior qualified employee in that classification from a different shift. Upon agreement with the employee, the Company may schedule that employee to cover the vacancy as long as it can be scheduled at the time of the posting of the weekly schedule.  The employee will be paid at the appropriate contractual rate of pay for the job performed. There will be only one lateral move. Foreperson position vacancies will be filled at the discretion of the Company.

If an employee is going to be off work but is not going to be off for more than a full scheduled work week, the Company will fill the vacancy through Section 6.L.2. of the collective bargaining agreement.

N.  Industrial Injury. If an employee sustains an industrial injury and there is medical evidence that such injury prevented him from continuing work on the day of injury, he/she shall be paid for time worked on such day for not less than eight (8) hours or ten (10) hours, if so scheduled.

O.  If an employee is regularly scheduled to return to work within seven and one-half (7½) hours after completing his/her regular straight time hours on any shift he/she shall be paid at the rate of time and one half (1½) for all hours worked within such seven and one-half (7½).

**Section 7.          Holidays**

A.  The following holidays will be recognized for eligible employees as hereinafter defined:

New Year's Day
Martin Luther King Day (third Monday in January)
Washington's Birthday (third Monday in February)
Easter Sunday
Memorial Day (last Monday in May)
Fourth of July
Labor Day
Veteran's Day (as designated by the State of California)
Thanksgiving Day
Christmas Day

B.  The day upon which the holiday falls shall be treated as the holiday for payroll purposes.

C.  To be eligible for the benefits provided by this Section, an employee must meet the following requirements:

1.  He/she must work on his/her regularly scheduled work day next before and next after the holiday unless excused by the Employer, provided that an employee off work because of illness or injury shall be deemed to be excused by his/her Employer if he/she notifies his/her Employer of his/her illness prior to the commencement of his/her shift on the day on which he/she is unable to work.

2.  He/she must work on the holiday if scheduled to work, unless excused by the Employer.

3.  He/she must perform work during the seven (7) day periods immediately preceding or immediately following the holiday provided that this requirement shall not apply to employees covered by paragraph (H) of this Section.

D.  Eight (8) hour shift: During each week in which a holiday falls, each eligible employee will receive eight (8) hours of pay at the straight time rate as holiday pay in addition to all other compensation earned by him under other provisions of this Agreement. An eligible employee working on any of the above mentioned holidays shall be paid one and one-half (1½) times the straight time rate for time worked up to eight (8) hours and twice the straight time rate for work performed in excess of eight (8) hours.

E.      Ten (10) hour shift:  During each week in which a holiday falls, each eligible employee shall receive ten (10) hours of pay at the straight time rate as holiday pay in addition to all other compensation earned by him/her under other provisions of this Agreement.  An eligible employee working on any of the contractual holidays shall be paid one and one-half (1½) times the straight time rate for time worked up to ten (10) hours and twice the straight time rate for work performed in excess of ten (10) hours.

F.      Regular part-time employees working three (3) or less days a week shall not be entitled to pay for holidays not worked.

G.      Any employee working at the reduced rate provided for in Section 27 of this Agreement shall be ineligible for paid holidays during his/her first sixty-six (66) days actually worked. If said employee works on a paid holiday, he/she shall be paid at the straight time rate unless otherwise eligible for premium pay.

H.      Any shift differential to which an employee is entitled shall be included in holiday pay.

### Section 8.          Vacation

A.      The Employer shall grant paid vacations in accordance with the following schedule:

| Continuous Service | Weeks Paid |
|---|---|
| One (1) year | One (1) week |
| Two (2) years | Two (2) weeks |
| Five (5) years | Three (3) weeks |
| Ten (10) years | Four (4) weeks |
| Fifteen (15) years | Five (5) weeks |
| Thirty-five (35) years | Six (6) weeks |

The vacation period listed above shall be earned after the completion of the year or years of continuous service.

An employee shall be entitled to receive full vacation pay as set forth above if he/she has actually performed work for 2,000 hours during his/her vacation eligibility year.  If an employee has completed a vacation eligibility year but has performed work for less than 2,000 hours during such year, such employee's vacation time shall be based upon his/her years of continuous service, but the amount of vacation pay to which he/she shall be entitled shall be determined by the ratio between 2,000 hours and the total hours actually worked by him during his/her vacation eligibility year.  If an employee is on layoff at the time of completing his/her first vacation eligibility year, he/she shall not be eligible for vacation pay for that year, unless he/she is recalled to work while his/her seniority remains unbroken.  The vacation eligibility year shall be the time between the employee's anniversary date of hire and one (1) year thereafter and in yearly periods thereafter.

B.      An employee may divide his/her vacation into five (5) periods.  Whenever an employee splits his/her vacation, his/her location seniority preference in vacation selection shall be applicable.

Beginning with the vacation year of 2002, for employees with two or more weeks vacation, one week of vacation per year may be taken in single or multiple, maximum three consecutive days upon approval, paid vacation days. These paid vacation days may not be requested more than thirty days in advance; but, they must be requested by the Monday before the work schedule is posted for the coming week; however, emergency paid vacation days may be granted upon a 24 hours notice on a case-by-case basis. Such paid vacation days will have priority over any unpaid time off requests. Full week vacations

have priority over single paid vacation days. Overtime may be worked to cover a single paid vacation day; but unpaid time off requests will not be covered by overtime. During the life of this agreement, necessary changes for the administration of this benefit will be made by the negotiating committee. An employee may rollover up to a maximum of five single paid vacation days into the next year.

C.    Vacation allowance shall be computed on the basis of the employees' straight time hourly rate during the week immediately preceding the commencement of the vacation plus any night work pay earned during such week.  When night work is regularly rotated, the night work pay shall be pro-rated for this purpose.

D.    For purposes of computing time worked during a vacation eligibility year, the following shall be counted as straight time hours worked: paid holidays not worked, paid vacation time and paid sick leave.

E.    If an employee's seniority is lost pursuant to Section 17, his/her accumulated service for purposes of vacation benefits is canceled.

F.    If called back to work during his/her scheduled vacation or if required by this Employer to completely forego a scheduled vacation, or any part thereof, an employee shall be paid at two (2) times his/her regular straight time rate of pay for all hours worked during said scheduled vacation.  The employee shall reschedule the unused portion of his/her vacation in accordance with the provisions of this Section.

G.    An employee may not receive vacation pay in lieu of taking his/her vacation unless mutually agreed to between the Union and the Employer, and provided that in accordance with Section 16A, no pension will be paid on such vacation pay in lieu of taking vacation. If an employee receives vacation pay in lieu of taking their vacation, or a vacation switch is granted after the vacation relief schedule has been prepared, the employee will go to the bid-holders on-call list for the week(s) originally scheduled and be scheduled for work as their seniority and qualifications dictate and be paid at the appropriate rate of pay for jobs worked during that week(s).  If such week(s) have not been selected by the vacation relief, the employee will continue to work their regularly scheduled job.

H.    Schedules for the selection of vacation periods shall be posted no later than October 1 of each year.  Employees who fail to select their vacation periods within thirty (30) days of the posting of the schedule shall forfeit their right to select a vacation period.  Upon request of the Union made by February 1, the Employer shall furnish the Union with a copy of the vacation schedule as of that date.  This Section shall also apply to vacation periods which become available after the posting of the vacation schedule.

On-call employees will select their vacation in the department where the majority of hours are worked during the prior period from Aug 1 through July 31.

I.    Vacations shall be taken at the convenience of the Employer but due consideration will be given to an employee's request for time of vacation in accordance with location seniority within the department.  The months of June, July, and August shall not be blocked out of the schedule.  No employee shall be required to commence his/her vacation period without having been given thirty (30) days prior notice.   If operating requirements permit, employees operating the same machinery may take vacations at the same time. An on-call employee's vacation selection will not close out a vacation week.

J.    New employees hired on or after January 1, 1994, will receive the choice between one of two vacation options.  These options will be explained to the employee within the first 66

days of employment by representatives of the Company and Union. The option chosen will be binding for the life of their employment with Leprino Foods, Lemoore Plant.

1.  For employees hired after January 1, 1994, vacation time earned upon completion of an anniversary year may not be scheduled until the following calendar year; or,

2.  If the employee desires a vacation in the calendar year after they are hired, he/she may schedule one (1) week of vacation in the year they are hired to be taken the following calendar year. The employee will be paid in full unless vacation is taken prior to his/her anniversary date in which case vacation will be pro-rated based on actual hours worked as of the date of vacation.  Future vacations will be similarly calculated.

3.  For the employees who choose option 2 above, they can also choose to have their balance of pro-rated vacation banked or paid on the first payroll following their anniversary date.

K.  Any employee hired before January 1, 1994, who takes vacation prior to his/her anniversary date, shall receive whatever full days of prorated vacation pay he/she has earned as of the date of his/her vacation up to the amount of time taken off.  Balance to be paid on the first payroll following their anniversary date.

Effective for 1998 vacations forward, employees can choose to have their balance of prorated vacation banked or paid on the first payroll following their anniversary date. The Employer will provide a form to employees to make their selections.  Employees can change their selection on an annual basis if the change is submitted by July 1 to be effective for the following year.

L.  An employee entitled to vacation pay shall, upon a request submitted at least seven (7) days prior to the commencement of the vacation period, receive his/her vacation pay at the commencement of the vacation period.

M.  If an employee is off work because of disability immediately prior to the time his/her vacation is scheduled to commence, he/she may have his/her vacation rescheduled in accordance with the provisions of this Section, provided he/she so notifies his/her Employer before his/her vacation is scheduled to begin.  The employee shall not have the right to interfere with the scheduled vacation period of another employee.

N.  For the purpose of this section, the following departments are recognized: cheese, processing, whey, warehouse, lab, maintenance, Administration, and such departments as may be agreed upon by the employer and the Union. Maintenance will be split into two groups (1) Maintenance Mechanics and (2) all others.

## Section 9.          Night Work Pay

A.  An employee working between 6 p.m. and 6 a.m. shall receive forty cents ($.40) per hour premium above the regular hourly rate.  When an employee works more than fifty percent (50%) of a straight time shift between the hours of 6 p.m. and 6 a.m., he/she shall receive the work premium for the entire shift worked.

B.  The shift premium is to be included as part of the regular hourly rate upon which overtime is calculated.

**Section 10.**         **Wages and Classifications**

The minimum scale of wages to be maintained by the Employer during the term of this Agreement is as set forth in Schedule "A" attached hereto and incorporated herein and made a part of this Agreement.

| Year | 2022 | 2023 | 2024 |
|---|---|---|---|
| Wage Increase | 5.0% | 3.25% | 3.0% |

**Section 11.**         **Uniforms**

If an Employer requires his/her employees to wear a uniform, the Employer shall furnish and launder said uniforms.

Employees who are required to change into and out of uniforms will do so at the employer's designated locker room facilities. Employees will not be allowed to remove uniforms off the premises. Employees will be paid a total of 14 minutes of additional compensation for donning and doffing at the straight time rate for each shift worked. This compensated time is not considered hours worked.

**Section 12.**         **Relief Periods**

The Employer agrees to provide adequate relief and rest periods of ten (10) minutes during the first half of the shift and ten (10) minutes during the second half of the shift. The employee will be entitled to an additional ten (10) minute rest period when they are working two (2) or more hours of overtime.

**Section 13.**         **Discharge**

A.      No employee shall be discharged without just cause.

B.      Warning letters shall be effective for the purposes of further discipline for no more than one (1) year from the date of issuance.

C.      Whenever a regular employee becomes unable to perform the essential functions of his/her regular work, with or without reasonable accommodation, by reason of physical or mental disability, he/she shall be placed on a medical leave of absence upon the submission of medical certification of employee's functional limitations, onset of limitations, and probable duration.  Such leave shall continue while the employee is disabled, but no longer than the period of the employee's employment at the commencement of his/her disability or one (1) year, whichever is shorter, unless it is extended by the Employer.  Unless the employee returns to his/her job at the end of his/her medical leave of absence, his/her employment may be terminated without violating the provisions of this Section.

**Section 14.**         **Termination Notice**

A.      Any employee who proposes to resign his/her position shall give one (1) week's notice to his/her Employer.

B.      The Employer shall give one (1) week's notice or one (1) week's salary in lieu thereof to an employee who is to be laid off or discharged, except that notice shall not be required when an employee is discharged for violation of Company rules posted on the bulletin

board referred to in Section 20, provided that this exception shall apply only when the rules posted have previously been sent to the Local Union.

C.     One (1) week's notice shall not be required in the case of new employees, whether or not a member of the Union, for the first sixty-six (66) days actually worked.

## Section 15.     Health and Welfare

A.     Effective January 1, 2008, health and welfare benefits shall be provided by the Company through the Northern California General Teamsters (NCGT) Choice Plus Plan.

Employees will receive six (6) months of Health and Welfare coverage during a medical leave of absence, including the premium waiver by the NCGT Choice Plus Plan, provided the employee continues to make any required monthly contributions.

B.     The Company shall remit each month the full amount of the monthly contribution for each eligible employee in conformance with, and to be bound by, the Agreement and Declaration of Trust for the Fund.

C.     For purposes of this section, an eligible employee for whom the Company shall make a monthly contribution is an employee meeting the following qualifications:

1.     The employee is on the company's payroll on the first (1st) day of the calendar month following the month for which the payment is being made, and;

2.     The employee has worked at least eighty (80) hours during the previous calendar month. Holiday hours, vacation hours, funeral leave hours and jury duty hours, paid for but not worked, shall constitute hours worked for this purpose.

3.     New employees will be eligible for Health and Welfare benefits on the first (1st) of the month coincident with or next following completion of sixty (60) calendar days of employment.

D.     Effective January 1, 2008, current (non-retired) employees will make contributions to the Company toward their health and welfare coverage for any month in which a premium is paid by the Company, pursuant to the terms of Section 15D 1, a, b and c below. Employee contributions will be through payroll deduction; the employee shall be responsible for making payment by check or other method accepted by the Company. Employee contributions during the term of the Agreement will be made on a pretax basis, to the extent permissible by law, in the following amounts:

1.     Effective January 1, 2022 employees will contribute the following percentage on a monthly basis of the total monthly contribution for the tenure of the contract – needed to maintain NCGT Select Plus, through the term of this agreement:

| YEAR | % CONTRIBUTION |
|------|----------------|
| 2022 | 20% |
| 2023 | 20% |
| 2024 | 20% |

a.     Company agrees that employees who select Family coverage on the Select Plus PPO plan will not pay a monthly contribution amount more than what their equivalent employee cost share amount would have been under that

year's Choice Plus PPO plan at the specified employee contribution percentage for that year.

    b.    Employees who select only Dental/VSP/Life coverage will pay the employee cost share percentage for that year of the Dental/VSP/Life premium.

    c.    Employees electing to be in the Kaiser Plan would be responsible for 100% of any cost in excess of the Company's cost for their selected tier of Select Plus PPO.

E.    Retired Employees' Hospital, Medical, Surgical Benefits:

The Company will make medical benefits available to eligible retired employees pursuant to the rules of the Teamsters Retiree Trust, with such retirees paying contributions established by the Trustees to fund their benefits, and the Company agrees to be bound by the Agreement and Declaration of Trust.

F.    An employee may be terminated for filing or causing a fraudulent claim to be filed.

G.    Both the Company and the Union agree that having healthy employees is in the best interest of the Company and the Union and as such, agree to continue and encourage voluntary participation in programs of good health and wellness. The Union agrees to work with the Company in developing programs that improve the Company's employees' health and well-being which may control or reduce the cost of the Fund.

The Company is concerned that the Fund could at some point during the term of this agreement become subject to federal excise taxes as a result of the application of certain provisions of the federal Patient Protection and Affordable Care Act, as may be amended from time to time (PPACA). If the Fund is at any time determined to be in a situation where excise taxes are applicable or likely to become applicable, the Union understands that would be a serious issue for the Company.

The Union agrees that during the term of this agreement if any excise tax becomes applicable to the Fund under the PPACA, the Company has the right to reopen this agreement for the limited purpose of renegotiating those provisions of the agreement related to the medical benefits discussed in Section 15 of the agreement to the extent necessary to eliminate the impact of any such excise tax on the Company.

## Section 16.     Retirement Plan

A.    Commencing with hours worked on and after the dates hereinafter set forth, the Employer shall pay upon the following basis:

| Date | Basic Contribution Rate | Peer Contribution Rate | Total Contribution Rate |
|---|---|---|---|
| 01/01/2022 | 3.99 | .26 | 4.25 |
| 01/01/2023 | 4.23 | .27 | 4.50 |
| 01/01/2024 | 4.46 | .29 | 4.75 |

The Employer shall provide the Program for Enhanced Early Retirement (PEER) to the Bargaining Unit Employees.  Total contribution to the WCTPTF shall be (Basic Rate + PEER Rate).

The contributions required to provide the Program for Enhanced Early Retirement will not be taken into consideration for benefit accrual purposes under the Plan.  The additional contribution for the PEER must all times be 6.5% of the basic contribution and cannot be decreased or discontinued at any time.

For the purposes of this Agreement, paid holidays and paid vacation time shall be counted as time worked but no payments shall be made on overtime hours.

No payments shall be made on vacation time paid in lieu of taking vacation, pursuant to Section 8G, unless the employee has not reached at least 2,080 hours by the end of the calendar year. Accordingly, at the end of each calendar year, the Employer will report pension contributions on all vacation hours including those paid in lieu of taking vacation up to a maximum of 2,080 hours worked per calendar year.

B.    It is mutually understood that all of the Employer contributions as provided herein shall be deductible from gross income under Section 404 of the Internal Revenue Code.

C.    All applicable federal and state laws pertaining to Taft-Hartley Pension Trusts will be observed.

D.    For probationary employees (part-time regular employees and full-time regular employees serving a probationary period), the Employer will pay an hourly contribution rate of ten cents ($0.10, including $0.01 for PEER/84) during the probationary period as specified in Section 17 (first sixty (66) days actually worked); but in no case for a period longer than ninety (90) calendar days from an employee's first day of hire. Contributions shall be made on the same basis as set forth in Section 16 of the Agreement. After the expiration of the probationary period as specified in Section 17; but in no event longer than ninety (90) calendar days from an employee's first date of hire, the contribution shall be increased to the full contractual rate.

## <u>Section 17.</u>        <u>Seniority</u>

A.    Location seniority shall be defined as an employee's most recent period of unbroken service at the plant or location of the Employer at which he/she is working.

B.    Department seniority is defined as an employee's most recent period of unbroken service at the location in the department in which he/she is presently working.

C.    Classification seniority is defined as an employee's most recent period of unbroken service in the classification in which he/she is working.

D.    If an employee's starting time is permanently changed by more than four (4) hours for fifty percent (50%) or more of the workweek, he/she may displace an employee with the least departmental seniority in his/her classification whose work he/she is able to perform.  The employee so displaced may exercise the same shift preference right.

1.    In the event the employee's start time moves them into a different shift, the job will be rebid and the employee may exercise their bumping rights per Section F. Shift times are defined as: Day shift 4:00 am – 12:00 noon, Swing shift 12:00 noon – 8:00 pm and Night shift 8:00 pm – 4:00 am.

2.    In the event the employee's wage (bracket) changes, the job will be re-bid and the employee may exercise their bumping rights per Section F.

3.    If it is determined by LFC, the affected employee and the Union that the skills and responsibilities required of the position have changed substantially (fifty percent (50%) or more), the position will be re-bid and the employee may exercise their bumping rights per Section F.

4.    Employees exercising their seniority rights per Section F shall have their bid rights restored with the exception of a bump pertaining to Section I - Temporary Work Stoppage.

E.    In the event of a reduction in force, the following procedures shall be applied, provided the employees in the department having seniority are capable of performing the remaining jobs. Bid-holders on-call whom are displaced due to a job elimination or temporary Meiji work stoppage, would be trained on job(s) requiring five (5) days or less of training, based on the needs of the business, in accordance with Section 6.I.

1.    When one of several jobs in the same classification on the same shift is to be eliminated, the employee in the classification on that shift who has the least location seniority shall be the employee whose job is to be eliminated.

2.    The employee whose job is to be eliminated shall have the option of exercising their seniority rights as outlined below or can elect to go to the on-call list.

3.    To implement F below, "walk-on capability" means that an employee previously and successfully held the job pursuant to a bid, assignment by the Employer, or by exercising seniority rights.  The employee must demonstrate a present ability to perform the job adequately after a full shift refresher training. An employee who fails to demonstrate such a present ability in the judgment of the Employer, subject to the grievance procedure, shall be placed on-call.

4.    In determining wage brackets, relief differentials shall be disregarded.

F.    The employee whose job is to be eliminated shall have the following seniority rights which shall be exercised in the order listed. During the bumping process, if an employee is notified that a bump will occur that may affect them, they are to be present at the date and time specified by the company or be immediately available at a phone number they have provided when notified of the potential bump. If they are not immediately available at the time of bump, a Union Business Agent or Secretary/Treasurer will speak on their behalf.

Walk-on capability applies to 1-5. Employees exercising their bump option will displace the employee with the least location seniority in the following order.

Area is defined as working area (Production Dept has four areas: Cheese, Processing Whey and Warehouse.  Lab Dept has two areas: Main and Melt.  Maintenance has three areas: Mechanics, Parts and Utilities. Clerical is one area.)

If a vacation relief or day off relief employee's job is eliminated, he or she may select which shift among those to which he or she is assigned to exercise his or her bumping rights.

1.    Least Location Seniority:
      a.    Same shift, same department (walk-on capabilities)

2.    Least Location Seniority:
      a.    Any shift, same department (walk-on capabilities)

15

3.     Least Location Seniority:
   a.     At location, he/she shall be given a break-in period of 10 working days to assist the employer in determining his/her capabilities. The 10 working days may be extended up to an additional 10 days upon mutual agreement between the Company and the Union.

4.     Bid-Holder on-call

5.     May return to original bid within 12 month reactivation.

G     Any employee displaced by the operation of this Section shall himself exercise his/her seniority rights in the manner set forth above.

H.     The parties acknowledge the unique nature of the Meiji/P2 operations. For purposes of these operations only, Meiji/P2 will be considered to have had a temporary work stoppage if it is inactive for up to twelve (12) consecutive work weeks. If the operation is inactive for more than twelve (12) consecutive work weeks, the job will be considered eliminated. If there is a temporary work stoppage, the following will apply to Meiji/P2 bidholders and Meiji support personnel:

1.     Receive no less than Bracket 2 for all hours worked.

2.     Must return to Meiji/P2 once the operation reactivates.

3.     Bid rights will be restored only 12 months from the original bid, or when the job is eliminated.

4.     Will go, in seniority order, to the bid-holders on-call list and will be assigned work the employee is qualified to perform and/or would be trained on job(s) requiring five (5) days or less of training, based on the needs of the business, in accordance with Section 6.I. Bid-holders have preference over non-bidholders on the on-call list.

If the Meiji/P2 operation is eliminated, i.e., inactive for more than twelve (12) consecutive work weeks, the Meiji/P2 bidholders and Meiji support personnel may exercise seniority rights under Section 17F and bidding rights will be immediately restored.

I.     Temporary Work Stoppage.  With the exception of Meiji/P2 bidholders and Meiji support personnel, any bid job that is not scheduled for any one-week period is defined as a temporary work stoppage and is not considered a job elimination. Affected employees may exercise their seniority rights in Section F above, or they may go to the on-call list as a bidholder.  Job bidding rights are not reinstated during this temporary work stoppage.  If job is eliminated, employees may exercise their seniority rights in Section F above and their bidding rights are restored.

J.     Seniority shall be broken if any employee quits, is discharged or is laid off for more than one (1) year or if any employee has failed to report back for work within three (3) calendar days after being notified to do so, provided that a written notice by registered or certified mail was sent to said employee at his/her last address on file with the Employer.

K.     An employee shall not acquire seniority during his/her first sixty-six (66) days actually worked; provided, that if an employee is employed more than sixty-six (66) days actually worked, his/her seniority shall commence with his/her date of hire.  Employees who are assigned to a workweek consisting of four (4) ten (10) hour days shall acquire seniority after fifty-three (53) days actually worked.

L.      Seniority lists shall be submitted to the Union on request, but not more often than once every six (6) months.  Any question concerning the application of seniority under this Section may be reviewed as provided in Section 33 of this Agreement.

M.      When an Employer calls employees back to work after a layoff, said employees shall be called to work in order of seniority, provided the employee can perform the available work.

N.      For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Lab employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

O.      For purposes of this Section, area is defined as working area (Production Dept has four areas: Cheese, Processing Whey and Warehouse.  Lab Dept has two areas: Main and Melt.  Maintenance has three areas: Mechanics, Parts and Utilities. Clerical is one area.)

<u>**Section 18.**</u>        <u>**Job Bidding**</u>

A.      Promotions to the job classifications of working Foreperson shall be made in the order of seniority if the employee having seniority is qualified to perform the job. The filling of vacancies in said job classification is excluded from the job bidding procedures as set forth herein.  However, when such vacancies occur, employees shall be advised by posted notice.  Any employee may express interest in this vacancy by submitting a written letter stating their desire and qualifications for consideration.  The Employer shall interview all interested employees that have submitted letters of interest and select the most senior employee that the Employer considers to be qualified. Forepersons who bid into another job and are either disqualified or decline that job bid, within the 10-day training period, will be allowed to return to their Foreperson appointed position.

B.      If an employee becomes disabled per the Americans with Disabilities Act, the employer will reasonably accommodate such qualified employee as required by applicable state and federal laws, subject to the provisions of this Agreement. The Employer will consult with the Union in formulating reasonable accommodations, but retains the right to make the final determination.

C.      Temporary positions of ninety (90) days or less may be filled without reference to the provisions of this Section.  This period may be extended by agreement of the Employer and the Union.

D.      Any vacancy or job opening resulting from the reactivation of a job that was eliminated in the previous twelve (12) months shall not be subject to the bidding procedure, if the employee previously performing said job is eligible for recall to active employment, has not exercised bid rights, is currently in the employment of the Employer, and chooses to return to said job.

E.      Except as specified above, whenever vacancies occur in any job classification covered by this Agreement, said vacancies shall be filled in accordance with the procedures herein set forth:

        1.      All such vacancies shall be conspicuously posted for bidding at mutually suitable locations designated for this purpose within twenty-one (21) days after the vacancy occurs.  They shall be posted on a form which shall give the job titles or the principal job titles in the case of a combination job, requirements, hours, days off, location and wage rate of the job. If there are any changes from the previous job

17

bid or duties of that job bid, it is agreed that Union and Employer will review bid prior to posting. Copies of jobs bids and awards will be provided to the Union.

Disputes regarding requirements shall be resolved pursuant to Section 33.  The vacancies shall be posted for a period of one hundred twenty (120) hours, and the bid form shall remain posted for seventy-two (72) hours after the end of the posting period.  The Employer shall retain completed bid forms for a period of two (2) years. During this period the forms shall be available for inspection and copying by Union representative.

2. The job vacancy will be filled within sixty (60) days after the job has been awarded. In the event that the Employer is unable to fill the job within this period, the circumstances will be reviewed with the Union and the time limit for filling the vacancy may be extended by mutual agreement. If the employee is not put on the job within 60 days, unless mutually agreed to extend due to no fault of the employer, employees' bid rights will be restored. Employee must go to the new job unless he exercises his restored bid rights to go to another job.

a. Once an employee is awarded a new bid job, the employee will be moved immediately, if possible, for a period of no more than ten (10) days (or longer if mutually agreed to by Local 517 and LFC) to satisfy the terms of Section 18.E.7 of the CBA. The initial ten (10) day period will be uninterrupted. After this period, a mutual decision is made to determine: (1) If the employee qualifies for the position, and/or (2) If the employee accepts the new job bid or chooses to return to his/her former job bid.  If the employee qualifies and accepts the new bid, the process then begins of back filling and training to replace the employee.  The employee may be placed back in their original job bid at the new rate of pay (or same pay if the new bracket is less).

If the employee fails to qualify or chooses to return to their former job bid, the employee loses bid rights per contract and the next senior qualified eligible bidder  is now awarded the bid job  as of that date and goes through the same process. If an employee elects to decline the awarded job bid, they shall do so in writing on a form provided by the Employer, prior to the end of their 10-day (or extended) training period.

If an on-call employee is disqualified after being placed on a bidded position, he/she will go back to the on-call list. The on-call employee will be terminated after being disqualified a second time.

b. If an employee is on a LOA at the time they are awarded a job bid, they will have two options:
Option 1:     If they accept the job bid within 30 days from the date of the award, that is their job and the bid process continues. Upon their return, they begin their 10-day training. If disqualified, they will go to the on-call list. The employee loses bid rights per contract.

Option 2:     If the employee declines Option 1, they have up to 60 days from the date of the initial bid award to be fully released to perform the essential functions of the job and commence their 10-day training. If disqualified, they return to their previous job. If the employee is not released within the 60 - day period to commence their 10-day training, they are

disqualified from the awarded job and keep their previous job bid. The employee loses bid rights per contract and the next senior qualified eligible bidder is awarded the job bid.

If any employee elects to decline an awarded job bid, they shall do so in writing on a form provided by the Employer, prior to the end of their 10-day (or extended) training period.

c.     If the employee has not started the 10-day training period within 45 days of being awarded the bid, and the awarded employee turns the job bid down, the next senior eligible bidder will be given the opportunity to accept or decline the job bid. If the second employee declines, they will not lose bid rights. This process will continue, in seniority order, until the first senior eligible person accepts the job bid. If everyone declines, the job bid will be re-posted.

3.     For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Laboratory employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

4.     The Employer shall give consideration to any bid made by any employee who has been employed a minimum of 90 calendar days; however; the employer shall not give consideration to any bid made by an employee who has successfully bid on a job within the preceding twelve (12) month period, unless such employee's days off are changed or his/her starting time or length of shift is changed by more than two (2) hours on two (2) or more days per week or an employee has met the ninety (90) days Class A requirement but failed to qualify.

5.     Only bids submitted within the one hundred twenty (120) hour period during which the vacancy was posted shall be considered by the Employer.

6.     The job vacated by the employee successfully bidding on a posted vacancy shall be posted and filled in accordance with the provisions of the Section (Bid #2); the job vacancy thereby resulting shall be posted and filled in accordance with the provisions of the Section (Bid #3). The 4th bid will be posted and awarded to the senior on-call person who has signed the bid and has bidding rights. If no on-call employee with bid rights signs the #4 bid, the senior employee on the on-call list in that department will be assigned the position. They will retain bidding rights, but they must qualify for the position as per Section 18.E.7 of this Agreement. If they fail to qualify, they will lose seniority rights and their employment will be terminated. Foreperson position openings that result from this bid process will be counted in this 4th bid give-away procedure.

In the event a fourth bid job is an A shift, a vacation relief or any bid job with "Saturday-Sunday" scheduled days off position, the bid will be awarded pursuant to Section 18 guidelines of qualifications, eligibility and seniority. The resulting vacancy created by this fourth bid A shift, vacation relief or weekend off position will then be awarded by the employer per the 4th bid procedure above.

Shift A is defined as any job starting between the hours of 4:00 a.m. and 12:00 p.m.

On a first, second or third job bid where there are no eligible bidders, it will be assigned in the same manner as the #4 bid.

All jobs will be awarded, including the fourth bid in succession, and will be subject to the twelve-month lockout.

7.  The bidder having location seniority shall be awarded any job required to be submitted to bid pursuant to the provisions of this Section, provided the bidder is capable of performing the job. If a successful bidder fails to qualify during his/her first ten (10) working days on said job, he/she shall be restored to his/her former job and the bid job shall be awarded to the next senior bidder on the original posting, provided he/she is capable of performing the job. During the period the successful bidder is qualifying, his/her former job may be temporarily filled without regard to the bidding procedure. A bidder who is awarded a job and fails to qualify shall be considered a successful bidder. The ten (10) working days may be extended up to an additional ten (10) days upon mutual agreement between the Company and the Union.

8.  Whenever no bids are submitted for a job opening or whenever no employee submitting a bid is capable of performing the job (for example, maintenance, lab, clerical), and all provisions of Section 18.E.6 have been met, the Employer may select an employee to fill such job without regard to the provisions of this Section.

9.  Positions which are filled shall not be rebid unless the skills or responsibilities required of the position change substantially. LFC and Union will meet and review to determine if there has been a substantial change, when necessary.

F.  1.  Vacation Relief bids, that are limited to those bid positions covering multiple shifts that may have varying or rotating days off, will have the option of locking in their bid for an initial three-year period (and subsequent one-year periods) and receive a premium as described below. The premium will only be applicable to those Vacation Relief employees who do lock in their bid. Present Vacation Relief bid holders may, at their option, lock in their present bid for an additional three years, thus becoming eligible for the premium. At any time a Vacation Relief employee who previously elected not to lock in his/her bid wishes to do so, he/she will immediately become eligible for the premium; provided he/she locks in for an initial three-year period. Once the initial three-year lock-in period requirement has been satisfied, subsequent lock-in periods will be one year increments provided the individual has not left the previously locked-in bid position. In the event a Vacation Relief employee leaves their position and subsequently returns to a Vacation Relief position and elects to lock in, they would then start over with the initial three-year lock-in period.

2.  A lock-in premium of $.25 per hour will be paid for all hours worked, including vacation and holiday hours, for the first year. Beginning the second year of lock-in, he/she will be paid $.50 premium for those hours worked, including vacation and holiday hours, For the third year hours and all succeeding years he/she will be paid a lock-in premium of $.75 for all hours worked, including vacation and holiday hours. Further, the amount of the lock-in premium will be determined by considering the number of continuous years in the current Vacation Relief position.

G.  For Maintenance Mechanic positions only, when such vacancy occurs, employees shall be advised by posted job bid. Internal maintenance qualification test can be taken only once every 12 months.

**Section 19.**          **Visits to Plants**

Visits by Union Representatives.  An authorized representative of the Union shall have access to the Company's plant at reasonable times, provided such representative:

A.      Informs management of his/her visit upon arrival;

B.      Confines his/her activities to collecting dues, observing the application of this Agreement, and adjusting grievances; and

C.      Carries out his/her activities without unreasonable disruption of work schedules or unnecessary loss of employee's time.

**Section 20.**          **Bulletin Board**

Notice of Posting and Distribution.  The Union shall be provided with a bulletin board at each time clock; notices posted shall be restricted to:

A.      Union recreational and social activities;

B.      Union elections and results, appointments of Union representatives;

C.      Union meetings; and

D.      Other subject matter mutually agreed upon by the Union and the Company.

Prior to posting or distributing a notice, a copy shall be submitted to the plant manager.

**Section 21.**          **Wage Reductions**

No employee shall suffer reduction in wages or loss of working conditions through adoption of this Agreement.

**Section 22.**          **Meal Periods**

A.      Each employee shall be granted meal time off not sooner than two and one-half (2½) hours and not more than five (5) hours after the beginning of his/her shift.  Meal periods are unpaid.

B.      Employees may waive their meal period if they work a shift that is not longer than 6 hours.  Otherwise, all work performed after five (5) consecutive hours without receipt of meal time off shall be compensated with penalty pay equal to the greater of (i) one hour of regular rate of pay or (ii) half time in addition to the scheduled rate of pay up until the time the employee takes his/her meal period.   Whenever possible, employees must notify their supervisor or a supervisor in advance any time they are unable to take their meal period prior to 5 hours after the beginning of his/her shift.

C.      Where the nature of the work prevents an employee from taking an off-duty meal period, the Employer may schedule a shift of eight (8) continuous hours by written mutual agreement with the Union and the affected employee.  In that situation, the meal period shall be considered an on-duty meal period which shall be paid time.

D.      No employees of Leprino Foods, Lemoore East plant work paid lunches unless job bids so state, and/or mutual agreement between the Company, the Union and the affected employee.  The Company and the Union agree that all employees are provided with and

are expected to take a 30-minute off-duty meal period for every 5 hours worked.  Employees in the following positions have historically chosen to work through meal breaks: Processing Sanitation, Cheese Sanitation, Forepersons, Whey Department and 3rd Shift Warehouse.  If these employees choose to work through their meal periods, they will be paid for the time worked, but will not receive penalty pay.  At no time will any employee be required to work through a meal period.  No employee is permitted to work through his or her second meal period if he or she works more than 10 hours and did not take a first meal period.  Employees in other positions that have not historically chosen to work through meal breaks will not generally be permitted to choose to work through a meal period.

**Section 23.**        **List of Employees**

Periodically or upon request, but not more often than once every three (3) months, the Employer shall furnish the Union with a complete list of employees, the classification of each and pay of each.

**Section 24.**        **Union Relations**

A.     Right of the Parties.  The Company retains all rights, except as those rights are limited by the subsequent Sections of the Agreement and in the Supplemental Agreements, which are part of this Agreement.  Nothing in this Agreement shall be construed to impair the right of the Company to conduct all its business in all particulars except as modified by subsequent Sections of this Agreement.

   1.     The Union has all rights, which are specified in the subsequent Sections of this Agreement and the Supplemental Agreement which are part of this Agreement, and retains all rights granted by law except as such rights are limited by provisions of this Agreement.

   2.     It shall not be a violation of this Agreement, and it shall not be a cause for discharge or disciplinary action if an employee refuses to cross a primary lawful picket line established at the Lemoore plant which has been sanctioned by the appropriate Joint Council.

B.     Strikes and Lockouts.  During the life of this Agreement, there shall be no lockout and there shall be no strikes of any kind (including sympathy strikes, unfair labor practices strikes, politically motivated strikes, work stoppages and slowdown) picketing boycotts, deliberate withholding of production, interference with or suspension of work, regardless of whether the conduct is in protest of the actions of a party or non-party to this Agreement and regardless of whether the matter or actions precipitating the conduct are resolvable under the grievance process.

   1.     The Company shall not lockout the employees and the Union shall not authorize, call, encourage, or assist the conduct prohibited above.  Further the Union shall exert its best effort to bring about the immediate termination of any such conduct.

C.     The parties recognized the right of the Company to take disciplinary action, including discharge, against any employees who participate in violation of this Section, whether such action is taken against all or only some of the participants provided that the Company articulate a business reason.

22

**Section 25.**      **Work in Two or More Classifications**

All employees whose work regularly falls in more than one (1) bracket shall be paid a rate mutually agreed upon between the Employer and the Union.

**Section 26.**      **Protective Clothing**

A.      The Employer will provide parkas, protective headgear, gloves and foot gear necessary to perform work in a sharp room.  A sharp room is defined as a room in which temperature is normally kept at less than 32 degrees Fahrenheit.

B.      The Employer will provide to each eligible plant employee appropriate footwear under the following conditions:

1.      The manufacturer, supplier and style of footwear is to be determined by the Employer.

2.      No employee is to appear on the job without such footwear where so required by the Employer.

3.      No employee shall wear the footwear supplied by the Employer except on the job.

4.      Where rubber boots are required, the Company shall be notified no less than seven (7) days in advance of the time new boots are required.

5.      The Company will provide approved rubber boots at no cost to the employee. The Company will pay up to the following amounts for Company approved non-rubber boot footwear as needed:
   A.      Maintenance and Warehouse: $125.00
   B.      All other departments: $100.00

6.      The Company will issue boots of proper size.

**Section 27.**      **Break-In Period**

All new employees hired may be employed at a rate of pay 30% less than the classification rate for the first six months; at a rate of 25% less than the classification rate for the second six months; and at a rate of 20% less than the classification rate for the third six months.

100% of classification for work performed beginning, with the first pay period following eighteen (18) months of employment.

In the event a new employee under the break-in rate is awarded a bid job, upon the successful completion of the bid qualification, will move to full pay for the bid job awarded. In the event the employee loses this bid job by no fault of their own, he/she shall be deemed to have completed the break-in period.

**Section 28.**      **Pay Days**

All employees covered by this Agreement shall be paid in full on a bi-weekly basis.

**Section 29.**          **Remittance Advice**

It shall be possible to determine from the stub accompanying an employee's paycheck the following items: regular hourly earnings, overtime earnings, social security deduction, disability insurance deduction, withholding tax and any other deduction authorized by the employee.

**Section 30.**          **Management Trainees and Interns**

Employer and Union mutually agree that the Employer may employ Management trainees and interns to learn the operations of the business. In so doing, the trainees and interns will not displace or deny work opportunities to any bargaining unit employees.

Management trainee is defined as an exempt level employee training for a supervisory position and an intern is defined as a college student conducting project-based studies during a specific period of time.

The Union shall be informed of all trainees and interns in the facility and will meet with the Company to discuss if any issues/concerns arise.

**Section 31.**          **Sick Leave**

Every employee covered by this Agreement shall be entitled to sick and accident leave benefits under the following conditions:

A.    1.    Benefits shall be earned at the rate of four (4) hours per month up to a maximum of forty-eight (48) hours in any contract year. Benefits can be accumulated to a maximum of four hundred (400) hours.

2.    An employee who has accrued over 400 hours sick leave as of November 30, will receive a bonus equivalent 100% of the employee's hourly rate for each hour over 400 hours accrued.

3.    Any employee retiring during the year will be paid at prorated amount under Section A. 1. or 2. above.

4.    At retirement, employees with earned sick leave balances will be paid out as follows:

a.    Employees with balances of forty (40) to one hundred twenty (120) hours will be paid at 50%.

b.    Employees with balances greater than one hundred twenty (120) hours will be paid at 100%.

B.    Employees shall start earning sick leave benefits as follows:

1.    A newly hired employee who has not worked under this Agreement during the previous twelve (12) months is not eligible to earn sick leave benefits until ninety (90) days after the commencement of his/her employment and having worked eighty (80) hours in the previous month.

2.    An employee who returns to employment within twelve (12) months will start earning sick leave benefits the first day of the month following employment and having worked eighty (80) hours in the previous month.

3.      An employee who returns to employment after twelve (12) months is not eligible to earn sick leave benefits until ninety (90) days after the commencement of his/her employment and having worked eighty (80) hours in the previous month.

C.      Sick benefits shall be payable for their scheduled hours of the day in two-hour increments from the first day of absence due to illness.

D.      Sick benefit payments, including disability insurance or worker's compensation payments, for any week, shall not exceed an employee's normal straight-time weekly earnings, including shift differential, if any.

E.      Sick benefits are payable only for any employee's regularly scheduled work days on which he/she is off sick.

F.      The Employer will require a doctor's certificate or other satisfactory proof of illness, accident or return to work, when the absence is more than three days.  Other than in connection with FMLA, or similar laws, the employer will not require a doctor's certificate for absences of three days or less.

G.      Sick leave benefits shall accrue only for employees who work eighty (80) hours or more in a calendar month.

H.      Any employee found to have willfully abused the sick leave provisions shall be subject to immediate dismissal.

I.      Benefits shall not be payable for any period more than twenty-one (21) days prior to the filing of a claim as hereinafter prescribed.  Benefits shall be paid within thirty (30) days after the filing of a valid claim.  If an Employer has to pay a valid claim within the time set forth in this Section, liquidated damages shall be added to the valid claim in an amount equal to ten percent (10%) thereof, provided that if the request is made for submission of the validity of the claim to an Arbitration Board or Arbitrator pursuant to Section 33, the time between making the request and final determination of validity shall not count as part of the thirty (30) day period.

1.      Claims shall be filed in writing with a designated management representative at the employee's place of employment.  The employee shall receive for his/her use a copy of the claim form filed;

2.      For purpose of this Section, a claim shall be deemed valid unless a request is made for an Arbitration Board within thirty (30) days of the filing of the claim.

J.      If an employee is absent on account of sick leave more than five (5) working days, he/she shall notify the Employer no later than the close of his/her regular shift next preceding the day on which he/she will be able to return to work, before the Employer shall be obligated to restore him to the job.

K.      A record of the sick leave benefits accumulated by an employee shall be furnished to the Union by the Employer upon receipt of written request therefore.

L.      Absence Notification.  The employee shall notify the Employer, in a manner prescribed by the Employer, of the employee's expected absence no later than ninety (90) minutes prior to commencement of his/her required start of shift.  Failure to comply with the notice requirement of the preceding sentence shall subject the employee to disciplinary action.

25

M.    When an employee is on the bid holder's on-call list or the on-call list and is called in for unscheduled work and the employee declines the work the employee will not be paid sick leave. The employee is declining work and not entitled to sick pay.

Unscheduled is defined as work that is to be performed in the same day the employee is called.

## Section 32.          Leave of Absence

Leaves of absence shall be granted only upon written approval of the Employer and the Union. A copy of the written approval shall be furnished to the Union and to the employee.

## Section 33.          Arbitration

A.    It is the desire of the parties to this Agreement that all disputes arising out of the Agreement shall be settled amicably.  For this purpose, it is hereby agreed that the procedure set forth below shall be followed to facilitate such settlement.

B.    A concern raised by the Union shall be presented in the following manner:

1.    Step One.  The employee (with or without a Steward) will meet with his/her Supervisor or Department Manager to discuss their concern and will do so within ten (10) days of the time the concern first came to the attention of the employee or should have, in the exercise or reasonable diligence, come to the attention of the employee.

2.    Step Two.  If Step One has been timely invoked and the concern has not been resolved within five (5) days after receipt of Supervisors or Managers response, the employee and the Union (Business Agent) will notify the Plant Manager or his designee of an unresolved concern and schedule a meeting to attempt to resolve the matter within 15 days of such notice.

3.    Step Three.  If Step Two has been timely invoked and the concern is not resolved within five (5) days after it was presented to the Plant Manager, the Union must file a formal grievance in writing to the Plant Manager and Plant Human Resources Manager within 15 days.

The formal written grievance shall set forth the following information as a minimum:
a.    The name and location of the Employee involved;
b.    The substance of the grievance including the date when it occurred;
c.    The sections of the contract which the grievant claims have been violated;
d.    The relief sought by the grievant; and
e.    The date of the first discussion with a local management representative and the name of that representative.

The Employer will respond to the written grievance in writing within 15 days of receipt of such written grievance.

4.    Step Four.  If Step Three has been timely invoked and the grievance is not resolved within five (5) days of union receipt of written response, either party may request that it be submitted to an Arbitration Board consisting of two (2) representatives each appointed by the Union and the Employer.  Such a request must be made within 15 days. No Board member shall be an employee of Leprino Foods or member of Local 517, unless mutually agreed upon. The Arbitration Board shall meet not more than 30 days after the written request has been made.

5.      Step Five.  A majority vote of these Board members hearing a grievance shall be necessary before the Board's decision is final and binding upon the parties.

If the Board cannot reach a final and binding decision upon the matter submitted within five (5) days after the close of hearing, the parties shall be so notified.

Within ten (10) days after receipt of notice from the Arbitration Board of its failure to reach a decision, either party may demand that the grievance be submitted to a single impartial arbitrator to be selected by the parties.  If neither party files such a demand, the grievance shall stand as dismissed by the Arbitration Board.

When arbitration is demanded, the parties shall have ten (10) days after the demand within which to select an arbitrator to process the dispute to final and binding resolution. If the Union and Employer cannot agree on the selection of an arbitrator, then the parties shall request that the Federal Mediation and Conciliation Service (FMCS) nominate a panel of seven (7) arbitrators. The Union and the Employer shall alternately strike one (1) name until only one (1) name remains on the list; the remaining name shall be the person designated as the arbitrator. The party to strike first shall be decided by coin toss.  If the arbitrator selected is not willing or able to hear the matter for any reason, then the Union and the Employer shall request a new list of seven (7) arbitrators from the FMCS and follow the selection process set forth in this paragraph until an available arbitrator is selected. If both the Union and the Employer agree that none of the arbitrators supplied by the FMCS on any panel of seven (7) is satisfactory, then a new panel may be requested from the FMCS.

C.      If the parties are unable to agree upon a single impartial arbitrator to hear the dispute within the ten (10) days after the submission demand has been made, pursuant to subsection (b), either party may seek to have the Superior Court of the State of California in and for the County in which the Union party has its principal office designate such an arbitrator pursuant to the provisions of the Code of Civil Procedure Section 1281.6.

D.      The decision of the arbitrator shall be final and binding.  Pending final settlement of a dispute in accordance with the provisions of this Section, there shall be no cessation of, or interference with work whether by strike, lockout, intentional slowdown or otherwise.

E.      Service and filing of any document described in this Section may be personal, by delivery to the party to be served or his/her attorney, or may be by mail upon the party to be served in accordance with the provisions of the Code of Civil Procedure Section 1011-1013.

F.      In computing any time period prescribed by this Section, the date of the act, event or default after which the designated time period begins to run is not to be included, unless it is a Sunday or a legal holiday.

Intermediate Saturdays, Sundays and holidays shall be included.

G.      By agreement of the parties, time limits provided by this Section may be extended and compliance with any procedural step may be waived.  The Employer shall not unreasonably withhold its agreement to extend the time limits set forth above, provided further the request to extend the time limit is made before the time limit has expired.

H.      Expenses of an arbitrator shall be borne equally by the parties.

I.      Neither the Arbitration Board nor an arbitrator shall have the authority to amend, modify or alter the Agreement.

**Section 34.**       **Jury Duty**

A.     The Employer shall reimburse an employee for any loss of wages caused by such employee performing jury duty for a maximum of ten (10) working days during a calendar year.

B.     On any day on which an employee is called for jury duty, he/she shall not be required to report for work on any shift starting prior to the time he/she is due to report for said jury duty.

C.     If documented jury duty, plus travel time (30 min) is less than or equal to four (4) hours, the employee will report to supervisor for remaining work hours up to eight (8) at normal wage rate, or has option to decline work and be paid for time served on jury duty only. If employee serves over four (4) hours, he/she is not required to return to work and will be paid eight (8) hours. This language would also apply to any swing shift employee selected to serve on the jury.

D.     An employee's starting time shall not be changed on any day for which he/she is called for jury duty. Days off cannot be changed solely because an employee is called for jury duty.

E.     No employee shall be required to work a scheduled shift starting after 7 p.m. (5 p.m. for employees working a ten (10) hour shift) on the day before a day on which he/she is required to report for jury duty.

F.     Mandatory Grand Jury service (not voluntary) will be reimbursed in accordance to this Section.

G.     In the event jury duty assignment goes beyond the 10 day period as indicated above in Subsection A, the employer and employee may work together to develop a modified work schedule.

**Section 35.**       **Performance of Work Covered by This Agreement**

A.     The Employer agrees that its employees, who are not covered by this Agreement, shall perform no work covered by the Agreement, except:

    1.     In case of emergencies; or

    2.     In training or instructing another employee.

B.     If a grievance is filed within thirty (30) days, the parties, the Arbitration Board or the Arbitrator as the case may be, shall assess liquidated damages in an amount not to exceed two hundred fifty dollars ($250.00) against the Employer for violation of this Section. Damages so assessed shall be paid over to a charity designated by the parties.

C.     No working Foreperson shall effectively hire or fire or issue written warnings to any employee.

**Section 36.**       **Transfer of Company Title or Interests**

A.     This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation or portion thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment or receivership or

bankruptcy proceeding (unless otherwise provided by law) such operation shall continue to be subject to the conditions of this Agreement for the remainder of its then existing term.

B.      In the event the Employer fails to require the purchaser, the transferee or lessee to sign this contract or to otherwise assume the obligations of this contract, the Employer shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure.  When the purchaser, transferee or lessee signs this Agreement or otherwise assumes its obligations, the Employer shall be under no further liability to the Union or to employees by reason of this Section.

C.      The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee or assignee of the operation covered by this Agreement or a part thereof. Such notice shall be in writing with a copy to the Union no later than the effective date of the sale, transfer, lease or assignment.

## Section 37.            Severance Pay

Whenever an employee is terminated, he/she shall receive severance pay benefits pursuant to the provisions set forth below:

A.      Upon completion of five (5) years of unbroken service, an employee shall be eligible for a severance benefit equal to twenty (20) hours of pay at the employee's regular straight time rate.  The night work pay set forth in Section 9 shall be included in the employee's straight time rate to the same degree it is included in the calculation of vacation allowance under Section 8.

B.      The employee shall be eligible for an additional twenty (20) hours severance pay benefit for each additional year of severance through the fifteenth (15th) year.

C.      For each year of unbroken service in excess of fifteen (15), the employee shall be eligible for an additional forty (40) hours severance benefit; provided, that in no event shall the total severance benefit to which an employee shall become entitled to exceed four hundred (400) hours.   The yearly severance benefit due an employee shall be proportionately applied to any period of service between the employee's most recent anniversary of hire and the date of his/her termination.

D.      No severance benefit shall be due under this Section to an employee under any of the following conditions:

1.      The employee quits or is discharged for cause.

2.      The employee is currently eligible to receive retirement benefits under the Social Security Act and under the Western Conference of Teamsters Pension Plan.

3.      Prior to his/her termination, the employee is offered regular full time employment within the jurisdiction of the Local Union.  If the employee rejects the employment offer, he/she is not entitled to severance pay.  If he/she accepts the offer and is subsequently terminated for just cause, he/she shall receive severance pay based upon his/her company seniority.

4.      Prior to his/her termination, the employee is offered and accepts full time employment, at a location of the Employer, outside the jurisdiction of the Local Union.  If he/she is subsequently terminated, unless he/she quits or is discharged for just cause, he/she shall receive severance pay based upon his/her company

seniority.  However, if he/she rejects the above employment offer, severance pay shall be paid.

5.     If an employee is on layoff at the time of the closing, and his/her seniority has not been broken, he/she shall not be eligible for a severance benefit if he/she has regular full time employment elsewhere.

6.     At the time an employee is laid off, he/she shall have the option to receive the severance pay, if any, to which he/she is then entitled, or to retain his/her recall rights for a period of twelve (12) months.  If he/she elects to retain his/her recall rights, and he/she is not recalled within twelve (12) months of his/her layoff, he/she shall thereupon be entitled to his/her severance pay; provided that if the plant closes and one of the conditions described in Paragraph (D) (3), (4), or (5) above applies, he/she shall not be entitled to severance pay.

E.     The seniority of an employee shall be broken upon his/her receipt of a severance benefit.

F.     Severance benefits shall be paid to the employee no later than his/her final paycheck.

G.     The severance benefits provided by this Section shall be exclusive of all other benefits under this Agreement.

H.     This Section shall not apply if the work at the closed plant or location is transferred to another plant or location covered by this Agreement.

I.     Upon the completion of five (5) years unbroken service to the Employer, an employee shall be eligible for a severance benefit payable at the end of twelve (12) months, or his/her termination or layoff, in the event said employee cannot find employment with any of the signatories to either the Fluid or Manufacturing Milk Agreements under Local Unions 137, 386, 517 jurisdiction.  In the event said employee is offered regular full time employment by the aforementioned Employers within the twelve (12) month period, he/she shall lose any right to severance pay.

## Section 38.          Transfer of Personnel

A.     Whenever, within the geographic area covered by this Agreement, a new operation is opened, except as a replacement for existing operations within the geographic area covered by the Agreement, the Employer shall offer, pursuant to the provisions of Section 17, the opportunity to transfer to regular positions in the new operation to employees in those operations within the geographic area covered by this Agreement affected in whole or in part by the opening.

B.     Whenever the new operation is opened as a replacement of an existing operation located within the geographical area covered by this Agreement, employees in the operation being replaced shall be offered, pursuant to the provisions of Section 17, employment in a regular full time position at the new operation.  If all regular full time positions are not filled by employees from the replaced operation, the remaining such positions shall be offered to employees at other operations located within the geographic area covered by this Agreement.

C.     Provided, however, that the limitation of Section 18 relating to one (1) job bid per year are not applicable to bids submitted under the conditions set forth herein.  Provided further, that the provisions of this Section shall be deemed applicable for a period of six (6) months subsequent to the commencement of operations at the new plant.  The departmental

seniority of employees at the new operation shall date from the commencement of his/her most recent period of unbroken service for the Employer in the same department.

D.    In the event regular full time jobs thereafter remain un-filled, the Employer may obtain employees without reference to the provisions of Section 18.

E.    The transferred employees shall, for a period of thirty (30) days following transfer, have an unqualified right to return to their former operation if it is still in existence and retain their seniority at their former operation. Employees who avail themselves of the transfer privilege, while they are on layoff at their original operation, may exercise their seniority rights if work becomes available at their original operation during the one (1) year layoff period allowed them at their original operation.

F.    When an operation is closed and the work of the operation is eliminated, an employee who was formerly employed at another operation shall have the right to transfer back to such former operation and exercise his/her seniority based on date of hire provided he/she has not been away from such original operation for more than one (1) year.

G.    When an operation is closed or partially closed and any of its work is transferred to another location, vacancies resulting from the transfer shall be filled in the following manner;

1.    If any employees are on layoff at the location to which the work is transferred, the recall provisions of Section 17 shall be applied first.

2.    An employee whose work is transferred shall first be offered his/her work in the same classification at the location to which it is transferred. This offer shall be made in the order of location seniority among the employees whose work is transferred.

3.    Any vacancy remaining in the transferred work shall be posted in accordance with the provisions of Section 18 for bidding by employees at the location to which the work is transferred.

4.    Any vacancies then remaining in transferred work shall be offered to employees in the department at the location where the work was performed, who have become unemployed by reason of the transfer. Such offer shall be made on the basis of their location seniority, provided the employees are capable of performing the work.

5.    Any vacancies still remaining in transferred work shall be filled by the Employer without regard to the provisions of Section 17 and 18.

6.    When work other than route work is transferred pursuant to this Section, all employees who transfer with such work within sixty (60) days of the date of transfer of the first such employee shall be deemed to have transferred on the same date as the first transferring employee, and their location seniority at the transfer location shall commence at that date. Among the employees who transfer their relative departmental and location seniority shall be based on their relative departmental and location seniority at the former location. When more than one (1) route is transferred to location within sixty (60) days, the same principle shall apply.

7.    Provided that if no regular work is available, the Employer during the period for which an employee's seniority remains unbroken, shall offer the employee employment in the same department at other operations within the area covered

31

by this Agreement on the basis of the employee's departmental seniority, provided that this paragraph shall be applicable only at operations at which no employees are on a layoff status.

8.    Except as provided in Paragraph H below, such employees shall go to the bottom of the seniority list and shall have the right of job selection and other contractual rights in accordance with the seniority at the new operation.

H.    Whenever an employee is transferred pursuant to the provisions of this Section, his/her length of vacation, his/her severance pay and his/her accumulated sick leave benefits shall be based upon his/her most recent period of unbroken service under the collective bargaining Agreement of the Employer.

I.    As used in this Section, the term operation shall include a plant, branch or division of the Employer.

## Section 39.    Dues Deduction

A.    The Employer shall deduct monthly dues of such amount as has become due from the wages of each employee who has filed with the Employer a written assignment of such monies to the Union having territorial jurisdiction in the area which the individual is employed.

The assignments shall be irrevocable for a period of one (1) year or until the termination of this Collective Bargaining Agreement, whichever occurs sooner.

B.    The assignment shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable Collective Bargaining Agreement, whichever shall be shorter, unless written notice is given by the employee to the Employer and to the Union not more than (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year or of each applicable Collective Bargaining Agreement.

C.    The appropriate deduction shall be made on the first day of each month and shall be forwarded to the designated Local Union forthwith.

## Section 40.    Bereavement Leave

A.    Upon providing proof of death, an employee who loses time on scheduled work days on account of the death of a member of his/her immediate family will be paid as a result of attending to pre-burial, burial, or post burial matters, as defined in B. below.

B.    For the purpose of this Section, a member of the employee's immediate family is defined as:

1.    Spouse, son, daughter, mother or father: five (5) days (paid time off not to exceed 40 hours)

2.    Brother, sister, grandparents, and grandparents of the spouse, great grandparents, and great grandparents of the spouse, step-grandparents and step-grandparents of the spouse, mother and father-in-law, grandchildren, step-mother, step-father, step-siblings and step-children: three (3) days.

3.    Brother-in-law and sister-in-law: one (1) day.

**Section 41**                    **Management Rights**

Outside of the terms and conditions clearly outlined in this Agreement, it is understood and agreed that all of the customary, historical and usual rights, functions, prerogative and authority of management are retained and remain solely exclusively within the rights of management.  These rights include, but are not limited to, the right to manage, operate and maintain the facilities, to select, hire and terminate employment, direct the work force, schedule work, determine what is to be produced and by what methods, determined the size of the work force, to relocate or remove any portion of the facilities (subject to the requirements of Section 38) and to abandon any operation it deems appropriate, to discipline, suspend and discharge employees for cause, to install any labor saving device or equipment and to replace, modify, discontinue or introduce new products. Any transfer of work that has been traditionally bargaining unit work will be handled in accordance with the other provisions of this contract.

Section 42.   Terms of Agreement

A.   This Agreement shall be in force and effect through December 31, 2024 and shall be considered as renewed from year to year on a calendar basis thereafter, unless either party shall give written notice to the other party to termination of renegotiation as provided in Paragraph (B) hereof.

B.   Either party to this contract may terminate the Agreement or reopen the same for negotiation by giving to the other party written notice of intention to terminate or renegotiate by registered mail sixty (60) days prior to January 1, 2025 or January 1st of any year thereafter.

IN WITNESS HEREOF, the parties have executed this Agreement on the ____22nd____ day of ____December____, 2021.

LEPRINO FOODS COMPANY:

_____
Heidi Nunes, Plant Manager

_____
Steven Schmidt, Sr. Director, Production
Division HR & Safety

_____
Lisa Prater, Sr. Regional Human Resources
Manager

_____
Ana Nicks, Human Resources Manager


TEAMSTERS LOCAL #517

_____
Greg Landers, Secretary-Treasurer

_____
Steve Nelson, Business Agent

_____
Albert Olson, Union Team Member

_____
Robert Coykendall, Union Team Member

_____
Carlos Gutierrez, Union Team Member

_____
Rodney Coffa, Union Team Member

_____
Patrick Matthews, Union Team Member

_____
Rosie Chapa, Union Team Member

34

SCHEDULE "A"
CLASSIFICATION AND WAGE RATES

The following minimum straight time hourly rates and classifications shall govern, it being understood that additional classifications may be added or combination rates fixed within the limits of the wage schedules herein set forth by mutual consent of the parties. Any disagreement over such classification of labor or the addition of more classifications shall be subject to the jurisdiction of the Arbitration Board herein provided in Section 33.

For purpose of the agreement non-classified work is defined as work not specifically included in "Schedule A".

| | **1/1/21** | **1/1/22** | **1/1/23** | **1/1/24** |
|---|---|---|---|---|
| Maintenance Working Foreperson | 31.58 | 33.16 | 34.24 | 35.27 |
| Maintenance – Vacation Relief | 31.04 | 32.59 | 33.65 | 34.66 |
| Maintenance Mechanic | 30.66 | 32.19 | 33.24 | 34.24 |
| Maintenance – Parts Room Working Foreperson | 28.50 | 29.92 | 30.89 | 31.82 |
| Production Working Foreperson – Day off Relief | 28.25 | 29.66 | 30.62 | 31.54 |
| Production Working Foreperson | 27.93 | 29.33 | 30.28 | 31.19 |
| Production – Vacation Relief | 27.46 | 28.83 | 29.77 | 30.66 |

Any bidholder who is not a vacation relief bidholder, who fills a full week vacation vacancy, will be paid $0.35 per hour over the contractual wage rate of the job performed.

| | **1/1/21** | **1/1/22** | **1/1/23** | **1/1/24** |
|---|---|---|---|---|
| Skilled Relief Person | 27.33 | 28.69 | 29.62 | 30.51 |
| **Bracket 1:**<br>Cheese Maker<br>Milk Receiver<br>Lab Tech<br>Evaporator Operator<br>UF/Separator Operator<br>Dryer Operator<br>Starter Maker<br>MSP Operator<br>Relief Person (Bracket 2)<br>Power Lift Operator<br>Extruder Operator<br>Rail Loader<br>Maintenance Helper (Painter)<br>Parts Room<br>Sanitation/Sep CIP/UF Tester<br>Sanitation Day Off Relief | 27.01 | 28.36 | 29.28 | 30.16 |
| **Bracket 2:**<br>Brine Floater<br>Line Floater | 26.87 | 28.21 | 29.13 | 30.00 |

| | | | | |
|---|---|---|---|---|
| Filler Operator<br>Powder Bagger<br>Box Maker<br>Powder Blender<br>Cellulose/Rework<br>  (When performing Cellulose,<br>employee to be paid at Brk 2 rate)<br>Palletizer Operator<br>Maintenance Helper (Lubricator)<br>Sanitation/Cheese<br>Sanitation/Processing<br>HTST/Cheese<br>Sanitation/CCT PHT<br>Sanitation/Cheese Environmental<br>Sanitation/Process Environmental<br>Sanitation/Whey Environmental<br>Sanitation/Mixers<br>Liquid Application/Freezer Opr | | | | |
| **Bracket 3:**<br>Uncuffer<br>Cellulose/Rework<br>  (When performing Rework,<br>employee to be paid at Brk 3 rate)<br>Sweeper<br>On-call Base Pay | 23.75 | 24.93 | 25.74 | 26.51 |
| **Clerical**<br>Vacation Relief | 26.49 | 27.82 | 28.72 | 29.58 |
| Senior Clerk | 25.74 | 27.03 | 27.91 | 28.75 |

## CLASSIFICATIONS:
## Working Foreperson (Production and Maintenance)

Assigned to supervision of and working with other workers.

## Skilled Relief Person (Relief for Bracket 1)

The rate of Skilled Relief Person shall be paid as follows:

a.    For all hours worked in the workweek, to any employee working in Bracket 1, who is regularly scheduled to work on two (2) or more different shifts during the same workweek.

b.    For any full days worked on any shift in Bracket 1 which differs in starting time from his/her regularly scheduled shift, to any employee who is temporarily so assigned.

c.    For the purpose of subsections (a), (b) and (d) herein set forth, starting times within the workweek which do not vary by four (4) hours or more shall be deemed to be the same starting time on the same shift.

d.    For all hours worked in the workweek, to any employee who relieves other employees on their scheduled days off in two (2) or more classifications in Bracket 1 on the same shift.

e.    For any full days worked in Bracket 1, outside his/her regularly scheduled classification, to any employee who was temporarily so assigned.

## Maintenance Person
## Tool Allowance: Tool Allowance of two hundred dollars ($200.00) per year.

a. Will have the option to purchase Craftsman through the Employer or be reimbursed upon presentation of receipts.
b. Current mechanics will have one year to attain agreed upon tool list.

**Bracket 1** includes the following classifications:

| | |
|---|---|
| Cheese Maker | Parts Room |
| Milk Receiver | Relief Person (Bracket 2) |
| Lab Tech | Power Lift Operator |
| Evaporator Operator | Extruder Operator |
| UF/Separator Operator | Rail Loader |
| Dryer Operator | Maintenance Helper (Painter) |
| Starter Maker | Sanitation/Separator CIP/UF Tester |
| MSP Operator | Sanitation Day Off Relief |

**Relief Person (Relief for Bracket 2)** - The rate for Relief Persons shall be paid as follows:

a. For all hours worked in the workweek, to any employee working in Bracket 2, who is regularly scheduled to work on two (2) or more different shifts during the same workweek.
b. For any full days worked in any shift in Bracket 2, which differs in starting time from his/her regularly scheduled shift, to any employee who is temporarily so assigned.
c. For purposes of subsections (a), (b) and (d) herein set forth, starting times within the work week which do not vary by four (4) hours or more shall be deemed to be the same starting times on the same shift.
d. For all hours worked in the work week, to any employee who relieves other employees on their scheduled days off in two (2) or more classifications in Bracket 2, on the same shift.
e. For any full days worked in Bracket 2, outside his/her regularly scheduled classification any employee who is temporarily so assigned.

**Bracket 2** includes the following classifications:

| | |
|---|---|
| Brine Floater | Sanitation/Processing |
| Line Floater | HTST/Cheese |
| Filler Operator | Sanitation/CCT PHT |
| Powder Bagger | Sanitation/Cheese Environmental |
| Powder Blender | Sanitation/Process Environmental |
| Box Maker | Sanitation/Whey Environmental |
| Palletizer Operator | Sanitation/Mixers |
| Maintenance Helper (Lubricator) | Liquid Application/Freezer Operator |
| Sanitation/Cheese | |

**Office Employees**
Vacation Relief
Principal Clerk (Currently there are no employees in this classification as of 1/1/08).
Senior Clerk

**Exhibit C**





**AGREEMENT**
**Between**
**LEPRINO FOODS COMPANY**
**Tracy, California**

**And**

**GENERAL TEAMSTERS LOCAL #439**
**Affiliated with**
**THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS**

**January 1, 2018 – December 31, 2022**

**TABLE OF CONTENTS**
**AGREEMENT BETWEEN**
**LEPRINO FOODS COMPANY**
**AND**
**GENERAL TEAMSTERS LOCAL #439**
**Affiliated with**
**THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS**

SECTION 1.  RECOGNITION — Page 1

SECTION 2.  OPERATION of AGREEMENT — Page 1

SECTION 3.  UNION AFFILIATION and PREFERENCE of EMPLOYMENT — Page 1

SECTION 4.  EMPLOYMENT PRACTICES — Page 2

SECTION 5.  UNION REPRESENTATIVE — Page 2

SECTION 6.  UNION RELATIONS — Page 3

SECTION 7.  PERFORMANCE of WORK — Page 3

SECTION 8.  LIST of EMPLOYEES — Page 4

SECTION 9.  TRANSFER of PERSONNEL — Page 4

SECTION 10. TRANSFER of COMPANY — Page 7

SECTION 11. SEVERANCE PAY — Page 7

SECTION 12. WAGES and CLASSIFICATIONS — Page 9

SECTION 13. BREAK-IN PERIOD — Page 9

SECTION 14. NIGHT WORK PAY — Page 9

SECTION 15. DUES DEDUCTION — Page 10

SECTION 16 PAY DAYS — Page 10

SECTION 17. REMITTANCE ADVISE — Page 10

SECTION 18. SENIORITY — Page 11

SECTION 19. JOB BIDDING — Page 15

SECTION 20. WORK in TWO or MORE CLASSIFICATIONS — Page 20

SECTION 21. MANAGEMENT TRAINEES and INTERNS — Page 20

SECTION 22. HOURS of WORK/OT — Page 21

SECTION 23. REST PERIODS — Page 29

SECTION 24. MEAL PERIODS — Page 29

I

SECTION 25. HOLIDAYS                                    Page 30

SECTION 26. HOLIDAY WORKWEEK                            Page 31

SECTION 27. VACATION                                   Page 31

SECTION 28. LEAVE of ABSENCE                           Page 35

SECTION 29. SICK LEAVE                                 Page 36

SECTION 30. FUNERAL LEAVE                              Page 37

SECTION 31. JURY DUTY                                  Page 38

SECTION 32. DISCIPLINE and DISCHARGE                   Page 39

SECTION 33. TERMINATION                                Page 40

SECTION 34. GRIEVANCE and ARBITRATION                  Page 41

SECTION 35. WAGE REDUCTION                             Page 44

SECTION 36. UNIFORMS                                   Page 44

SECTION 37. PROTECTIVE CLOTHING                        Page 44

SECTION 38. LICENSES                                   Page 45

SECTION 39. TOOL ALLOWANCE                             Page 45

SECTION 40. BULLETIN BOARD                             Page 46

SECTION 41. TIME CLOCKS                                Page 46

SECTION 42. HEALTH and WELFARE                         Page 46

SECTION 43. RETIREMENT                                 Page 49

SECTION 44. TERM of AGREEMENT                          Page 50

SCHEDULE "A"                                           Page 51

- Wage Table
- Classifications

THIS AGREEMENT made and entered into this 1st day of **January 2018**, and between LEPRINO FOODS COMPANY, hereinafter designated as the Employer, or Company and TEAMSTERS LOCAL NO. 439, which is hereinafter designated as the Union, to be effective **January 1, 2018.**

## SECTION 1.　　　RECOGNITION

    A.　　The Employer recognizes the Union as the exclusive bargaining agent for all employees covered by this Agreement working in the Employer's Tracy, California facility, located at 2401 MacArthur Drive, Tracy, CA 95376.

    B.　　Such employees shall be covered by the provisions of this Agreement, it being understood that additional classifications may be added in the manner set forth in Schedule A.

    C.　　There shall be no discrimination of any kind against any employee on account of union affiliation or on account of the bona fide union activities of such union employee.

## SECTION 2.　　　OPERATION of AGREEMENT

The Employer will pay the wages herein specified and perform the agreements on its part as hereinafter set forth, and the Union through its membership, will do the work herein described and perform the Agreement on its part as hereinafter set forth, each without limitation or reservation except as expressed hereinafter.

## SECTION 3.　　　UNION AFFILIATION and PREFERENCE of EMPLOYMENT

    A.　　All present employees covered by this Agreement who are members of the "Local Union" on the date of execution of this Agreement, or on the effective date of this Agreement, whichever is later, shall as a condition of employment remain members in good standing in said "Local Union". All employees who are hired hereinafter shall become and remain members in good standing in the "Local Union" as a condition of employment on and after the thirty-first (31st) day following the beginning of their employment, the effective date of this Agreement, or the date of execution of this Agreement, whichever is later.

    B.　　When new or additional employees are needed, the Employer will notify the office of the Union and the Union will furnish the Employer

1

with a list of any experienced and qualified persons who may be available for work.

C.    The Employer may hire qualified persons from any source, but shall notify the Union office, or the designated Union Representative in the plant, on the day they do go to work. Such persons shall make application for and complete Union membership subject to this provision.

D.    The Company will notify the Union by mail, on cards provided by the Union, of the hiring of new employees. If any employee is not in good standing with the Union, as provided herein, and the Union so notifies the Employer in writing, the Employer will discharge such employee within seven (7) days thereafter.

## SECTION 4.    EMPLOYMENT PRACTICES

There shall be no discrimination of any kind by the Company or the Union against any employee or member because of race, religion, creed, sex, color, age, national origin, disability or status as a disabled or Vietnam-era veteran and all other protected classes recognized by governing jurisdiction(s).  In this connection, the Company has developed an Affirmative Action Program. The Union agrees to cooperate fully in implementation of that program as modified from time to time; provided that the program shall not conflict with the provisions of this Agreement, including the grievance procedure

## SECTION 5.    UNION REPRESENTATIVES

A.    The Employer agrees to admit to its plant during working hours any authorized representative of the Union for the purpose of ascertaining whether or not this Agreement is being observed by the parties hereto and to assist in their adjusting grievances; provided, however, that the Employer is notified at time of arrival and the representative complies with the Employer's sign-in procedures. This privilege shall be so exercised that no time is lost unnecessarily to the Employer.

B.    The Employer recognizes the right of the Local Union to designate Shop Stewards and alternates from the Employer's seniority list. The Union will provide the Employer with a list of stewards. The Employer will permit a Shop Steward reasonable time off for the purpose of dealing with the Employer concerning grievances at the plant or official Union business, upon reasonable notification by the Local Union.

2

Under no circumstances will Shop Stewards disrupt work or otherwise cause loss of time to the Employer.

## SECTION 6.          UNION RELATIONS

Rights of the Parties.

A.   The Company retains all rights, except as those rights are limited by the Sections of this Agreement. Nothing in this Agreement shall be construed to impair the right of the Company to conduct all its business in all particulars except as modified by this Agreement.

B.   The Union has all rights that are specified in the Sections of this Agreement and retains all rights granted by law, except as such rights are limited by provisions of this Agreement.

Strikes and Lockouts.

A.   During the life of this Agreement, there shall be no lockouts, and there shall be no strikes of any kind.

B.   The Company shall not lock out the employees and the Union shall not authorize, call, encourage or assist the conduct prohibited above. Further, the Union shall exert its best efforts to bring about the immediate termination of any such conduct.

C.   The parties recognize the right of the Company to take disciplinary action, including discharge, against any employees who participate in violation of this Section, whether such action is taken against all or only some of the participants, provided that the Company articulates a business reason.

## SECTION 7.          PERFORMANCE OF WORK COVERED BY THIS AGREEMENT  and MAINTENANCE of BARGAINING UNIT

A.   The Employer agrees that its employees who are not covered by this Agreement, shall perform no work covered by the Agreement, except:

(1)   In case of emergencies; or

(2)   In training or instructing another employee.

B.   If a grievance is filed within thirty- (30) days the parties, the Arbitration Board or the arbitrator, as the case may be, shall assess liquidated

3

damages in an amount not to exceed one hundred dollars ($100.00) against the Employer for violation of this Section. Damages so assessed shall be paid over to a charity designated by the parties, the Arbitration Board or the arbitrator. In lieu of the above, if the Union and the Employer agree, the Employer shall pay the appropriate employee wages at the appropriate rate as set forth in Schedule "A" for the amount of bargaining unit work so performed by the supervisor.

C.    Clerical work, which is being performed by bargaining unit employees, may be transferred only under the following circumstances:

1.  To other bargaining unit employees;

2.  In the case of a consolidation or centralization of the Employer's clerical functions, by transfer to non-bargaining unit employees at another location of the Employer.  **The Company will meet with the Union first to negotiate any reduction prior to any work being transferred.**

## SECTION 8.        LIST OF EMPLOYEES

Periodically, or upon request, but not more often than once every three months, the Employer shall furnish the Local Union with a complete list of employees, and the classification of each and pay of each.

## SECTION 9.        TRANSFER OF PERSONNEL

A.    (1)    Whenever, within the geographic area covered by this Agreement, a new operation is opened, except as a replacement for existing operations within the geographic area covered by the Agreement, the Employer shall offer, pursuant to the provisions of Section 18, the opportunity to transfer to regular positions in the new operation to employees in those operations within the geographic area covered by this Agreement affected in whole or in part by the opening.

(2)    Whenever the new operation is opened as a replacement of an existing operation located within the geographical area covered by this Agreement, employees in the operation being replaced shall be offered, pursuant to the provisions of Section 18, employment in a regular full-time position at the new operation. If all regular full-time positions are not filled by employees from the replaced operation, the remaining such positions shall be offered to employees at other operations located within the geographic area covered by this Agreement.

4

(3)    Provided, however, that the limitations of Section 18 relating to one job bid per year are not applicable to bids submitted under the conditions set forth herein. Provided further, that the provisions of this Section shall be deemed applicable for a period of six (6) months subsequent to the commencement of operations at the new plant. The location seniority of employees at the new operation shall date from the commencement of his or her most recent period of unbroken service for the Employer.

(4)    In the event regular full-time jobs thereafter remain unfilled, the Employer may obtain employees without reference to the provisions of Section 18.

B.    (1)    The transferred employees shall for a period of thirty (30) days following transfer have an unqualified right to return to their former operation if it is still in existence and retain their seniority at their former operation. Employees who avail themselves of the transfer privilege while they are on a layoff at their original operation may exercise their seniority rights if work becomes available at their original operation during the one (1) year layoff period allowed them at their original operation.

(2)    When an operation is closed, and the work of the operation is eliminated, an employee who was formerly employed at another operation shall have the right to transfer back to such former operation and exercise his or her seniority based on date of hire provided he or she has not been away from such original operation for more than one (1) year.

C.    (1)    When an operation is closed or partially closed and any of its work is transferred to another location, vacancies resulting from the transfer shall be filled in the following manner:

(a)    If any employees are on layoff at the locations to which the work is transferred, the recall provisions of Section 18 shall be applied first;

(b)    An employee whose work is transferred shall first be offered his or her work in the same classification at the location to which it is transferred. This offer shall be made in the order of location seniority among the employees whose work is transferred;

(c)    Any vacancy remaining in the transferred work shall be posted in accordance with the provisions of Section 18 for bidding by employees at the location to which the work is transferred;

5

(d)    Any vacancies then remaining in transferred work shall be offered to employees in the department at the location where the work was performed, who have become unemployed by reason of the transfer.  Such offer shall be made on the basis of their location seniority, provided the employees are capable of performing the work;

(e)    Any vacancies still remaining in transferred work shall be filled by the Employer without regard to the provisions of Sections 18 and 19;

(f)    When work other than route work is transferred pursuant to this Section, all employees who transfer with such work within sixty (60) days of the date of transfer of the first such employee shall be deemed to have transferred on the same date as the first transferring employee, and their location seniority at the transfer location shall commence at that date. Among the employees who transfer, their relative departmental and location seniority shall be based on their relative departmental and location seniority at the former location. When more than one route is transferred to another location within sixty, (60) days, the same principle shall apply.

(2)    Provided that if no regular work is available, the Employer, during the period for which an employee's seniority remains unbroken, shall offer the employee employment in the same department at other operations within the area covered by this Agreement on the basis of the employee's departmental seniority, provided that this paragraph shall be applicable only at operations at which no employees are on a layoff status.

(3)    Except as provided in paragraph (D) below, such employees shall go to the bottom of the seniority list and shall have the right of job selection and other contractual rights in accordance with the seniority at the new operation.

D.    Whenever an employee is transferred pursuant to the provisions of this Section, his or her length of vacation, his or her severance pay and his or her accumulated sick leave benefits shall be based upon his or her most recent period of unbroken service under the collective bargaining agreement for the Employer.

E.    As used in this Section, the term operation shall include a plant, branch or division of the Employer.

6

**SECTION 10.        TRANSFER OF COMPANY TITLE OR INTEREST**

   A.   This Agreement shall be binding upon the parties hereto, their successors, administrators, executors, and assigns. In the event an entire operation or portion thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment or receivership or bankruptcy proceeding (unless otherwise provided by law) such operation shall continue to be subject to the conditions- of this Agreement for the remainder of its then existing term.

   B.   In the event the Employer fails to require the purchaser, the transferee or lessee to sign this contract or to otherwise assume the obligations, the Employer shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure.  When the purchaser, transferee or lessee signs this Agreement or otherwise assumes its obligations, the Employer shall be under no further liability to the Union or to employees by reason of this Section.

   C.   The Employer shall give notice of the existence of this Agreement to any purchase, transferee, lessee or assignee of the operation covered by this Agreement or a part thereof.  Such notice shall be in writing with a copy to the Union not later than the effective date of the sale, transfer, lease or assignment.


**SECTION 11.        SEVERANCE PAY**

Whenever an employee is terminated he or she shall receive severance pay benefits pursuant to the provisions set forth below:

   A.   Upon the completion of five (5) years of unbroken service an employee shall be eligible for a severance benefit equal to twenty (20) hours of pay at the employee's regular straight-time rate. The night work pay set forth in Section 14 shall be included in the employee's straight-time rate to the same degree it is included in the calculation of vacation allowance under Section 27;

   B.   The Employee shall be eligible for an additional twenty (20) hours severance pay benefit for each additional year of service through the fifteenth (15th) year;

   C.   For each year of unbroken service in excess of fifteen (15), the employee shall be eligible for an additional forty (40) hours of severance benefit, provided that in no event shall the total severance

7

benefit to which an employee shall become entitled exceed four hundred (400) hours. The yearly severance benefit due an employee shall be proportionately applied to any period of service between the employee's most recent anniversary of hire and the date of his or her termination.

D.      No severance benefit shall be due under this Section to an employee under any of the following conditions:

(1)      The employee quits or is discharged for cause;

(2)      The employee is currently eligible to receive retirement benefits under the Social Security Act and under the Western Conference of Teamsters Pension Plan;

(3)      Prior to his or her termination, the employee is offered regular full-time employment under this Agreement, or is offered reasonable (within fifty miles of the location at which he or she is employed) regular full-time employment at a location of the Employer not covered by this Agreement. If the employee rejects the employment offer, he or she is not entitled to severance pay. If he or she accepts the offer and is subsequently terminated, unless he or she quits or is discharged for just cause, he or she shall receive severance pay based upon his or her Company seniority;

(4)      If an employee is on layoff at the time of the closing and his or her seniority has not been broken, he or she shall not be eligible for a severance benefit if he or she has regular full-time employment elsewhere;

(5)      At the time an employee is laid off he or she shall have the option to receive the severance pay, if any, to which he or she is then entitled, or to retain his or her recall rights for a period of twelve (12) months. If he or she elects to retain his or her recall rights and he or she is not recalled within twelve (12) months of his or her layoff, he or she shall thereupon be entitled to his or her severance pay, provided that if the plant closes during the twelve (12) month period and the Employer has no other location within fifty (50) miles where he or she can be recalled, he or she shall be entitled to his or her severance pay at the time the plant closes.

E.      The seniority of an employee shall be broken upon his or her receipt of a severance benefit.

F.      Severance benefits shall be paid to the employee not later than his or her final paycheck.

G.      The severance benefits provided by this Section shall be exclusive of all other benefits under this Agreement.

## SECTION 12.        WAGES and CLASSIFICATIONS

The minimum scale of wages to be maintained by the Employer during the period of January 1 to February 28, 2010 during the term of this agreement is as set forth in a Schedule "A-1" attached hereto and incorporated herein and made a part of his agreement.

The minimum scale of wages to be maintained by the Employer from **January 1, 2018 – December 31, 2022** during the term of this Agreement is as set forth in a Schedule "A" attached hereto and incorporated herein and made a part of this Agreement.

| 2018 | 2019 | 2020 | 2021 | 2021 |
|------|------|------|------|------|
| *$0.65* | *$0.65* | *$0.65* | *$0.65* | *$0.65* |

## SECTION 13.        BREAK-IN PERIOD

All new employees hired may be employed at a rate of pay 30% less than the classification rate for the first six months; at a rate of 25% less than the classification rate for the second six months; and at a rate of 20% less than the classification rate for the third six months; and at a rate of 15% less than the classification rate for the fourth six months.  (NOTE:  Rate of 15% less than the classification rate for the fourth six months only affects employees who are hired after January 1, 2013).

Employees will be paid one hundred (100) percent of classification for work performed beginning with the first pay period following twenty-four (24) months of employment.

## SECTION 14.        NIGHT WORK PAY

A.      Any employee working between 6:00 p.m. and 6:00 a.m. shall receive thirty-five cents (.35) per hour premium above the regular hourly rate.

9

When an employee works four or more regular or overtime hours between the hours of 6:00 P. M. and 6:00 A. M., he or she shall receive the night work premium for the entire shift worked.

B.     The shift premium is to be included as part of the regular hourly rate upon which overtime is calculated.

**SECTION 15.          DUES DEDUCTION**

A.     The Employer shall deduct lawful assessments and monthly dues of such amount as become due from the wages of each employee who has filed with the Employer a written assignment of such monies to the Local Union having territorial jurisdiction in the area in which the individual is employed.

The assignments shall be irrevocable for a period of one (1) year or until the termination of this Agreement, whichever occurs sooner.

B.     The assignment shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable collective bargaining agreement, whichever shall be shorter, unless written notice is given by the employee to the Local Union not more than twenty (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year or of each applicable collective bargaining agreement.

C.     The appropriate deduction shall be made on the first day of each month and shall be forwarded to the designated Local Union forthwith.

D.     This Section is applicable only within the territorial jurisdiction of Local 439.

**SECTION 16.          PAYDAYS**

All employees covered by this Agreement shall be paid in full at least twice per month. The Employer shall use reasonable efforts to provide swing shift employees with their checks at the conclusion of their shift prior to payday.

**SECTION 17.          REMITTANCE ADVISE**

It shall be possible to determine from the stub accompanying an employee's pay check the following items: regular hourly earnings, overtime earnings, social security deduction, disability insurance deduction, withholding tax and

10

any other deductions authorized by the employee. The Employer shall permit an employee, upon submission of a payroll deduction authorization mutually agreed upon by the Employer and the Union for that purpose, to have deducted from his or her pay checks deposits to a credit union designated for employees. No more than two credit unions shall be designated for all employees and the Local Union shall notify the Employer of the credit unions so designated.

**SECTION 18.          SENIORITY**

A.     All employees employed for bargaining unit classification shall acquire seniority status after ninety, (90) calendar days from date of hire. These ninety (90) days shall be a trial period and disciplinary action or termination of probationary employees during this period will not be subject to review under any section of the contract. Seniority date will be the most recent date of hire in which the employee met the ninety, (90) day requirement.

B.     When more than one (1) employee is hired on the same date, their relative location seniority date is determined by **using the last four digits of the employee's social security number – the higher of the last 4 digits of the social security number will dictate the higher level of seniority.**  However, in the case of transferred employees refer to Section 9, subsection (C) (1) (f).

C.     Location seniority shall be defined as an employee's most recent period of unbroken service into the plant or location of the Employer at which he or she is working.

D.     Layoffs. In the event of a layoff, the following procedure shall be applied, provided the employees in the department having seniority are capable of performing the remaining jobs:

(1)     When one of several jobs in the same classification in the same department on the same shift is to be eliminated, the employee in the classification on that shift who has the least location seniority shall be the employee whose job is to be eliminated. Skilled relief and relief shall each be considered a separate job classification. Shifts, which overlap by not less than four (4) hours, shall be considered as the same shift.

(2)     The employee whose job is to be eliminated shall have the following seniority rights which shall be exercised in the order listed, provided the Employer in its sole discretion, based upon

11

all the facts, shall make the determination of the employee's capabilities of performing the job in question:

a.　　He/she shall have the right to displace the employee with the least location seniority in his/her wage bracket and shift in his/her department whose job he or she is capable of performing.  When an All Shift Relief is on a full week of the same shift (i.e., 40 hours second shift), he/she will bump from that shift if the next week is a less than a 40-hour week for that relief and causes a bumping situation.  (e.g. when the plant goes to a six (6) day from a seven (7) day schedule).

b.　　If he/she can displace no employee pursuant to paragraph (2) a. above, he/she shall have the right to displace the employee with the least location seniority in the next lower wage bracket in his/her shift in his/her department whose job he/she is capable of performing. This process shall be followed in descending order of wage brackets. If he/she can displace no employee in accordance with this paragraph, he/she may displace another employee with less location seniority in a higher wage bracket in his/her shift in his/her department whose job he/she is now capable of performing.

c.　　If he/she can displace no employee pursuant to paragraph (2) b. above, he/she shall have the right to displace the employee with the least location seniority in his/her wage bracket and shift at the plant or location whose job he/she is capable of performing.

d.　　If he/she can displace no employee pursuant to paragraph (2) c. above, he/she shall have the right to displace the employee with the least location seniority in his/her wage bracket on any shift at the plant or location whose job he/she is capable of performing. If there is no employee with less location seniority in his/her wage bracket at the plant location, the employee shall have the right to displace the employee with the least location seniority in the next lower wage bracket at the plant or location whose job he/she is capable of performing. This process shall be followed in descending order of wage brackets. If he/she can displace no employee in accordance with this paragraph, he/she may displace another employee with less location seniority in a higher

wage bracket whose job he/she is now capable of performing.

e.    If the employee does not replace another employee pursuant to the provisions of this Section, he/she shall have the right to displace the employee with the least location seniority if he/she is capable of performing the job. If the employee is to displace another employee, he/she shall be given a break-in period of up to five (5) working days. By agreement of the Employer and the Union, this period may be extended by another five (5) working days.

f.    If no employee eligible for displacement is found, the employee whose job was eliminated shall be laid off.

(3)    Any employee displaced by the operation of this Section shall himself/herself exercise his or her seniority rights in the manner set forth above.

E.    Seniority shall be broken if any employee quits, is discharged or is laid off for more than one (1) year or if an employee has failed to report back for work within three (3) calendar days, exclusive of days where there is no mail delivery, after being notified to do so, provided that a written notice was sent via certified mail to said employee at his or her last address on file with the Employer, with a copy to the Local Union.

F.    An employee may elect to waive his or her right to displace junior seniority employees when such displacement would move him or her to another department. Any employee who has waived such rights shall be considered on layoff and shall have waived such rights until the time of his or her recall to regular full-time employment.

For the purposes of temporary recall said employee shall be offered available work in the order of seniority provided he or she is capable of performing the work and shall revert to layoff status upon cessation of temporary work. An employee who declines recall work shall have waived his or her right for available work for a period not to exceed two (2) weeks.

Employees may be recalled in reverse order of seniority by the Employer to fill a position in an emergency situation where there are no other employees qualified and available to perform such work. An employee who has waived his or her right to displace junior seniority employees as described above shall not have the right to grieve for

13

lost earnings for that period of time as a result of junior employees being retained.

Regular full-time employment shall be defined as a job that is more than two weeks in duration.

To implement this section the Employer shall post a bi-weekly sign-up sheet to allow an employee to waive his or her right to bump into another department. In the event a layoff occurs, the Employer will automatically exercise all employees bumping rights except those waived by employees pursuant to the above.

G.    Seniority lists shall be submitted to the Local Union on request, but not more often than once every six (6) months. Any question concerning the application of seniority under this Section may be reviewed as provided in Section 8 of this Agreement.

H.    When an Employer calls employees back to work after a layoff, said employees shall be called back to work in order of seniority, provided the employee can perform the available work.

I.    For purposes of this Agreement, the following departments are recognized: Cheese Department, Whey Department, Warehouse Department, Maintenance Department (which shall include all maintenance functions); Processing Department; Laboratory Department (which shall include processing lab functions); and Office Department. Other departments may be established by agreement between the Employer and the Local Union. The Local Union shall not unreasonably withhold its agreement.

J.    Department Closures and/or Permanent Job Elimination. Permanent job elimination is the situation when a job is no longer necessary to perform due to changes in technology, processes or a management decision to permanently alter production scheduling. This does not apply to seasonal fluctuations or schedules due to milk volumes.

For purposes of administering the above language, the Employer will implement (B) of this section with the following additions:

(1)    Allow employee to bump from job bid.

(2)    If an employee held a job bid of Bracket 5 or higher at the time of the bump, and the bump takes the employee whose job is being eliminated (or the employee who may be bumped as a result of this job elimination) to Bracket 7 or lower, allow the employee to train up to 15 days in the job that the junior

14

employee in the plant is working as long as it is a job that can be trained in 15 days. This is a one-time training opportunity in each instance of job elimination, and only one training opportunity will be offered, if necessary, for each job that is eliminated. Following is the procedure in administering the training for permanent job eliminations.

(a)     When one employee's job is eliminated, the training period will begin on the second weekly schedule after the job is eliminated. When more than one person's job is eliminated, the first training period will begin as stated above; and the second training period will begin within 15 days of the completion of the first training period, and the process will continue in this manner until all training is completed.

(3)     Bid rights are restored immediately to the displaced employee.

(4)      In the event that an eliminated job is reinstated within 2 years, the employee displaced from the position shall have the first option of filling the reinstated position.

When two or more employees hold the same job bid, on same shift, the start time shall be selected by seniority.

## SECTION 19.          JOB BIDDING

A.     The working foreperson position shall be considered an assignment rather than a job classification for purposes of Sections 18 and 19 of this Agreement. The designation of employees for such assignments is the exclusive right of the Employer and is not subject to review under this Agreement. For purposes of layoff, bumping, disqualification or resignation of the working foreperson assignment, the working foreperson shall be considered to have remained within the classification previously held and reclaim his/her previously held position, provided that position is not held by a higher senior employee. If a higher senior employee is holding the position or the job has been eliminated, the employee will bump in accordance with Section 18 (D) 2.

The Employer shall consider candidates in the following order, but the Employer shall be the sole judge both of the employee's qualifications and of their suitability to the position in question, and no such judgment concerning the Employer's requirements shall be subject to the review under any provision of the Agreement (the Employer shall post a list to

15

afford employees the opportunity to indicate their interest in working foreperson assignments).

(1)     The Foreperson selection process shall be as follows when a vacancy occurs:

(a) The Department Manager will ask each of the current department forepersons, in order of seniority, if they are interested in the vacancy.

(b) If any of the existing department forepersons have an interest they would be awarded the position, by seniority, and then an interest list for the final vacancy will be posted.

(2)     For working foreperson assignments in the maintenance department, the Employer shall consider first employees with at least three (3) months experience in the plant; if no such employee meets the Employer's requirements, the Employer shall consider employees with less than three (3) months experience in the plant;

(3)     For working foreperson assignments in all other departments in the plant, the Employer shall consider first employees with at least one (1) year experience in Bracket 2 or 3; if no such employee meets the Employer's requirements, the Employer shall next consider employees with at least one (1) year experience in Brackets 4 or 5; if no such employee meets the Employer's requirements for working foreperson in the Processing Department, the Employer shall consider first employees with one (1) year experience in the plant; if no such employee meets the Employer's requirements, then the Employer shall consider the employees with less than one (1) year experience in the plant.

Working Foreperson with the most plant seniority that is capable of performing the job will be retained for the purpose of layoff and bumping procedures.

B.     If an employee becomes disabled, as defined by the American with Disabilities Act, the Union and the Employer may agree upon a job which is suitable employment for the employee, and when a vacancy occurs in that job, it may be filled by assignment of the disabled employee without regard to the provisions of this Section.

C.     Temporary vacancies of forty-five (45) calendar days or less may be filled without reference to the provisions of this Section. This period may be extended by agreement of the Employer and the Union.

16

Vacancies created by bidding onto vacation relief schedules of less than forty-five (45) days may be filled by the Employer without reference to the provisions of this Section.

The Employer may fill such temporary vacancies with employees who do not hold full time positions.

Temporary vacancies will be bid after 45 days; only employees who do not hold a job bid may sign for it. The bid will be assigned according to plant seniority. The employee awarded the temporary bid will not lose bidding rights for full time bids.

If or when the job becomes full time, which may be up to one year for a disabled employee, the job will be bid in accordance to job bidding provisions.

All Temporary Bids will be reviewed at JLRC meetings. Temporary Bids must be bid as full-time bids after six (6) months, with the exception of approved leaves of absence. This can be extended upon mutual agreement by Company and Union.

D.      Except as specified above, whenever vacancies occur in any job classification covered by the collective bargaining agreement, said vacancies shall be filled in accordance with the procedures hereinafter set forth:

(1)     All such vacancies shall be conspicuously posted for bidding at a suitable location designated for this purpose within fifteen (15) days after they occur. They shall be posted on a form, which shall give the job titles or the principal job titles in the case of a combination job, hours, days off, location, and wage rate of the job. The vacancies shall be posted for a period of five (5) days, and the bid form shall remain posted for five (5) days after the end of the posting period. The Employer shall retain completed bid forms for a period of one (1) year. During this period, the forms shall be available for inspection by Union Representatives;

(2)     Bidding by eligible bargaining unit employees at a location where an opening exists is permitted;

(3)     The Employer need not give consideration to any bid by an employee in a job within Bracket 3 or higher during his or her first year of employment, nor any other employee during his or her first six (6) months of employment. In addition, the Employer need not give consideration to any bid by an employee who has

17

successfully bid on a job within the preceding twelve (12) month period;

(4)    Only bids submitted within the five (5) day period during which the vacancy was posted shall be considered by the Employer. An employee who is to be absent on vacation may, before leaving on vacation, submit to the Employer a vacation bid form provided by the Employer to designate any jobs in order of preference for which the employee wishes to be considered a bidder in the event they are posted during the employee's vacation. If one of the specified jobs becomes available during the vacation period and the employee is the senior bidder capable of performing the job, he or she shall be awarded the job. If more than one job specified becomes available at the same time and he or she is the senior bidder capable of performing each such job, he or she shall be awarded the job given higher preference on the vacation bid form. In any event, any employee awarded a job for which he or she has submitted a vacation bid form who declines the job shall be considered a successful bidder under paragraph (3);

(5)    The job vacated by the employee successfully bidding on a posted vacancy shall be posted and filled in accordance with the provisions of this Section; the job vacancy thereby resulting shall be posted and filled by the Employer without reference to the provisions of this Section; if this results in a job vacancy, the bidding process would begin again as if this were the original vacancy. The effect of this procedure is therefore bid, appoint, bid, bid, appoint; <u>unless</u>

(6)The appointed vacancy has a starting time between 4:00 am to 12 (noon), at which time one (1) additional bid shall be allowed (bid, bid, bid, appoint).

The bidder having location seniority shall be awarded any job required to be submitted to bid pursuant to the provisions of this Section, provided the bidder is capable of performing the job. If successful bidder fails to qualify, as determined by the Employer in its sole discretion, during his/her first 15 working days on said job, they shall be restored to former job and lose bidding rights for one year regardless of seniority, and the job shall then be awarded to the next senior bidder on the original posting provided he or she is capable of performing the job.  If the employee's previously held position has been filled by another employee, he/she too shall revert to his/her previously held position.  During the period the successful bidder is qualifying,

his or her former job may be temporarily filled without regard to the bidding procedure. A bidder who is awarded a job and fails to qualify shall be considered a successful bidder under paragraph (4). Once a bid is made, an employee may take his or her name off of the bid without penalty prior to the awarding of the bid.  A bidder who is awarded a job and declines it shall be considered a successful bidder under paragraph (4); unless he/she declines prior to any movement as a result of the bid being awarded.

(7) Whenever no bids are submitted for a job opening or whenever no employee submitting a bid is capable of performing the job, the Employer may select an employee to fill such job without regard to the provisions of this Section.  The most senior on call employee or lowest senior non big holder employee (in the event that no on call employee(s) exists) will be appointed to the vacant position.  Refusal to accept the appointed position will be considered a voluntary resignation.   Any employee who is appointed under these circumstances still maintains their bidding rights.

(8)     The successful bidder must be available for assignment within forty-five (45) days of the day the job is awarded, or he/she shall be considered an unsuccessful bidder and shall retain all bidding rights. The next most senior bidder shall be awarded the job, unless availability is restricted by the actions of the Company.

(9)     Within thirty (30) days of completing the end process of a series of bids, the first move will be made. If the first move is not made within thirty days (30 days) of the successful bidder being available to fill the position, the successful bidder will be compensated at the wage rate applicable to the higher bracket.

In the event there are a series of bids, each successive bid shall be filled within forty-five (45) days of the prior bid move provided the successful bidder is available to fill the position. Otherwise the successful bidder will be compensated at the wage rate applicable to the higher bracket.

(10)    Any employee whose job is eliminated within three (3) months after he/she has successfully bid it shall retain his/her original bid and bidding rights.

(11)    If an employee has not been scheduled in his/her job bid due to production scheduling for a consecutive six-month period, bidding rights shall be restored.

E.   The Company will bid and train Special Relief jobs to utilize the bid holders to fill vacancies on any shift as needed. The bid will be posted in accordance to (D) (1) above.  Only employees who are Bracket 7, or on call at the time the bid is posted, may bid on this Special Relief bid. (See attached Revised Scheduling of Vacancies.")

F.   Employees may give up their bids with the following conditions:

Employee will lose bidding rights for regular job bids for twelve (12) months from the time of resignation and the employee takes job of lowest senior person in Bracket 7.

G.

In the event a skills competency test is required as part of the qualification process for a job bid, in a laboratory, clerical or maintenance mechanic position, an employee who fails a competency test must wait six (6) months prior to retesting unless he/she can provide documentation of skills or competency improvement. Employees currently holding a job bid at the signing of this Agreement in the above classifications shall not be subject to testing if bidding within their current job classification.

## SECTION 20.    WORK IN TWO OR MORE CLASSIFICATIONS

A.   Any employee who is assigned to perform and does perform in more than one classification during a given day or shift, shall receive for the full day or shift, the scale of the highest rated job so performed during such day or shift, provided fifty percent (50%) of such employee's straight time is worked in such highest rated classification. If less than fifty percent (50%) of his or her straight time is so worked in such highest rated classification during such day or shift, he or she shall receive the appropriate rates for the jobs actually assigned and performed. Any employee who is temporarily assigned to a job in a lower bracket than that to which he or she is regularly assigned shall continue to be paid the higher bracket rate.

B.   Clerical employees whose work regularly falls in more than one bracket shall be paid a rate mutually agreed upon between the Employer and the Local Union.

20

**SECTION 21.        MANAGEMENT TRAINEES AND INTERNS**

Employer and Union mutually agree that Employer may employ Management trainees and interns to learn the operations of the business.  In so doing, the trainees and interns will not displace any bargaining unit employees.

**SECTION 22.        HOURS of WORK and OVERTIME**

A.    <u>Work Week</u>

Eight (8) hours shall constitute a day's work for all classifications and shall be worked within eight and one-half (8 ½) consecutive hours, except as provided in Section 22:Q which covers alternative work schedules.

B.    <u>Overtime</u>

Not more than forty (40) hours shall constitute a week's work to be completed within five (5) days, with time and one-half (1 ½) for all hours worked above eight (8) hours within nine (9) consecutive hours in any one (1) day, or forty (40) in any one (1) week, whichever is greater.

The purpose of this section is to provide a method for the distribution of unavoidable overtime work among the employees and this section's purpose is not to increase the Employer's cost of overtime wages nor is it the intent to take away any benefit contained within the labor agreement.

Employees will be required to indicate his/her desire to work available overtime when offered, by signing a bi-weekly overtime list located in the Human Resources Department.  Refusal to accept scheduled overtime, except as provided in Section 22 N, shall result in the employee being removed from the overtime list for that period. Unless the employee with scheduled overtime is able to find another qualified employee as referenced in Section 22 (F) of the contract. In addition, if the employee fails to notify the employer more than 4 hours before the start of the scheduled overtime, the employee will receive a one-half (1/2) point penalty (attendance) for not working the scheduled overtime.   Should the employee fail to sign the request for overtime, he or she shall not have the right to grieve for lost wages. The sign-up sheet shall be by department and shall be binding for that period for both the Employer and employee.   Employees are not eligible for overtime during the vacation period.

21

In the event an employee is awarded work off the overtime list, he/she shall be compensated at the applicable rate of pay for the job performed. In the event an employee has not signed the overtime list or has been removed from the overtime list and is later assigned to work overtime, he/she shall be compensated at their regular rate of pay or the applicable rate of pay for the job performed, whichever is higher.

C.     Any time worked in excess of ten (10) hours in any one (1) day shall be overtime and paid at the rate of two (2) times the straight time hourly rate.

It shall be the intent of the Employer to provide the maximum amount of notification (one hour if possible) when filling overtime vacancies resulting from unforeseen events such as absences due to illness, injury or other reasons.

Planned overtime (overtime known and scheduled) will have a minimum of one (1) hour notification.  If employee is not given at least one-hour notice and the employee turns down the overtime, the employee will not be removed from the overtime signup sheet.

All employees shall receive **seven and a half (7.5) hours** off between each shift, except in cases of an emergency as defined in Section 22 H or in the event the Company is unable to fill a vacancy

D.     <u>Overtime Scheduling</u>

(1) Full Shift Vacancies:  Where there is a need to fill a vacancy for a full shift:

   a.  The Employer may schedule a qualified employee who is on call and can work at a straight time hourly rate.  Scheduled employees may not be moved from scheduled jobs to accommodate use of on call employees, except in the case of emergency, to maintain a qualified employee in the position.

22

b.  The Employer may request an employee to move to another position within that department. An employee must agree to move and will not be subject to discipline, or be required to move, if he/she declines, unless the Company has exhausted all possible options for filling a vacancy as defined in this section.

c.  The junior trained (qualified) employee working on that shift and in that department who signed a Training Interest List and has been trained may be assigned to fill the vacancy.

When there is a need to cross train within a department, an interest list will be posted identifying the job to be trained, and employees within that department may sign to show their interest in being trained.  Training opportunities will be granted by seniority and prerequisite skills and may be limited to one job opportunity per year and to two jobs beyond current job bid held. This means that cross training is intended to provide employees the opportunity to increase their job skills up to a maximum of three within their department.  In order to maintain skills, employees will be periodically scheduled to perform the jobs in which they are trained.

For every Special Relief bid posted, one cross training interest list will be posted; however, a training interest list may be posted without posting a Special Relief Bid.

d.  The Employer may request an employee who is scheduled out of his/her home department to voluntarily return to that home department to cover a vacancy which he/she is qualified to do.

e.  Utilize a Special Relief employee.

f.  If the vacancy cannot be filled through steps a. through e. above, call in the qualified employee in the department who has the most plant seniority and who is on a day off who has had **seven and a half (7.5) hours** rest and signed the overtime sheet. (See attached "Revised Scheduling of Vacancies.")

(2)  Less than Full Shift Vacancies.  If unable to fill a vacancy through (1) above, the overtime will be considered less than a

23

full shift and split between the previous and following shifts as follows:

   a. Offer overtime in seniority order to qualified people working in the department who have signed the overtime list.

   b. Offer overtime to employee performing the job.

   c. Require the qualified employee to perform work in reverse order of seniority.

(3) Maintenance Department Scheduling. Due to the unique, individual skills of maintenance department employees, the following procedure shall be applied:

   a. Offer the overtime to the employee performing the job where the overtime is to occur if it is a continuation of an existing job, and the employee is qualified to complete the job.

   b. Offer the overtime to the most senior qualified person in the department who signed the overtime list.

   c. Require the qualified employee to perform the overtime in reverse order of seniority working in the department.

E.   <u>Call in procedures:</u>

(1) When there is a need to fill a vacancy and there is more than 4 hours until start of shift, there shall be 15 minutes between attempts to notify next employee on the overtime list.

(2) When there is a need to fill a vacancy and there is less than 4 hours until start of shift, the Employer can call without delay until vacancy is filled.

F.   Determination of qualified employees is the sole discretion of the Employer. The Employer retains the right to keep the employee in reverse order of seniority working on the job in order to give the Employer reasonable time to contact the most senior employee who (a) indicated in writing his desire to perform the overtime work and (b) who is qualified and available to perform overtime work.

Reference to the senior employee in the department is deemed to be the person in the department with the most plant seniority.

24

G.    Employees who previously have failed the physical examination for heavier lifting jobs may be retested at their own expense at the Company designated medical facility.

H.    <u>Posting Days Off and/or Starting Time</u>:

Weekly work schedules shall be posted no later than **10:00 a.m**. on Friday prior to the starting of a new workweek. An employee shall be notified of any **corrections as per section 22 H-2 on his or her start time not less than twenty-four (24) hours prior** of his or her next preceding shift.  Employees whose schedules change, and they are not scheduled to work on Friday, will be notified by the Employer of their changed work schedule.

**1.  When employees scheduled starting time is corrected after posting and while employee is still on premises the Supervisor will provide a written notice to the employee advising the employee of such change (everyone else will be called).**

**2.  All parties agree that if there is a mistake on the schedule then Management/Supervisors and Union will come together as soon as the issue is noticed to correct the schedule together to resolve an any issue(s) no later than 5:30am on Saturday.**

Once weekly schedules are posted, changes shall not be made unless the plant or department should suffer an extreme emergency that would cause the Employer the inability to operate, i.e. loss of ability to operate due to flood, fire, utility failure, major maintenance failure beyond the control of the Employer, or unscheduled changes in the raw material beyond the control of the Employer, at which time the Employer may exercise an unscheduled down-day period.

Should an unscheduled down-day period be exercised by the Employer, employees may exercise their option to use the unscheduled down-day period as their scheduled day off by signing the weekly sign-up sheet. Once an employee has exercised this option, he or she will go on the on-call list for available work at the straight time rate.

I.    <u>Days Off</u>:

Any employee required to work on his or her scheduled day off shall be paid at the rate of two (2) times his or her straight time hourly rate for all hours worked, unless the employee takes off a subsequent day during such workweek for reasons other than the request of the Employer, or unless a change in work schedule results from a

promotion or change of shift assignment pursuant to the operation of Section 19, hereof. In this event, new days off shall be scheduled to meet the new assignment and no penalty shall result from working a scheduled day off under the former assignment while effecting such a change.

On a down-day period, if the Employer requires employees to perform extra assignments associated with the down-day period, the Employer shall offer the opportunity to work such assignments in order of seniority among those employees qualified to perform the work in question, who have been relieved of their regular assignments because of the down-day period.

Employees may negotiate an exchange in schedules with other employees, subject to the Employer's approval in order to accommodate requests for personal time off.

J.     <u>Minimum Hours</u>

Employees called to work, or scheduled and reporting for work, or working four (4) hours or less in any day shall be offered a minimum of four (4) hours of work, and all employees working more than four (4) hours shall be offered eight (8) hours of work.

K.     <u>Delays of Operations.</u>

Any delays in daily operations caused by circumstances beyond the control of the Employer, such as failure of power or breakdown of plant machinery or equipment shall not require the payment of overtime, except to employees who may be continued at work during such delay interval. Per Section 22 (I): Minimum hours shall not apply in such situations as stated above.

L.     <u>Method of Spreading Work.</u>

It is the policy of the Employer that the maximum proportion of regular employees shall receive eight (8) hours daily and forty (40) hours weekly employment; that the principles of spreading work by reducing hours for all employees who perform like duties shall not be applied; and that, where feasible, days off will be scheduled consecutively.

M.     <u>Call-Back Minimum.</u>

26

Whenever an employee is called back to work after the close of his or her shift and before the commencement of his or her next shift, he or she shall be guaranteed a minimum of two (2) hours work at the appropriate rate. This section shall apply only in the following circumstances:

(1)     The employee has left the Employer's premises after the close of his or her shift (including overtime if any); and

(2)     The call back begins more than two (2) hours before the commencement of the employee's next scheduled shift.

N.     <u>Refusal to Work Overtime.</u>

(1)     When an employee has worked two days of more than ten hours, he/she may refuse to work daily overtime of more than ten hours for the remainder of the workweek.

(2)     If employee works both days off in any week, employee can refuse further overtime in that week without being removed from the overtime list.

(3)      If employee works 6 days in a week, employee can refuse the 7th day without being removed from the overtime list.

(4)     If an employee is the least senior qualified person to work the overtime, he/she does not have the right to refuse and is required to work the overtime.

O.     <u>Industrial Injury.</u>

If an employee sustains an industrial injury and there is medical evidence that such injury prevented him or her from continuing work on the day of injury, he or she shall be paid for time worked on such day but for not less than eight (8) hours.

An employee who is required to take time off as a result of an on-the-job injury for treatment in the doctor's offices shall be paid their regular rate for such time lost from work according to the following schedule:

(1)     For first 30 days or for doctor appointments scheduled by Company's Workers Compensation Administrator.

(2)     Maximum of two hours of time missed from regularly scheduled shift.

27

(3)     For travel beyond Modesto or Stockton (approximately 30 miles from plant) the Company and Union will mutually determine the hours off of the work schedule that will be paid.

(4)     The Company will not move an employee's days off to avoid paying the hours of this provision.

P.     Employees who are required to take a pre-placement physical for a job bid will be paid straight time for the time of the appointment and twenty (20) minutes travel time if the appointment is in Tracy or sixty (60) minutes travel time if the appointment is in Stockton.  These straight time hours will not be used for calculating overtime.

Q.     <u>Alternative Work Schedule</u>

The Employer may, at its sole discretion, provide for an alternative work schedule in accordance with state law, e.g. ten (10) hour, four (4) day work week. This shall require the approval of at least two-thirds (2/3) of the affected Employees by vote.

1.  Ten hours shall constitute a day's work hours and shall be completed within ten and one-half (10 ½) hours.

2.  Less than full week vacancies that are filled by employees who are scheduled for forty straight time hours over five days that week, will be paid eight hours at straight time plus two hours at one and one-half times the straight time rate for that ten-hour day.

3.  All employees in this work schedule will have three days off each work week. At least two of those days off will be consecutive.

4.  The method of filling unplanned full-shift vacancy will be;

(a)  Call in a qualified employee who is on call. (To be paid ten hours at straight time rate).

(b)  Call in a qualified employee who is on a day off and who has signed the overtime sheet.

(c)  Hold a qualified employee in the department over for two hours and then fill the remaining employees in seniority order.  If there are no volunteers the overtime will be assigned in reverse seniority.

5.  Employees called to work, or scheduled and reporting for work, or working five hours or less in an any day shall be offered a minimum of

28

five hours of work, and all employees working more than five hours, shall be offered ten hours of work.

6.    When an employee has worked two days of more than twelve hours, he/she may refuse to work daily overtime of more than twelve hours for the remainder of the workweek. If an employee is the least senior qualified person to work this overtime, he/she does not have the right to refuse and is required to work the overtime.

7.    For the purposes of calculating vacation pay, holiday pay, sick leave pay, funeral leave pay and jury duty pay, a day shall consist of ten (10) hours paid at the straight time hourly rate.

8.    An employee working on any of the contractual holidays shall receive ten hours of pay at the straight time rate as holiday pay in addition to the pay for time worked which will be one and one-half the straight time.

9.    Single day vacations are four single days of ten hours for each day.

10.    Employees will receive a 15-minute rest period during the first and second half of work of a ten-hour shift.

11.    The provisions are the same as in the current collective bargaining agreement except that the meal period must come before six hours. The one and one-half time penalty pay is effective after six hours without the meal break.

12.    If an employee is absent on account of disability for more than four working days, he/she will notify the Company not later than the close of his/her regular shift next preceding the day on which he/she will be able to return to work before the Company shall be obligated to restore him/her to the job.

13.    Anytime after six months from the beginning of an alternative workweek program, either the Union or the Company can move to terminate the program, in accordance with State law, and return to the previous manning and scheduling.

14.    The Company, at its sole discretion, may offer alternative workweeks to other work groups within the plant. The Company is obligated to negotiate with the Union any planned changes in workweeks.

## SECTION 23.          REST PERIODS

All bargaining unit employees shall receive a rest period of reasonable duration (15 minutes) in accordance with present practices during the first and second half of work of an eight (8) hour shift. The Employer shall not schedule an employee for a rest period during the first hour of work. When an employee is told or scheduled to work nine (9) or more hours he or she shall receive an additional rest period between the eighth and ninth hour.

## SECTION 24.           MEAL PERIODS

Except in emergencies, each employee shall be granted a meal period not more than five (5) hours after the beginning of his or her shift.

The meal period shall not be paid time unless the Employer, because of the nature of the work, requires an on-duty meal period, which shall be paid time. Any employee who is required by the Employer to delay his or her meal period more than five (5) hours after the beginning of his or her shift shall be compensated at one and one-half times the rate of pay from the fifth hour until the meal period is taken. The employee will return to straight time after the meal period is taken. Other arrangements for mealtime may be made by mutual agreement between the Employer and the Local Union.

## SECTION 25.          HOLIDAYS

A.      The following holidays will be recognized for eligible employees as hereinafter defined: New Year's Day; Martin Luther King's Birthday (Federally recognized holiday); President's Day (third Monday in February); Easter Sunday; Memorial Day (last Monday in May); Fourth of July; Labor Day; Veteran's Day; Thanksgiving Day; and Christmas Day.

B.      Whenever a holiday falls during an employee's vacation, he or she shall receive an additional day off with pay or an additional day's pay at the discretion of the Employer.  The Employer's discretion shall be exercised prior to the commencement of said employee's vacation. If the employee is to receive an additional day off with pay, it shall be granted consecutively with the employee's vacation or consecutively with a scheduled day off within thirty-five, (35) days, immediately before or after the vacation period within which the holiday falls.

C.      To be eligible for the benefits provided by this Section, an employee must meet the following requirements:

(1)    He or she must work on his or her regularly scheduled workday before and after the holiday unless excused by the Employer; provided that an employee off work because of illness or injury shall be deemed to be excused by his or her Employer if he or she notifies his or her Employer of his or her illness prior to the commencement of his or her shift on the day on which he or she is unable to work.

(2)    He or she must work on the holiday if scheduled to work, unless excused by the Employer.

(3)    He or she must perform work during the seven (7) day periods immediately preceding or immediately following the holiday.

D.    During each week in which a holiday falls, each eligible employee shall receive as holiday pay an amount equal to eight (8) times his or her regular straight-time hourly rate of pay in addition to all other compensation earned by him or her under other provisions of this Agreement.

E.    An eligible employee will be paid one and one half (1 ½) times his or her regular straight-time hourly rate of pay for all hours worked on a holiday. The Employer will not adjust employees' schedules to avoid paying the holiday premium pay.

If after one (1) year with a total of forty (40) or less absences on holidays in a contract year for the whole bargaining unit, eligible employees will be paid two (2) times their regular straight time hourly rate for all hours worked after eight (8) on holidays for the next contract year. This double time will be renewed for each year that the preceding year has forty (40) absences or less on holidays.

F.    Employees shall be ineligible for paid holidays during their qualification period for seniority status per Section 18 (A) of this Agreement. If any employee works on a paid holiday, he or she shall be paid at the straight-time rate unless otherwise eligible for premium pay.


## SECTION 26.        HOLIDAY WORKWEEK


If a regular employee is scheduled to work on a holiday, he or she shall be offered thirty-two (32) hours of work during the same calendar week in addition to hours worked on the holiday. For purposes of this provision, a regular employee is defined as one who has worked at least seventy-two (72) hours during the previous two (2)

31

calendar weeks.  Paid vacation time, paid holiday and paid sick leave time shall be considered as time worked under this Section.

**SECTION 27.          VACATION**

Vacations will be earned and selected on a calendar year basis.

A.    The Employer shall grant paid vacations in accordance with the following schedule:

| Continuous Service | Weeks Paid |
|---|---|
| One Year | One Week |
| Two Years | Two Weeks |
| Five Years | Three Weeks |
| Ten Years | Four Weeks |
| Fifteen Years | Five Weeks |

An employee shall be entitled to receive full vacation pay as set forth above if he or she has actually performed work for two thousand (2,000) straight-time and overtime hours during his or her vacation eligibility year. If an employee has completed a vacation eligibility year but has performed work for less than two thousand (2,000) straight-time and overtime hours during such year, such employee's vacation time shall be based upon his or her years of continuous service, but the amount of vacation pay to which he or she shall be entitled shall be determined by the ratio between two thousand (2,000) hours and the total straight-time and overtime hours actually worked by him or her during his or her vacation eligibility year. If an employee is on layoff at the time of completing his or her first vacation eligibility year, he or she shall not be eligible for vacation pay for that year unless he or she is recalled to work while his or her seniority remains unbroken.

All employees are on a January 1st through December 31st accrual year for purposes of earning vacation. For purposes of scheduling vacation in the first calendar year following the year of hire, the following provisions of this paragraph shall apply. An employee will only be paid for vacation time taken to the extent of vacation hours accrued (earned), based on hours worked on a prorated basis in the prior year, and the balance of hours of the "vacation" week will be unpaid in the year following their year of hire.

New employees hired during the period of January 1st through June 30th shall be entitled to schedule a week of vacation in the year following their year of hire and shall have a vacation accrual date of January 1st of the year of hire.

New employees hired during the period of July 1st through December 31st :

1. Shall have a vacation accrual date of January 1st of the year following hire for purpose of earning additional weeks of vacation and shall not be entitled to schedule a full week of vacation in the year following their year of hire.

2. Shall be given the option to be paid out their vacation accrued hours at the end of the calendar year or to take single day vacation days in full day increments for the amount of hours accrued from the employee's date of hire. Any remaining accrued hours shall be paid out at the end of the calendar year.

B.     With the approval of the Employer, the employee may divide his or her vacation into more than one (1) period. Whenever an employee splits his or her vacation, his or her location seniority preference in vacation selection shall be applicable only to the first of the two periods selected; provided that after each employee has selected his or her initial vacation period, location seniority preference shall apply to the selection of the remaining portions of split vacations.

**Three weeks of vacation per year may be taken into single or multiple days if an employee has five weeks earned.  For others,** two weeks of vacation per year may be taken in single or multiple days. This option may be exercised only after all full vacation weeks have been selected throughout the plant. These vacation days may not be requested more than thirty days in advance; but, they must be requested **and entered in by Thursday at 10 a.m. before the work schedule is posted for the coming week.**  These single or multiple days of vacation must be used before any unpaid time off requests will be granted. Such vacation days will have priority over any unpaid time off requests. Overtime may be worked to cover a single day vacation; but unpaid time off requests will not be covered by overtime.

C.     Vacation allowance shall be computed on the basis of the employee's straight-time hourly rate for the majority of the hours worked during the week immediately preceding the commencement of the vacation, plus any night work pay earned during such week.  When night work is regularly rotated, the night work pay shall be prorated for this purpose.

D.     An employee who has completed one or more years of continuous service with the Employer shall be entitled to prorated vacation pay upon having his or her seniority broken in the manner described in Section 18. An employee who fails to give the termination notice

required in Section 33 shall not be entitled to such prorated vacation pay.

E.    For purposes of computing time worked during a vacation eligibility year, the following shall be counted as straight-time hours worked: paid holidays not worked, paid vacation time, paid sick leave, and overtime hours worked.

F.    If an employee's seniority is lost pursuant to Section 18, his or her accumulated service for purposes of vacation benefits is canceled.

G.    (1)    If called back to work during his or her scheduled vacation or if required by his or her Employer to completely forego a scheduled vacation, or any part thereof, an employee shall be paid at two (2) times his or her regular straight-time rate of pay for all hours worked during said scheduled vacation. The employee shall reschedule the unused portion of his or her vacation in accordance with the provisions of this Section.

      (2)    An employee may receive one week's vacation pay per anniversary year in lieu of his or her taking vacation, as long as he or she has a minimum of two weeks' vacation that anniversary year.    Vacation pay "in lieu of time off" requests must be submitted to payroll by noon on Tuesday and will be paid out on the next pay date.

H.    Schedules for the selection of vacation periods shall be posted no later than January 1st of each year.

      Employees who fail to select their vacation periods within thirty (30) days of the posting of the schedule shall forfeit their right to select a vacation period.  Upon request of the union made by February 1, the Employer shall furnish the Union with a copy of the vacation schedule as of that date. This section shall also apply to vacation periods, which become available after the posting of the vacation schedule.

I.    Vacations shall be taken at the convenience of the Employer, but due consideration will be given an employee's request for time of vacation in accordance with location seniority within the department. The months of June, July, and August shall not be blocked out of the schedule.  No employee shall be required to commence his or her vacation period without having been given thirty (30) days prior notice.

J.    An employee entitled to vacation pay shall upon a request submitted at least seven (7) days prior to the commencement of the vacation

35

period, receive his or her vacation pay at the commencement of the vacation period.

K.     If an employee is off work because of his or her disability immediately prior to the time his or her vacation is scheduled to commence, he or she may have his or her vacation rescheduled in accordance with the provisions of this Section, provided he or she so notifies his or her Employer before his or her vacation is scheduled to begin. The employee shall not have the right to interfere with the scheduled vacation period of another employee.

L.     In accordance with the Family and Medical Leave Act (FMLA), employees are required to use all earned vacation to cover any otherwise unpaid leave under FMLA. This would include FMLA Leave needed to care for a family member. It would also include an employee's own serious health condition when sick leave hours have been exhausted.

Vacation time picked is still honored even though vacation pay may have been used during a family medical leave, under the following conditions:

(1)    The employee will advise the People Development Department within one week after their return from a Family Medical Leave whether they plan to take scheduled vacation time or if they will cancel that scheduled time off.

(2)    If the employee does not designate within the one-week period, the vacation selection(s) remaining will be canceled and will be open for picking by other employees by seniority. If there are any remaining weeks of vacation pay, the employee will select which remaining week will be kept.

## SECTION 28.      LEAVE OF ABSENCE

A.     Whenever a regular employee becomes unable to perform his or her regular work by reason of his or her physical or mental disability he or she shall be placed on a medical leave of absence. Such leave shall continue while the employee is disabled, but not longer than the period of the employee's employment at the commencement of his or her disability, or one year, whichever period is the shorter, unless it is extended by the Employer. Unless the employee returns to his or her job at the end of his or her medical leave of absence, his or her employment may be terminated by the Employer by reason of the disability without violating the provisions of this Agreement.

(1) Employees must provide the Employer with appropriate medical documentation on an ongoing basis to continue a medical leave of absence. In addition, the Employee must notify the Employer of any change in address or telephone number.

(2) The Employer will provide employees who are subject to termination under this paragraph (A) a five (5) day Notice of Intent to Terminate prior to termination.

B.    Leaves of absence for periods in excess of one (1) week shall be granted only upon written approval of the Employer. A copy of the written approval shall be furnished to the Union and to the employee. Any request for a leave of absence shall be submitted in writing addressed to the Employer's representative designated for the purpose, shall specify the requested beginning and ending dates for the leave, and shall be submitted at least sixty (60) days in advance of the date the leave is requested to begin. Any request submitted in accordance with the preceding sentence shall be acted upon by the Employer within thirty (30) days of the employee's submission of the request. The time limitations of this paragraph are not applicable to leaves of an emergency nature, or leaves shorter than one-week duration.

## SECTION 29.        SICK LEAVE

Every employee covered by this Agreement shall be entitled to sick and accident leave benefits under the following conditions:

A.    Benefits shall be earned at a rate of four (4) hours per month up to a maximum of forty-eight (48) hours in any contract year, effective with the ratification of this Agreement by the Union. Benefits can be accumulated to a maximum of four hundred (400) hours.

Employees will cash out at 100% all accrued sick leave in excess of 400 hours on an annual basis to be paid in December for hours earned.

Any employee who attains over 200 hours in sick leave in any year, and did not receive any attendance points, can cash out one-half of the sick leave hours that were accrued that year.  This would be a maximum of twenty-four (24) hours in any year.  The balance would go into the employee's sick bank.

B.    Employees shall start accruing sick leave the first day of the month following employment; an employee who has not worked under this Agreement during the previous twelve (12) months is not eligible to use

sick leave benefits until six (6) months after the commencement of his or her employment.

C.      Sick benefits shall be paid commencing on the first full day of work missed at the rate of eight (8) hours straight time per day until sick bank is depleted.

D.      Sick benefit payments, including disability insurance or workers' compensation payments for any week shall not exceed an employee's normal straight-time weekly earnings, including shift differential if any.

E.      Sick benefits are payable only for an employee's regularly scheduled workdays on which he or she is off sick.

F.      The Employer may require a doctor's certificate or other satisfactory proof of illness or accident.  When the employee's absence does not exceed three (3) days, there shall be no uniform requirement for a doctor's certificate.

G.      Sick leave benefits shall accrue only for employees who work eighty (80) hours or more in a calendar month.

H.      An employee found to have willfully abused the sick leave provision shall be subject to immediate dismissal.

I.      If an employee is absent on account of disability more than five (5) working days, he or she shall notify the Employer no later than the close of his or her regular shift next preceding the day on which he or she will be able to return to work before the Employer shall be obligated to restore him or her to the job.

J.      If an employee is on a medical leave of absence, as a result of their medical condition, for thirty (30) or more days, then the Company requires a return to work physical conducted by a physician selected by the Company to confirm the employee's ability to perform the essential functions associated with the job. The returning employee must provide a written medical release to the Company immediately upon release to work. Upon notification, the Company shall schedule a return to work physical as soon as practical, not to exceed three (3) full days (excluding weekends and holidays).

K.      A record of the sick leave benefits accumulated by an employee shall be furnished to the Local Union by the Employer upon receipt of written request therefore.

L.      <u>Absence Notification:</u>

The employee shall notify the Employer, in a manner prescribed by the Employer, of the employee's expected absence no later than ninety (90) minutes prior to commencement of his or her scheduled shift. Failure to comply with the notice requirement of the preceding sentence shall subject the employee to disciplinary action and, if excessive, may result in discharge.

## SECTION 30.        FUNERAL LEAVE

A.    An employee who loses time on scheduled workdays on account of the death of a member of his or her immediate family will be paid either three (3) days or five (5) days (each day at eight (8) straight time hours) for working time lost, as defined in (B) below:

B.    For the purpose of this Section, a member of employee's immediate family is defined as:

(1)    Mother, father, spouse or child: five (5) days

(2)    Brother, sister, stepmother, stepfather, stepson, stepdaughter, grandparents, great grandparents, grandparents and great grandparents of the spouse, mother and father-in-law, and grandchildren: three (3) days.

(3)    Spouse is defined as current legal spouse and child is defined as biological or legal child.

## SECTION 31.        JURY DUTY

A.    Upon receipt of notice of jury duty from the county clerk to report for jury duty on a specified date, the employee shall notify the Employer no later than the end of his or her second shift after returning to work. The Employer shall reimburse an employee for any loss of straight-time wages caused by such employee performing jury duty. No employee shall receive his or her regular pay for straight-time lost because of jury duty performed unless the employee provides the Employer the court document he or she has received for the days of jury duty served for which straight-time has been lost.  If the employee provides at least two week's notice of jury duty, the Company will schedule the employee Monday-Friday if it can be accomplished with no overtime.

39

B.    On any day on which an employee is called for jury duty, he or she shall not be required to report for work on any shift starting prior to the time he or she is due to report for said jury duty.

C.    If jury duty is <u>less</u> than or equal to five (5) hours, including one (1) hour travel time, the employee will report to supervisor for remaining work hours up to eight (8) at normal wage rate, or has option to decline work and be paid for time served on jury duty only.  If employee serves over five (5) hours, the employee is not required to return to work and will be paid eight (8) hours.

D.    In the event an employee returns to work on a day he/she has served jury duty, the hours served will count towards calculating overtime for the remainder of the day.

E.    An employee's starting time shall not be changed on any day for which he or she is called for jury duty.

F.    No employee shall be required to work a scheduled shift starting after 7:00 p.m. on a day before a day on which he or she is required to report for jury duty.

G.    For purposes of this Agreement, a subpoena to appear will be treated just like a Notice for Jury Duty.

<u>SECTION 32</u>.        <u>DISCIPLINE and DISCHARGE</u>

A.    No employee who has acquired seniority shall be discharged without just cause. The discharge of employees who have not acquired seniority shall not be subject to review under any provision of this Agreement.   A shop steward will be present during the issuing of disciplinary notices.  Discipline notices for this paragraph are defined as any formal discipline for performance and/or attendance at any level of the progressive discipline process.  Employee does have the right to refuse union representation.   If employee does refuse union representation, then all three parties (employee/union steward/ and HR representative) must sign off on the discipline notice.  In the event that a union representative is not available within the Plant at the time of discipline issuance, both parties agree to be able to utilitize another employee as witness/representative to issue discipline notification.

B.    Compulsory retirement consistent with applicable law shall not be within the scope of this Section.  Union and Company agree to use a two (2) bucket procedure for discipline – Attendance and Job Performance.   Company agrees to change the verbage to "Level Warnings" – 1st Level Warning, 2nd Level Warning, 3rd Level Warning,

4th Level Warning (Suspension), 5th Level Warning (Suspension Possible Last Chance Agreement and/or Termination). Contact/Coaching level is not formal discipline steps and will remain outside of the CBA. Company agrees to make sure that the administration of the Contact level is used uniformly in the facility. Contacts needs to be viewed as minor and a documented coaching session.

C.    <u>Warning Notices:</u>

Employees may be disciplined (including discharge) for violation of Company rules, a copy of which shall be plainly posted on the Employer's bulletin board. The rules shall state the conditions for which an employee shall be given a verbal warning, a written warning notice, and for which he or she shall be discharged or otherwise disciplined. Employees receiving written warning notices for violation of company rules shall receive such warning notices within ten (10) days, excluding Saturday, Sunday and Holidays, of the Employer's first knowledge of the violation. If the employee is not available within that ten, (10) day period, the Employer will send a Letter of Intent to Discipline to the Union and the employee. Employees receiving written warning notices shall be required to sign a copy for the Employer to indicate that he or she has received a copy. This warning notice shall state the cause of the warning. A copy of the warning notice shall be sent to the Union, a copy given to the employee while the employee is on the job. Neither verbal nor written warning notices shall be effective for disciplinary purposes after the expiration of twelve (12) months from the date the incident occurred. The issuance of warning notices shall be subject to the grievance procedures set forth in this Agreement.

D.    <u>Disciplinary Policy:</u>

In the event that it becomes necessary to discipline an employee for substandard performance or violation of Company Policies, Rules, ~~or~~ Regulations, excluding the attendance policy, the following will serve as a guide for administering progressive discipline. All warnings will be documented for the employee file.

(1)    Verbal employee warning record.

(2)    First written employee warning record.

(3)    Second written employee warning record and/or suspension.

(4)    Third written employee warning record including suspension and/or termination.

41

Willful violation of Company Rules or gross negligence of safety or operating procedures will require disciplinary measures which may bypass any of the above steps and result in immediate discharge.

## SECTION 33.          TERMINATION NOTICE

A.      Any employee who proposes to resign his or her position shall give seven (7) calendar day's written notice to his or her Employer. Employee shall be allowed 24 hours, (one day period) to rescind or withdraw a resignation.

B.      Employer shall post weekly work schedules not later than 1:00 P.M. on Friday prior to the starting of a new workweek. Lay-offs and recalls will be affected with the posting of this schedule. Employees who would be laid off and are not scheduled to work on Friday will be notified by the Employer of the lay-off. The following exceptions shall apply:

   (1)      Notice shall not be required when an employee is discharged for violation of Company rules posted on the bulletin board, provided that this exception shall apply only when the rules posted have previously been sent to the Local Union.

   (2)      Notice shall not be required if the employee is to be laid off or discharged because of the return to work of an employee who has been absent on medical leave for twenty-one (21) consecutive calendar days or more.

C.      One (1) week's notice shall not be required in the case of new employees, whether or not a member of the Local Union, for the first ninety (90) days of employment.

D.      Any employee who fails to give the termination notice required herein shall not be entitled to prorated vacation as set forth in Section 9.

## SECTION 34.          GRIEVANCE AND ARBITRATION

A.      It is the desire of the parties of this Agreement that all disputes arising out of the Agreement shall be settled amicably. For this purpose, it is hereby agreed that the procedure set forth below shall be followed to facilitate such settlement.

B.      A dispute rising out of this agreement shall be resolved in the following manner:

42

Step One.    Within ten (10) days of the time the matter grieved first comes to the attention of the employee (or should have, in the exercise of reasonable diligence, come to the attention of the employee) the issue must be presented to the Department Supervisor or Manager.

Step Two    If the dispute is not resolved in step one, within 72 hours (excluding holidays) of the time the dispute came to the attention of the Supervisor or Manager, a meeting shall be held with the grievant, shop steward, grievant's supervisor and/or department manager will be held on the grievant's shift.

Step Three    If the dispute is not resolved in Step two, a written grievance as outlined below shall be submitted by the grievant or a Union Representative, within five (5) days to People Development management. If People Development management is not available, grievance will be submitted to Plant Manager, Production Manager or a department manager. People Development Manager will meet with the union business representative, shop steward, the grievant, plant manager or production manager to attempt to resolve the dispute within thirty (30) days.

The written submission shall set forth the following information as a minimum:

(a) The name, department, and shift of the employee involved;

(b) The substance of the grievance including the date when it occurred;

(c) The sections of the contract which the grievant claims have been violated;

(d) The relief sought by the grievant; and

(e) The date of the first discussion with a local management representative and the name of that representative.

Step Four    If Step Three has been timely invoked and the grievance is not resolved within five (5) days, either party may request that it be submitted to an Arbitration Board consisting of two (2) representatives each appointed by the Union and Employer. **Both sides agree that no**

43

**representatives submitted by either party shall work at the Leprino Foods Tracy facility or represent any employee under the collective bargaining agreement.** The Arbitration Board shall meet not more than twenty (20) days after the written request has been made.

Step Five    A majority vote of these Board members hearing a grievance shall be necessary before the Board's decision is final and binding upon the parties. If the Board cannot reach a final and binding decision upon the matter submitted within five (5) days after the close of hearing, the parties shall be so notified.

Within ten (10) days after receipt of notice from the Arbitration Board of its failure to reach a decision, either party may demand that the grievance be submitted to a single impartial arbitrator to be selected by the parties. If neither party files such a demand, the grievance shall stand as dismissed by the Arbitration Board.

When arbitration is demanded, the parties shall have ten (10) days after the demand within which to select an arbitrator from the panel named below. If they do not select one within the ten (10) days, they shall first strike a name from the list. The parties shall then alternately strike names, and the person whose name last remains on the list shall serve as the arbitrator.

The panel is composed of the following persons **(as of 07/18/16):**

**John Kagel**
**Luella Nelson**
**Buddy Cohn**
**Michael Askin**
**Marjorie Brogan**
**Matthew Goldberg**
**Barry Winograd**

If for any reason a vacancy occurs on the panel, the parties shall agree on a replacement.

C.    If the parties are unable to agree upon a single impartial arbitrator to hear the dispute within the ten (10) days after the submission demand has been made pursuant to subsection (B), either party may seek to have the Superior Court of the State of California in and for the county

44

in which the Union party has its principal office designate such an arbitrator pursuant to the provisions of the Code of Civil Procedure Section 1281.6.

D.    The decision of the arbitrator shall be final and binding. Pending final settlement of a dispute in accordance with the provisions of the Section, there shall be no cessation of, or interference with work whether by strike, lockout, intentional slowdown or otherwise.

E.    Service and filing of any documents described in this Section may be personal, by delivery to the party to be served or his attorney, or may be by mail upon the party to be served in accordance with the provisions of the Code of Civil Procedure Sections 1011-1013.

F.    In computing any time period prescribed by this Section, the day of the act, event or default after which the designated time period begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Sunday or a legal holiday.  Intermediate Saturdays, Sundays, and holidays shall be included.

G.    By agreement of the parties, time limits provided by this Section may be extended, and compliance with any procedural step may be waived. The Employer shall not unreasonably withhold its agreement to extend the time limits set forth above, provided further the request to extend the time limit is made before the time limit has expired.

H.    Upon agreement by both parties, an arbitrator's bench decision can be requested unless the case is a technical one whereby the parties would wish to go to formal arbitration and submit briefs.

I.    Expenses of an arbitrator shall be borne equally by the parties.

J.    Neither the Arbitration Board nor an arbitrator shall have the authority to amend, modify or alter the terms of the Agreement.

K.    All monetary settlements shall be paid to the grievant no later than the next pay period.


**SECTION 35**.        **WAGE REDUCTION**

No employee shall suffer any retaliatory action by the employer, i.e. reduction in wages or loss of working conditions, through adoption of this Agreement.

45

**SECTION 36.**       **UNIFORMS**

The Employer shall provide all uniforms and will launder all uniforms at its expense with union labor if adequate service is available.

All employees will be required to change into and out of their uniforms at the plant. Rest periods were increased five (5) minutes each on 6/10/02 to compensate for time spent donning and doffing. Any employee leaving the plant during their shift MUST change into their street footwear, **or Company provided shoe covers,** prior to leaving, and back into their plant footwear upon returning.

**SECTION 37.**       **PROTECTIVE CLOTHING**

A.    The Employer will provide thermal clothing necessary to perform work in a sharp room and shall be deemed to include protective headgear and gloves. A sharp room is defined as a room in which the temperature is normally kept at less than 32 degrees Fahrenheit. **The specific areas that will be supplied necessary jackets are: Palletizer, Maintenance and Milk Receiving. The Employer will supply two (2) coats for those employees working in these positions at the Employer's cost. Care, cost and ownership of these jackets will belong to the department.**

B.    Safety Shoes:

(1)    Employees who are required to work in areas of the plant that expose them to wetness, chemicals, etc., will be furnished by the Employer rubber boots, style selected by the Employer, on an as needed basis (considering normal wear). Employees will be issued a new pair of boots upon return of the worn old pair.

(2)    Employees who work in areas of the plant that do not require exposure on a regular basis to wetness and chemicals have the option of:

a.  Exercising one above;

b.  Or be reimbursed for the actual cost of safety shoes to a maximum of **$112.50** every nine (9) months.

(3)    All employees are required to wear a safety shoe or boot (type approved by the Safety Committee) while at work.

46

C.     Upon initial hire the Employer shall not be required to supply boots until the probationary period has been satisfied.

D.     Mechanics who are regularly assigned to work in the freezer will be furnished insulated safety boots. The occasional freezer worker will use "moon boots".

## SECTI0N 38.          LICENSES

The Employer agrees to pay for licenses that may be required for the performance of production workers' jobs.

## SECTION 39.          TOOL ALLOWANCE

Each Maintenance Mechanic shall be responsible for acquiring and maintaining at the job site a set of tools, in accordance with the Employer's specifications for use in maintenance department tasks. To assist in acquisition of such tools, each new employee shall receive a one-time allotment of $250.00 at the completion of six (6) months of employment. The Employer shall provide each Maintenance Mechanic the use of a rollaway in which the employee may secure his or her tools.   Any tool required to be maintained at the job site for use on the job and Plant Mechanic tools will be, if broken or worn so as to be unusable, replaced by the Employer if the broken or worn tool is submitted to the Employer's designated representative.

The required tool list will not be expanded during this Agreement.

## SECTION 40.          BULLETIN BOARD

The Local Union may use a bulletin board designated by the Employer for purposes of posting Local Union notices on official Union letterhead.

## SECTION 41.          TIME CLOCKS

A.  The Employer shall provide a time clock as a means of registering time for starting and quitting work and will require all employees to punch time clocks.

B.  The representatives of the Local Union shall have the right to examine such records at any time during working hours.

47

C.  Employees will be allowed an additional 4-minute grace period at the end of their required 30-minute lunch period.  Employees will not be disciplined for time punches after 30-minute meal breaks until after the 34th minute after the start of a meal break.  This 4-minute grace period compensates for potential issues related to travel, redline room, washing, cleaning and lines at the time clock.  The Company agrees to maintain a minimum of 3 timeclocks for employees.

**SECTION 42.        HEALTH and WELFARE**

::

A.      **Effective January 1, 2018 – March 31, 2018 health and welfare benefits shall be provided by the Company through the Northern California General Teamsters Security Fund, Choice Plus Plan. Effective April 1, 2018 – December 31, 2022**, health and welfare benefits shall be provided by the Company through the Northern California General Teamsters Security Fund **Tiered Select Plus Plan**. The Company will provide six (6) months of premium payments for Health and Welfare coverage for any employee on a medical leave of absence, subsequent to the expiration to any premium waiver by the Northern California General Teamsters (NCGT) **Tiered Select Plus Plan**, provided the employee continues to make the required monthly contributions.

B.      The Company shall remit each month the full amount of the monthly contribution for each eligible employee in conformance with, and to be bound by, the Agreement and Declaration of Trust for the Fund.

C.      For purposes of this section, an eligible employee for whom the Company shall make a monthly contribution is an employee meeting the following qualifications.

a.  The employee is on the Company's payroll on the first (1st) day of the calendar month following the month for which the payment is being make; and

a.  The employee has worked at least eight (80) hours during the previous calendar month.  Holiday hours, vacation hours, funeral leave hours, and jury duty hours, paid for but not worked, shall constitute hours worked for this purpose.

b.  New employees will not be eligible for Health and Welfare benefits until they have completed six (6) months of qualifying hours (at least 80 hours worked per month).

48

D.    Current (non-retired) employees will make contributions to the Company toward their health and welfare coverage for any month in which a premium is paid by the Company.  Employee contributions will be through payroll deduction; the employee shall be responsible for making payment by check or other method accepted by the Company. Employee contributions during the term of the Agreement will be made on a pretax basis, to the extent permissible by law, in the following amounts.  **NOTE:  The Company agrees that employees who select Family coverage on the Select Plus PPO plan will not pay a monthly contribution amount more than what their equivalent employee cost share amount would have been under that year's Choice Plus PPO plan at the specified employee contribution percentage for that year.  Employees who select only Dental/VSP/Life coverage will pay the employee cost share percentage for that year of the Dental/VSP/Life premium.**

1.   **Effective January 1, 2018 through February 28, 2018, Employee contribution towards the NCGT Choice Plus Plan is 17% of the total premium.**

2.   Effective **March 1, 2018** through December 31, **2018**, Employee contribution towards the NCGT **Select Plus** Plan is **17%** of the total premium.

3.   Effective January 1, **2019** – December 31, **2019**, Employee Contribution towards the NCGT **Select Plus** Plan will be **17%** of the total premium.

4.   Effective January 1, **2020** – December 31, **2020** Employee contribution towards the NCGT **Select Plus** Plan will be **17%** of the total premium.

5.   Effective January 1, **2021** – December 31, **2021**: Employee contribution towards the NCGT **Select Plus** Plan will be **18.5%** of the total premium.

6.   Effective January 1, **2022** – December 31, **2022**, Employee contribution towards the NCGT **Select Plus** Plan will be **20%** of the total premium.

E.   Employees may elect to enroll in **Kaiser-Select Plus Plan**.  If an employee enrolls in the **Kaiser-Select Plus Plan**, the employee is responsible for 100% of any cost in excess of the Company's cost for **Select Plus** PPO. **Company also agrees to pay a subsidy for one year of $90.00/month for any employee who is currently enrolled in Kaiser-Choice Plus who would fall into the Employee + Spouse Kaiser-Select Plus Plan.**

**Company agrees to pay a subsidy for one year of $65.00/month for any employee who is currently enrolled in the Kaiser-Choice Plus Plan who would fall into the Employee + Family tier on the Kaiser-Select Plus Plan. This subsidy will expire at the time of the 2019 open enrollment.**

F.  The Company will make medical benefits available to eligible retired employees pursuant to the rules of the Teamsters Retiree Trust, with such retirees paying contributions established by the Trustees to fund their benefits, and the company agrees to be bound by the Agreement and Declaration of Trust.

G.  Flexible Spending Account (FSA)

- The Company will establish a Flexible Spending Account Plan (FSA).
- The Company will pay all administrative fees associated with the establishment of this Plan.
- Rules for the usage and qualifying expenses of the FSA account are determined solely by the relevant federal regulations governing FSAs; the Company will apply these federal regulations in good faith to the design, implementation, and administration of the FSA.

## SECTION 43.         RETIREMENT PLAN

A     Effective as designated below, the Employer agrees to pay the amounts stated to the Western Conference of Teamsters Pension Trust Fund on account of each member of the bargaining unit for each straight time hour worked. Contributions will be reported for all straight time hours worked up to 2080 hours in a calendar year. Paid vacation time and paid holidays will be counted as time worked.

| 2018 | 2019 | 2020 | 2021 | 2022 |
|------|------|------|------|------|
| $0.10 | $0.10 | $0.05 | $0.05 | $0.05 |

| Effective | Basic Contribution | *PEER Contribution | Total Contribution |
|-----------|--------------------|--------------------|--------------------|
| January 1, 2018 | $3.62 | $0.22 | $3.85 |
| January 1, 2019 | $3.72 | $0.22 | $3.95 |
| January 1, 2020 | $3.77 | $0.22 | $4.00 |
| January 1, 2021 | $3.82 | $0.22 | $4.05 |
| January 1, 2022 | $3.87 | $0.22 | $4.10 |

(*Program for Enhanced Early Retirement)

The contributions required to provide the Program for Enhanced Early Retirement (PEER/84) will not be taken into consideration for benefit accrual purposes under the Plan.  The additional contribution for PEER 84 must at all times be 6.5% of the basic contribution and cannot be decreased or discontinued at any time.

For probationary employees, the Employer shall pay an hourly contribution rate of $0.10 (including $.01 for PEER/84) during the probationary period as defined in Article 42, Section A but in no case for a period longer than 90 calendar days from an employee's first date of hire.  Contributions shall be made on the same basis as set forth in Article 43, Section of the Agreement.  After the expiration of the probationary period as defined in Article 43, Section A, but in no event longer than 90 calendar days from an employee's first date of hire, the contribution shall be increased to the full contractual rate.

For the purposes of this Agreement, paid holidays and paid vacation time shall be counted as time worked.

Employees may contribute to the Teamster's 401 (k) plan through a payroll deduction program, pursuant to Section 19 (I).  All costs for this benefit will be borne by the employee.

B.    It is mutually understood that all of the Employer contributions as provided herein shall be deductible from gross income under Section 404 of the Internal Revenue Code.

## SECTION 44.    TERM OF AGREEMENT

A.    This Agreement shall be in force and effect until **January 1, 2023** and shall be considered as renewed from year to year, on a calendar basis, thereafter, unless either party shall give written notice to the other party of termination or renegotiation as provided in subsection (B) hereof.

B.    Either party to this contract may terminate this Agreement or reopen the same for renegotiation by giving to the other party written notice of intention to terminate or renegotiate by registered mail sixty (60) days prior to **January 1, 2023** or January 1st of any year thereafter.

SCHEDULE "A"

WAGE TABLE

The following minimum straight-time rates and classifications shall govern, it being understood that additional classifications may be added or combination rates fixed within the limits of the wage schedules herein set forth by mutual consent of the parties. Any disagreement over such classifications of labor or the addition of more classifications shall be subject to the jurisdiction of the Arbitration Board review provided in Section 34.

CLASSIFICATION

Rate Per Hour

| | 1/1/18 | 1/1/19 | 1/1/20 | 1/1/21 | 1/1/22 |
|---|---|---|---|---|---|
| Bracket A | | | | | |
| **Working Foreperson – Maintenance** | **28.30** | **28.95** | **29.60** | **30.25** | **30.90** |
| **Working Foreperson MTCE – 2 Certs** | **28.80** | **29.45** | **30.10** | **30.75** | **31.40** |
| Maintenance Mechanic | **27.97** | **28.62** | **29.27** | **29.92** | **30.57** |
| **Maintenance Mechanic – 2 Certs** | **28.47** | **29.12** | **29.77** | **30.42** | **31.07** |
| **Bracket B** | | | | | |
| **Foreperson MTCE Utility – 1 Cert** | **28.80** | **29.45** | **30.10** | **30.75** | **31.40** |
| **Foreperson MTCE Utility – 2 Certs** | **29.30** | **29.95** | **30.60** | **31.25** | **31.90** |
| **Maintenance Utility Mechanic – 1 Cert** | **28.47** | **29.12** | **29.77** | **30.42** | **31.07** |
| **Maintenance Utility Mechanic – 2 Certs** | **28.97** | **29.62** | **30.27** | **30.92** | **31.57** |
| Maintenance Technician | **30.50** | **31.15** | **31.80** | **32.45** | **33.10** |
| **Bracket C** | | | | | |
| 10% over Maintenance Mechanic | | | | | |
| Maintenance Technician Foreman | **34.85** | **35.50** | **36.15** | **36.80** | **37.45** |
| Bracket 1 | | | | | |
| Working Foreperson | **25.40** | **26.05** | **26.70** | **27.35** | **28.00** |
| Bracket 2 | | | | | |
| Skilled Relief | **25.02** | **25.67** | **26.32** | **26.97** | **27.62** |
| Bracket 3 | | | | | |
| Dryer Operator | **24.49** | **25.14** | **25.79** | **26.44** | **27.09** |
| Evaporator Operator | | | | | |
| Extruder Operator | | | | | |
| Lab Sampler/Tester (Licensed Pest Control) | | | | | |
| Laboratory Technician (Licensed) | | | | | |
| Milk Receiver | | | | | |
| Plant Mechanic | **24.99** | **25.64** | **26.29** | **26.94** | **27.59** |
| Relief (Bracket 4 jobs) | | | | | |
| Startermaker | | | | | |

UF Operator
Vat Operator
Warehouseperson
DMC Operator
Warehouse/Receiver
**Cheese Detail Sanitation**
**Processing Sanitation**
**QE Melt Comp Tech**
**Cheese Dry Mix Ingred App**

|  | 1/1/18 | 1/1/19 | 1/1/20 | 1/1/21 | 1/1/22 |
|---|---|---|---|---|---|
| Bracket 4 |  |  |  |  |  |
| Boxmaker Attendant | 24.31 | 24.96 | 25.61 | 26.26 | 26.91 |

Cleanup
Dry Mix Operator
Filler Operator - Processing
Filler Operator - Whey
Laboratory Technician (Unlicensed)
Q.C. Technician
Refinish Operator/GRD
Storekeeper
Liquid Application Operator
Palletizer Operator
**QE Melt Tech**
**QE Comp Tech**
**Cheese Brine Attendant**
**Cheese Brine Cleanup**
**Cheese Fine Saver Cleanup**
**Cheese HTST Cleanup**
**Processing Cuber Operator**
**QE Micro**
**QE Sampler**
**QE Swabber**

| Bracket 5 |  |  |  |  |  |
|---|---|---|---|---|---|
| Cellulose Application Operator | 23.98 | 24.63 | 25.28 | 25.93 | 26.58 |
| Bag Inserter |  |  |  |  |  |
| Bracket 6 |  |  |  |  |  |
| General Labor | 23.85 | 24.50 | 25.15 | 25.80 | 26.45 |
| Bracket 7 |  |  |  |  |  |
| Processing Line Attendant | 21.88 | 22.53 | 23.18 | 23.83 | 24.48 |
| **Plant Janitor Relief** |  |  |  |  |  |

Special Relief to receive premium pay of 15 cents per hour for all hours worked.

54

| | 1/1/18 | 1/1/19 | 1/1/20 | 1/1/21 | 1/1/22 |
|---|---|---|---|---|---|
| **Bracket 8** | | | | | |
| Plant Janitor | 19.97 | 20.62 | 21.27 | 21.92 | 22.57 |
| Principal Clerk | 23.70 | 24.35 | 25.00 | 25.65 | 26.30 |
| Senior Clerk | 23.24 | 23.89 | 24.54 | 25.19 | 25.84 |
| Warehouse Clerk | 23.24 | 23.89 | 24.54 | 25.19 | 25.84 |
| Relief Senior Clerk | 23.99 | 24.64 | 25.29 | 25.94 | 26.59 |

.75 over Senior Clerk rate

55

## CLASSIFICATIONS

Bracket 0

Working Foreperson - Maintenance
(Lead, guide, direct, assist, train, and work with other employees)

Bracket A

Maintenance Mechanic
(A Maintenance Mechanic shall have abilities and skills as determined by the Employer, such abilities and skills shall be the highest held by Maintenance employees.)

Bracket 1

Working Foreperson
(Lead, guide, direct, assist, train, and work with other employees)

Bracket 2

Skilled Relief
The rate of Skilled Relief shall be paid as follows:

(a)     For all hours worked in the workweek, to any employee working in Bracket 3, who is regularly scheduled to work on two or more different shifts during the same workweek.

(b)     For any full days worked on any shift in Bracket 3, which differs in starting time from his or her regularly scheduled shift, to any employee who is temporarily so assigned.

(c)     (For the purpose of subsection (a), (b), and (d) herein set forth, starting times within the workweek which do not vary by four hours or more shall be deemed to be the same starting times on the same shift.

(d)     For all hours worked in the work week, to any employee who relieves other employees on the scheduled days off in two or more classifications in Bracket 3 on the same shift.

(e)     For any full days worked in Bracket 3, outside his or her regularly scheduled classification, to any employee who was temporarily so assigned.

(f)     The foregoing provisions shall apply to any employee who meets them while relieving other employees on their vacation.

(g)     For those hours where a properly licensed employee is required to operate a Class I vehicle on public highways.

<u>Bracket 3</u>

DMC
Dryer Operator
Dumper (for cheese curd)
Evaporator Operator
Extruder Operator
HTST Operator
Lab Sampler/Tester (Licensed Pest Control)
Laboratory Technician (Licensed) (including but not limited to Mojonnier and Babcock)
Milk Receiver
Plant Mechanic (A Plant Mechanic shall have abilities and skills as determined by the Employer)
Relief (Bracket 4 jobs)
Startermaker
UF/RO Operator
Vat Operator
Warehouseperson


The rate for Relief shall be paid as follows:

(a)     For all hours worked in the workweek, to any employee working in Bracket 4 who is regularly scheduled to work on two or more different shifts during the same workweek.

(b)     For any full days worked in any shift in Bracket 4 which differs in starting time from his or her regularly scheduled shift, to any employee who is temporarily so assigned.

(c)     For purposes of subsection (a), (b), and (d) herein set forth, starting times within the workweek which do not vary by four hours or more shall be deemed to be the same starting times on the same shift.

(d)     For all hours worked in the workweek, to any employee who relieves other employees on their scheduled days off in two or more classifications in Bracket 4, on the same shift.

(e)      For any full days worked in Bracket 4, outside his or her regularly scheduled classification, to any employee who is temporarily so assigned.

(f)     The foregoing provisions shall apply to any employee who meets them while relieving other employees on their vacation.

Bracket 4

Boxmaker Attendant
Cleanup
Dry Mix Operator
Filler Operator-Processing
Filler Operator - Whey
Laboratory Technician (Unlicensed) *
    *The employer will not deny any non-licensed tester the opportunity to become licensed.
Q.C.  Technician
Refinish Operator
Storekeeper
Liquid Application Operator
Palletizer Operator

Bracket 5

Cellulose Application Operator

Bag Inserter

Bracket 6

General Labor

Bracket 7

Processing Line Attendant

Bracket 8

Plant Janitor


**OFFICE EMPLOYEES**

Senior Clerk

Under general supervision performs clerical tasks of more than average difficulty, requiring the assumption of some individual responsibility and initiates an above average knowledge of office practices, specific experience or training.

Representative Duties: Prepares and maintains production, plant, equipment, inventory, payroll or milk shippers' records; performs vacation and general relief.

<u>Principal</u> <u>Clerk</u>

Under occasional supervision only performs work requiring the exercise of independent judgment and knowledge of office procedure; and may be responsible for work of three or four other employees.

Representative Duties: Assists in making up statistical reports, carries out instructions issued by head bookkeeper in connection with completing monthly statements, running trial balances, analyzing and reconciling accounts. Answers questions of clerks regarding routine operations and problems. Responsible for even flow of work through office.

It is expressly understood that the listing of job titles in the foregoing section shall not require or imply that any plant shall have workers in each classification, but that the application of such titles and the appropriate wage scales shall depend upon actual job assignment to work actually performed.

**REVISED SCHEDULING FOR VACANCIES**

August 8, 1996
Revised Effective 1/01/2007
**Revised Special Relief Rules Effective 01/01/2018**

1.    Call in a qualified employee from the on-call list that is not working.

2.    If an employee is agreeable he/she may move to another position within that department.

3.    The junior trained (qualified) employee working on that shift and in that department who signed a Training Interest List and has been trained may be assigned to fill the vacancy. If the junior trained employee refuses to do a job, the normal disciplinary steps will be followed.

4.    If an employee is scheduled out of his/her home department, he/she may voluntarily return to that department to cover a vacancy, which he/she is qualified.

5.    A pool of "Special Relief" employees will be trained in various jobs so that they can be placed in vacancies before having to go to the use of overtime.  The intent of the Special Relief is not to displace Skilled Relief positions.  The company will provide adequate relief bids to cover planned absences, i.e., vacations.

6.    **"Special Relief" Rules:**

   a.    Seniority Bidding - open to all Bracket 7 and on-call employees at the time the bid goes up.

   b.    Bid will state that bid holder will be required to work all shifts, any days, work weeks and departments for which he/she is trained.

   c.    Premium pay for 15¢ per hour will be paid for all hours worked for any day.

   d.    If overtime is necessary, the overtime will be assigned by present contract language.

   e.    "Special Relief" can sign the overtime list in their home department or relief department, but cannot sign in both departments during the same overtime period.

   f.    Bidding rights will be retained as presently written in **Sections 18 & 19**.

   g.    Bumping will take place through present contract language.

   h.    Filling of vacancies will be offered in order of seniority to qualified "Special Relief" bid holders. Lowest seniority has to do the job.

i.      Management will have final decision on the number and location of "Special Relief" slots. Management will confer with union representatives during this decision process.

j.      Present contract language will be followed for time to turn down the bid.

k.      If a "Special Relief" refuses to do a job, the normal disciplinary steps will be followed, i.e., verbal, written, suspension, termination.

l.      "Special Relief" employees will not be forced to work more than six days within a workweek.

m.      Whenever possible, normal scheduled days off will be observed.

n.      "Special Relief" bids will be a maximum of four jobs and will be specific to a department.

o.      For every "Special Relief" bid, one cross training interest list will be posted.  If a "Special Relief" bid identifies three jobs to be trained, the interest list will be posted within that department. If the bid identifies less than three jobs, an interest list may be posted in any department.

         If Special Relief person is on the posted weekly schedule for a full week's work in the relief department and scheduled days off are changed, the penalty pay provision applies.  However, if they are called into the relief department from the Processing Department, there is no penalty pay.

7.   Effective January 1, 2007, the special relief bid holders will have the option to lock in their bids in 1-year intervals to receive a premium wage as described below:  The premium wage will only be applicable to those special relief employees who do lock in their bid for the one-year period.  Employees locking in their bids in this fashion cannot give up this bid, and will lose their bid rights for a period of 1 year.  Present Special Relief bid holders may, at their option, lock in their present bid for the additional year and be eligible for the premium wage.  At any time, a Special relief bid holder who previously elected not to lock in may do so and become immediately eligible for the premium wage.

In the first year of the lock in, a premium wage of $.25 per hour will be paid for all hours worked, including vacation, holidays, funeral leave, and jury duty hours.

In the second consecutive year of the lock in, a premium wage of $.50 per hour will be paid for all hours worked, including vacation, holidays, funeral leave, and jury duty hours.

In the 3rd consecutive year of the lock in, and all subsequent years of a
continuous lock in to a special relief bid by an employee, a premium wage of $.75

61

**TRAINER PREMIUM PAY**
**Added:  January 1, 2018**

1.  **Company agrees to pay a Trainer Premium Pay of an additional $0.05 per hour to any Union employee assigned and scheduled to train another employee.**
    a.  **$0.50 per hour (not effected by hourly rate of pay) for anyone training another employee.**
    b.  **Company will post an Initial Interest List on this to see who would be interested in becoming a trainer.**
        i.  **Company will post subsequent Interest Lists but <u>on an as needed basis</u>, no less than 6 months, to see if any new persons would be interested in training.**
    c.  **Trainers must complete the following before receiving the trainer premium:**
        i.  **Must be completely signed off in the job.**
        ii.  **Completed annual TKA's (Technical Knowledge Assessment) each year.**
        iii.  **Attend a Train the Trainer Course.**
    d.  **Trainers would be appointed by Department Managers.**
        i.  **Department Managers will ensure fairness in the appointment of trainers and respect Section 4 – Employment Practices – of CBA.  Any issues that may be hand with perceived fairness to be discussed between Company and Union.**
    e.  **A Trainer will typically train one person at a time – exception to this would be any jobs that can easily handy more than one person.**
        i.  **Goal would be to get as many interested persons the opportunity to train and build their skill.**
        ii.  **If at any time a trainer is not comfortable training more than one person he/she can let their supervisor or Manager know. A training evaluation will be done at that time so that all training can be covered appropriately.**
    f.  **A Training Review will be added to monthly JLRC Meetings to review how the program is going, feedback, perceived issues, positive points, etc.**

# A

Absence Notification                                      38

Alternate Work Schedule                                   28

Arbitration                                               42

# B

Bidding Process                                           16

Break in Period                                            9

Bulletin Boards                                           46

Bereavement                                               39

# C

Call-In Procedures                                        24

Call-back Minimum                                         27

Classifications                                           55

Competency Test                                           20

# D

Days Off                                                  25

Delay of Operation                                        26

Dept. Recognized                                          13

Dept. Closure                                             14

Discharge and Discipline                                  39

Discipline Policy                                         41

Down Days                                                 25

Dues Deduction                                            10

# E-F

Employment Practices                                       2

Funeral Leave                                             38

# G

Grievance and Arbitration                                    41

# H

Health and Welfare                                           47

Holiday                                                      30

Holiday Workweek                                             31

Hours of Work/OT                                             21

# I

Industrial Injury                                            27

Interest List                                                23

List of Employees                                            4

# J-K-L

Job Bidding                                                  16

Jury Duty                                                    38

Leave of Absence                                             35

Licenses                                                     46

# M

Maint. Dept Schedules                                        24

Management Trainees/Interns                                  21

Meal Periods                                                 30

Method of Spreading Work                                     26

Minimum Hours Worked                                         26

# N

Night Work Pay                                               9

# O

Office Employees                                             57

Operation of Agreement                                       1

Overtime                                                     21

Overtime Scheduling                                           23

## P-Q

Performance of Work                                           3
Payday                                                        10
Posting Days Off                                              25
Pre-Placement Physicals                                       25
Protective Clothing                                           45

## R

Recognition                                                   1
Rights of Parties                                             3
Remittance Advice                                             10
Refusal to Work OT                                            27
Rest Period                                                   30
Retirement Plan                                               49

## S

Safety Shoes                                                  46
Sick Leave                                                    36
Seniority                                                     11
Severance Pay                                                 7
Special Relief                                                23,59
Starting Time                                                 25
Strikes and Lockout                                           3

## T

Terms of Agreement                                            51
Temp.  Vacancies                                              17
Termination Notice                                            41
Testing                                                       20
Time Clocks                                                   47
Tool Allowance                                                46
**Trainer Premium Pay                                         61**

Transfer of Personnel                                              4

Transfer of Company or Interest                                    7

# U

Uniforms                                                           45

Union Affiliation                                                  1

Union Relations                                                    3

Union Representation                                               2

Unscheduled Down Day                                               25

# V

Vacancies                                                          16 (non-temporary)

Vacation                                                           33

Vacation (During Holiday)                                          30

# W-X-Y-Z

Wages and Classifications                                          9

Wage Table                                                         52

Wage Reduction                                                     44

Warning Notices                                                    41

Work in Two or More Classifications                                20

Work Week                                                          21

Approval
Page 3